

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

SEP 1 4 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARGARITA SANTOS DAVILA, | § | |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF JESUS OCTAVIO DAVILA SANTOS, | § | |
| ZAIDETH MARGARITA DAVILA SANTOS, | § | |
| ANDREA DENISSE DAVILA SANTOS, | § | |
| AND VALERIA NAYEL DAVILA SANTOS, | § | |
| AND ALL AS REPRESENTATIVES OF | § | |
| THE ESTATE OF JESUS DAVILA PAZ; | § | |
| ETHNA ZULEYMA PEREZ LARA; | § | |
| INDIVIDUALLY AND AS NEXT FRIEND | § | |
| OF SERGIO ALBERTO ZAVALA PEREZ, | § | |
| AND ALL AS REPRESENTATIVES OF | § | |
| THE ESTATE OF SERGIO ALBERTO | § | |
| ZAVALA; MARIA OLIVIA VASQUEZ, | § | |
| INDIVIDUALLY AND AS NEXT FRIEND | § | |
| OF OLIVIA LIZETH IBARRA VASQUEZ | § | |
| AND JESUS ALAN IBARRA VASQUEZ, | § | |
| AND ALL AS REPRESENTATIVES OF | § | |
| THE ESTATE OF VALANTE | § | |
| IBARRA IBARRA | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | C. A. NO. B-01-140 |
| | § | |
| LUCENT TECHNOLOGIES, INC.; | § | JURY |
| LUCENT TECNOLOGIES | § | |
| MAQUILADORAS, INC.; LAREDO | § | |
| QUALITY TRANSFER SERVICES, INC.; | § | |
| BRIDGESTONE/FIRESTONE, INC.; | § | |
| AND BRIDGESTONE CORPORATION | § | |
| | § | |
| Defendants. | § | |

**BRIDGESTONE CORPORATION'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION
AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

ODMA\GRPWISE\CTW.AUS13.PL_Lib2a 831111 1

NOW COMES Bridgestone Corporation, pursuant to Federal Rule of Civil Procedure 12(b)(2) and 12(b)(6), and files this Motion to Dismiss for Lack of Personal Jurisdiction all claims against it and would show as follows:

**I.**

**Introduction and Overview of Relief Requested**

Defendant Bridgestone Corporation ("Bridgestone") is a Japanese Corporation without any contacts in the State of Texas upon which personal jurisdiction can be properly based. Bridgestone therefore requests that, pursuant to Rule 12(b)(2), this Court dismiss all claims against it for lack of personal jurisdiction.

According to the Original Plea in Intervention of Intervenors Alejandra Marlen Rodriguez de Luna, et al., this product liability lawsuit arises out of a one car accident that occurred on August 12, 1999 in Mexico. *See* **Exhibit 1** (Original Plea in Intervention of Intervenors Alejandra Marlen Rodriguez de Luna, et al.) at ¶ C.10. The accident is alleged to have been caused by the alleged failure of the right rear tire on the vehicle which allegedly was manufactured by Firestone. **Exhibit 1** at ¶¶ C.10

Bridgestone is the Japanese parent company of the domestic corporation, Bridgestone/Firestone, Inc. ("Firestone"). According to the Plea in Intervention, Bridgestone "does business in Texas." **Exhibit 1** at ¶ A.5. This allegation is without any basis in law or in fact. As reflected by the Affidavit of Hiroyuki Kita attached as **Exhibit 2** to this Motion, Bridgestone has no purposeful contacts with Texas, had no involvement in the marketing, distribution or sale of the tire at issue, and cannot be held liable for any acts of its separate, domestic subsidiary, Firestone. This Court should dismiss all claims against Bridgestone for lack of personal jurisdiction.

## II.

## <u>Argument</u>

The Texas long arm statute "authorizes personal jurisdiction" to the extent permissible consistent with federal due process. *Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 854 (5th Cir.), *cert. denied*, 121 S.Ct. 426 (2000). "Well-established" due process principles:

> [P]ermit[] the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed [itself] of the benefits and protections of the forum state by establishing *minimum* contacts with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice.

*Id.* (quoting *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000)).

"Minimum contacts" are understood in terms of "specific" or "general" jurisdiction:

> *Specific jurisdiction* over a nonresident corporation is appropriate when that corporation has purposefully directed its activities at the forum state and the litigation results from alleged injuries that *arise out of or relate to those activities*. *General jurisdiction*, on the other hand, will attach where the nonresident defendant's contacts with the forum state, although *not* related to the plaintiffs' cause of action, are *continuous and systematic*.

*Id.* (quoting *Alpine View, supra*).

Plaintiffs' claim arises out of an accident in Mexico involving Mexican citizens and residents. Personal jurisdiction over Bridgestone therefore cannot be based on specific jurisdiction, but instead requires proof that Bridgestone possesses continuous and systematic contacts with Texas.

No such proof exists. As Mr. Kita's affidavit demonstrates, Bridgestone has no significant contacts with Texas:

1.      Bridgestone Corporation is a Japanese corporation that maintains its principal place of business in Japan, where it designs, manufactures and markets tires in Japan through transactions that are governed by Japanese law.

2.      Bridgestone is not licensed to do business in Texas and does not maintain a registered agent for service of process in Texas.

Bridgestone conducts no business in Texas. It maintains no offices, places of business, post office boxes, or telephone listings in Texas. It neither owns nor rents any real estate, and keeps no bank accounts or other interest in property in Texas. It has not incurred any obligation to pay, and has not paid, any taxes in Texas. It has no agents or sales representatives in Texas. It has no employees in Texas and has not recruited any employees from Texas. It has not conducted any advertising, solicitation, marketing or other sales promotions activities in Texas. It has not designed, manufactured, sold advertised, delivered, or issued warranties on any good or product in Texas, nor has it participated in the decision to sell or deliver any good or product to Texas. It has not entered into a contract in Texas or committed any tort, in whole or in part, in Texas.

4.    Bridgestone does not maintain an interactive web site to solicit business from the United States and does not solicit business for or on behalf of Firestone.

5.    Bridgestone has never filed suit in a Texas court.

**Exhibit 2** (Affidavit of Hiroyuki Kita) at ¶¶ 4, 5, 8, 15, 16.

The sale of Bridgestone tires in Texas *by others* does not constitute a "continuous and systematic" contact that would justify the exercise of personal jurisdiction. As Mr. Kita explains:

Tires manufactured in Japan by Bridgestone Corporation that are sold in the United States are purchased from Bridgestone Corporation in Japan. Individual Bridgestone Corporation manufactured tires are then sold by Bridgestone/Firestone, Inc. and other entities/distributors in the United States. Bridgestone Corporation exercises in principle no control over where and to whom such tires are sold. . . All Bridgestone Corporation manufactured tires that come as original equipment on vehicles manufactured in Japan and sold in the United States are purchased by the vehicle manufacturer in Japan.

**Exhibit 2** at ¶ 9. Selling tires in Japan to third parties who then import the tires into the United States does not create general jurisdiction; the "stream of commerce" notion is perfectly irrelevant to general jurisdiction. *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987); *Williams v. Wilson*, 939 F.Supp. 543, 549 (W.D. Tex. 1995), *aff'd without opinion*, 95 F.3d 1149

(5th Cir. 1996). In short, Bridgestone has no contacts with Texas that would give rise to general jurisdiction.

Plaintiffs also allege that Bridgestone is the alter ego of Firestone and that Bridgestone is therefore subject to jurisdiction based upon the acts of Firestone. But the law is settled that:

> So long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in a forum state may not be attributed to the other. . . . Generally, our cases demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes. . . . The degree of control exercised by the parent must be greater than that normally associated with common ownership and directorship. . . .

*Kelly*, 213 F.3d at 856 (quoting *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)).[1]

Bridgestone and Firestone maintain "separate and distinct" corporate entities, as Mr. Kita's affidavit again demonstrates:

1.   Bridgestone/Firestone, Inc.("Firestone") is a wholly owned subsidiary of Bridgestone Corporation. Further, Bridgestone/Firestone, Inc. is incorporated under the laws of Ohio and maintains its principal place of business in Nashville, Tennessee. Bridgestone and Firestone are separate, adequately capitalized corporations.

2.   Bridgestone does not establish daily management policies for Firestone, nor does Bridgestone control the daily operations of Firestone. As a result, the daily operations of Bridgestone and Firestone are separate.

---

[1] The *Kelly* Court cited numerous other decisions that also highlight the dubious nature of Plaintiffs' assertion. *See Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999) ("typically, the corporate independence of companies defeats the assertion of jurisdiction over one by using contacts with the other"); *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999) ("Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts"); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773-74 (5th Cir. 1988) ("it is well-settled that where . . . a wholly owned subsidiary is operated as a distinct corporation, its contacts with the forum cannot be imputed to the parent").

3.   Formal barriers between management at Bridgestone and Firestone exist, and these formalities are observed. As a result:

•   Bridgestone and Firestone each conducts its own, separate shareholder and board of director meetings.

•   Bridgestone and Firestone do not share common departments or businesses.

•   Bridgestone and Firestone keep separate books and accounts and file separate tax returns.

•   Firestone financing is not provided by Bridgestone. Rather, its operating capital is borrowed from outside sources and/or earned through its own business profits.

**Exhibit 2** at ¶¶ 6, 12, 13, 14.

In view of the legal standard set forth above, there is no conceivable basis for the assertion of personal jurisdiction over Bridgestone based upon its relationship with Firestone, a factually and legally separate corporation.

The exercise of personal jurisdiction over Bridgestone would also offend traditional notions of fair play and substantial justice. *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 214-15 (5th Cir. 2000); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 377 (5th Cir. 1987). Because Bridgestone is a Japanese corporation with no offices or employees in Texas, the exercise of personal jurisdiction over Bridgestone would impose a heavy burden. Texas has no interest in this litigation since the alleged accident took place in Mexico and the plaintiffs are all citizens and residents of that country. Plaintiffs have little interest in obtaining relief in Texas as opposed to some other forum. Bridgestone accordingly submits that the Court should dismiss all claims asserted against it for lack of personal jurisdiction without further inquiry.

## III.

## Conclusion and Prayer

For the reasons stated herein, Bridgestone Corporation respectfully requests, pursuant to Fed. R. Civ. P. 12(b)(2) and (6), that the Court dismiss all claims against it for lack of personal jurisdiction and such further relief as it may be justly entitled.

Respectfully submitted,

CLARK, THOMAS & WINTERS,
A Professional Corporation

By

Burgain G. Hayes
State Bar No. 09271300
G. Robert Sonnier
State Bar No. 018847400
Trek C. Doyle
State Bar No. 00790608

700 Lavaca, Suite 900
P.O. Box 1148 (78767)
Austin, Texas 78701
512/472-8800
512/474-1129 FAX

# CERTIFICATE OF SERVICE

By my signature below, I hereby certify that a true and correct copy of the foregoing document was served on the following counsel of record by certified mail, return receipt requested on this the _17th_ day _September_, 2001:

Frank Costilla
LAW OFFICE OF FRANK COSTILLA
5 East Elizabeth Street
Brownsville, Texas 78520

Ezequiel Reyna, Jr.
LAW OFFICES OF EZEQUIEL REYNA, JR.
702 West Expressway 83
Weslaco, Texas 78596

Dana R. Allison
Guy H. Allison
THE ALLISON LAW FIRM
855 E. Harrison
Brownsville, Texas 78520

Kyle H. Dreyer
HARTLINE, DACUS, DREYER & LERN., L.L.P.
6688 North Central Expressway, Suite 1000
Dallas, Texas 75206

F. Edward Barker
Margery Huston
BARKER, LEON, FANCHER & MATTHYS, L.L.P.
555 N. Carancahua St.
Tower II, Suite 1200
Corpus Christi, Texas 78478

Judge Gilberto Hinojosa
MAGALLANES, HINOJOSA & MANCIAS
1713 Boca Chica Blvd.
Brownsville, Texas 78520

CVISPDF – www.fastio.com

CAUSE NO. 2001-02-897-G

MARGARITA SANTOS DAVILA, individually and §
as next friend of JESUS OCTAVIO DAVILA §
SANTOS, SAIDETH MARGARITA DAVILA §
SANTOS, ANDREA DENISSE DAVILA SANTOS §
and VALERIA NAYEL DAVILA SANTOS, and all §
as Representatives of THE ESTATE OF JESUS §
DAVILA PAZ; ETHNA ZULEYMA PEREZ LARA, §
individually and as next friend of SERGIO §
ALBERTO ZAVALA PEREZ, and all as §
Representatives of The Estate of SERGIO §
ALBERTO ZAVALA; MARIA OLIVIA VASQUEZ,, §
individually and as next friend of OLIVIA LIZETH §
IBARRA VASQUEZ and JESUS ALAN IBARRA §
VASQUEZ and all as Representatives of THE §
ESTATE OF VALANTE IBARRA IBARRA, §
§
plaintiffs, §
§
v. §
§
LUCENT TECHNOLOGIES, INC., LUCENT §
TECHNOLOGIES MAQUILADORAS, INC., §
LAREDO QUALITY TRANSFER SERVICES, INC., §
BRIDGESTONE-FIRESTONE, INC. and §
BRIDGESTONE CORPORATION, §
§
defendants §

FILED 9:15 O'CLOCK A
AURORA DE LA GAR...
AUG 10 2001
DISTRICT COURT...

404ᵗʰ JUDICIAL DISTRICT COURT

CAMERON COUNTY, TEXAS

*Bridgestone*
*Firestone*
*Japan*

## ALEJANDRA MARLEN RODRIGUEZ DE LUNA'S, in as Representative of THE ESTATE OF HECTOR ROJO MEDINA and as next Friend of KELLY ASTRID ROJO RODRIGUEZ, CYNTHIA IVETTE ROJO RODRIGUEZ and MAYRA EVELYN ROJO RODRIGUEZ, MIGUEL ANGEL ROJO GARCIA, and LUZ MEDINA ANDRADE'S ORIGINAL PLEA IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Intervenors **Alejandra Marlen Rodriguez De Luna, individually** as Representative of the Estate of Hector Rojo Medina, and as next Friend of K Astrid Rojo Rodriguez, Cynthia Ivette Rojo Rodriguez, and Mayra Evelyn Rodriguez, Miguel Angel Rojo Garcia, and Luz Medina Andrade, ("Intervenors

*Davila v. Lucent*       Alejandra Marlen Rodriguez de Luna's, et al



EXHIBIT
1

28/01  TUE 01:19

file this Original Plea in Intervention complaining of Defendants **Lucent Technologies,**
**Inc.,** ("Lucent Technologies"), **Lucent Technologies Maquiladoras, Inc.,** ("Lucent
Maquiladoras"), **Bridgestone/Firestone,Inc.** ("Firestone"),and **Bridgestone Corporation**
**of Japan** ("Firestone"), and for cause of action shows:

## A. Parties

1.     Intervenors are citizens and residents of Monterrey, Nuevo Leon, Mexico.
Alejandra Marlen Rodriguez de Luna is the surviving spouse of Hector Rojo Medina,
deceased, and the natural mother of Kelly Astrid Rojo Rodriguez, Cynthia Ivette Rojo
Rodriguez, and Mayra Evelyn Rojo Rodriguez, the natural and surviving children of Hector
Rojo Medina. Miguel Angel Rojo Garcia, and Luz Medina Andrade are the natural and
surviving parents of Hector Rojo Medina, deceased.

2.     Defendant **Lucent Technologies, Inc.** is a corporation incorporated under
the laws of the State of Delaware, and is authorized to do business and is doing business
within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas. With
regard to this incident, Defendant **Lucent Technologies, Inc.'s** place of business is
Brownsville, Texas, in that all business activities are coordinated in Brownsville, Texas.
Defendant **Lucent Technologies, Inc.** may be served with process by serving its
registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas
78701, by certified mail, return receipt requested. Service is requested at this time.

---

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea In Intervention
                                                           — p. 2 of 17 pp. —

3. Defendant **Lucent Technologies Maquiladoras, Inc.** is a corporation that is incorporated under the laws of the State of Delaware and is authorized to do business and is doing business within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas. With regard to this incident, Defendant **Lucent Technologies Maquiladora, Inc.'s** principle place of business is Brownsville, Texas, in that all business activities are coordinated in Brownsville, Texas. Defendant **Lucent Technologies Maquiladora, Inc.** may be served with process by serving its registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service is requested at this time.

4. Defendant **Bridgestone/Firestone, Inc.** ("Firestone") is a corporation incorporated under the laws of the State of Ohio, and is authorized to do business and is doing business throughout the State of Texas. Defendant **Firestone** may be served with process by serving its registered agent for service C.T. Corp. System, 350 N. St. Paul, Dallas, Texas 75201, by certified mail, return receipt requested. Service is requested at this time.

5. Defendant **Bridgestone Corporation of Japan** ("Bridgestone-Japan") is a Japanese corporation or business association. Said defendant does business in Texas, but does not maintain a registered agent for service of process in Texas. Defendant Bridgestone-Japan may be served with process herein in accordance with the provisions of the Hague Convention on Service abroad of Judicial or Extrajudicial Documents in Civil or Commercial Matters, to which the United States of America and Japan are signatories,

---

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea In Intervention
                                                                    — p. 3 of 17 pp. —

and TEX. R. CIV. P. 108 a. under the provisions of the Hague Convention, defendant Bridgestone-Japan may be served with process herein by serving the Minister for Foreign Affairs of Japan, the designated central authority for Japan, with a copy of this complaint, translated into Japanese, by united states registered mail, return receipt requested, at 2-2-1 Kasumigaseki, Chyoda-Ku, Tokyo, Japan. This service is to be accomplished through an employee of APS International, Ltd., AaPS International Plaza, 7800 Glenroy Road, Minneapolis, Minnesota, who has been authorized to serve process by court order pursuant to TEX. R. CIV. P. 103 (2). The Minister for Foreign Affairs of Japan, in turn, is requested to forward such process to defendant Bridgestone-Japan, at its home office address, 10-1, Kyobashi 1-Chome, Chuo-Ku, Tokyo 104-8340, Japan, in care of its president, chairman of the board and chief executive officer, Yoichiro Kaizaki, or his designated successor, Shigeo Watanabe, or any other corporate officer, pursuant to the manner provided by Japanese law for service of documents in domestic actions on persons within its territory. Additionally, under §17.044(1) of the Texas Civil Practice and Remedies Code, defendant Bridgestone-Japan is deemed by law to have appointed the Texas Secretary of State as its registered agent for service of process. Said defendant therefore may be served with process **by serving the Hon. Henry Cuellar, at P.O. Box 12887, 1019 Brazos Street, Earl Rutter Blvd., Room 214, Austin, Texas 78701-2887, by United States certified mail, return receipt requested,** pursuant to TEX. R. CIV. P. 106(a)(2). The Texas Secretary of State is requested to forward such process to defendant Bridgestone-Japan at its home office address, 10-1, Kyobashi 1-Chome, Chuo-Ku, Tokyo

---

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention
                                                              — p. 4 of 17 pp. —

CSHPDF - www.fastio.com

104-8340, Japan, in care of its president, chairman of the board and chief executive officer, Yoichiro Kaizaki, or his designated successor, Shigeo Watanabe, or any other corporate officer, by Untied States registered mail, return receipt requested, as required by §17.045(a) of the Texas Civil Practice and Remedies Code.

6.    Plaintiff's would show that Bridgestone/Firestone, Inc. is the wholly owned subsidiary of Bridgestone Corporation of Japan. Moreover, there is an intermingling of directors, employees and officers; *e.g.*, John Lampe, president and chief executive officer of Bridgestone/Firestone,is also on the board of directors of Bridgestone-Japan; Masatoshi Ono, predecessor president and chief executive officer of Bridgestone/Firestone, was executive Vice-President of, and on the board of directors of Bridgestone-Japan until October 2000; Isao Togashi, head of manufacturing of Bridgestone/Firestone, has been on the board of directors of Bridgestone-Japan for may years, and was a Senior Vice President of tire production for Bridgestone-Japan from 1998 through 2000; Kenji Shibarrta, former president of Bridgestone/Firestone, was on the board of directors of Bridgestone-Japan, as was Minakazu Fuimora, executive vice president of Bridgestone/Firestone. Further, Bridgestone/Firestone manufactures tires in the Untied States of America under the "Bridgestone" name. Conversely, Bridgestone-Japan manufactures tires under the "Firestone"brand at its Hofu plant in Yamaguchi prefeecture, Japan, including size p235/75R15 "Radial ATZ" tires such as those recalled in the United States. Additionally, Bridgestone-Japan maintains a world wide website wherein it claims that the "Bridgestone" and "Firestone"brands "herald the company's [Bridgestone-Japan]

---

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea In Intervention
                                      — p. 5 of 17 pp. —

CMsPDF - www.tesisc.com

strong presence in tire markets worldwide"; claims to utilize a "multi-brand" strategy, concentrating on both the "Bridgestone" and "Firestone" brands; claims that Bridgestone-Japan supplies original equipment tires to automobile manufacturers in North America; identifies Bridgestone/Firestone tire manufacturing facilities in the United States of America (including Wilson, North Carolina) as "Bridgestone plants"; identifies the Bridgestone/Firestone stores in the United States of America as "company-owned" stores; refers to the Bridgestone/Firestone facility in Akron, Ohio as "Bridgestone's Technical Center"; includes tires manufactured by Bridgestone/Firestone in the United States of America as part of "Bridgestone's" share of the global tire market; and includes the employees of Bridgestone/Firestone among Bridgestone-Japan's tally of "total employees". Moreover, Bridgestone-Japan releases annual reports which identify Bridgestone-Japan as manufacturing, distributing, and selling tires with the "Firestone" brand; which claim that Bridgestone-Japan "operates" the Bridgestone/Firestone plants in the United States of America; which claim that Bridgestone-Japan manages some of its operations through its regional headquarters in Nashville, Tennessee (the location of Bridgestone/Firestone's Corporate headquarters); and which claim that Bridgestone-Japan develops tires at the Bridgestone/Firestone technical center in Akron, Ohio. Moreover, the financial sections of Bridgestone-Japan's annual reports utilize centralized accounting which takes into consideration the sales and earnings of its consolidated subsidiaries, including its largest subsidiary, Bridgestone/Firestone (which does not issue annual reports). It is clear the Bridgestone-Japan and Bridgestone/Firestone integrate their resources to achieve a

---

*Davila v. Lucent*

Alejandra Marien Rodriguez de Luna's, et al. Plea in Intervention
— p. 6 of 17 pp. —

common business purpose, and therefore Bridgestone-Japan may be held liable for the tort

obligations of Bridgestone/Firestone incurred in the pursuit of that business purpose. In

fact, standing alone, Bridgestone/Firestone would be undercapitalized (and under insured)

in relation to the reasonable foreseeable risks of its business operations.

7.     Defendant Bridgestone/Firestone and Bridgestone-Japan ("Firestone") are, in

fact, corporate *alter egos*. Bridgestone/Firestone was and is operated as a mere tool or

business conduit of its corporate parent, Bridgestone-Japan, which has used

Bridgestone/Firestone to perpetuate an actual and/or constructive fraud on the American

public — including the plaintiffs — for the direct benefit of Bridgestone-Japan. Such unity

presently exists between Bridgestone/Firestone and Bridgestone-Japan that any

separateness ceased, if it ever existed at all. Holding only Bridgestone/Firestone liable for

the unlawful tortious conduct complained of herein would result in an injustice.

## B. Venue

8.     A substantial part of the acts and omissions giving rise to the Plaintiffs' claims

occurred in Cameron County, Texas. Pursuant to Tex. Civ. Prac. & Rem. Code §§ 15.001,

et seq., venue for this action is proper in Cameron County, Texas.

9.     Since venue is proper against Defendant **Firestone**, this Court has venue as

to all Defendants since Plaintiffs' claims arise out of the same transaction, occurrence, or

series of transactions or occurrences.

---

*Davila v. Lucent*                    Alejandra Marien Rodríguez de Luna's, et al. Plea in Intervention
                                      — p. 7 of 17 pp. —

## C. Statement of Facts

10.     This lawsuit results from a one-car accident that occurred at approximately 7:20 p.m. On August 12, 1999, in Cadereyta, Nuevo Leon, Distrito Norte, Mexico.  At the time of the accident, Hector Rojo Medina, deceased, along with others was a passenger in a 1996 Chevrolet Suburban, owed and operated by Defendants Lucent.  The suburban was being driven by Carlos Ramirez Villaneuva, who was acting within the course and scope of his employment with Defendants Lucent.  Hector Rojo Medina, deceased, and others were being driven home from a one day seminar/training session with Defendants Lucent when the right rear Bridgestone/Firestone tire on the 1996 Chevrolet Suburban delaminated, causing the vehicle to lose control, roll over numerous times, and fatally injury them.

11.     The 1996 Chevrolet Suburban and its Bridgestone/Firestone tires were owned and maintained by Defendants Lucent.  The driver was selected by Defendants Lucent, and the seminar was arranged by Defendants Lucent and conducted by Defendants Lucent.  The Intervenor was required, by Defendants Lucent, to attend the seminar.

12.     Decisions as to the Decedents' attendance at the seminar, their transportation to and from the seminar, the driver and the use of the suburban for their transportation, and other related maters were made by Defendants Lucent's managerial employees at their Brownsville, Texas location.  The Decedents systematically and

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention
                                                                                    — p. 8 of 17 pp. —

routinely traveled to the Brownsville office of Defendants **Lucent** for their work.   The

Decedents' work was performed for and to the benefit of Defendants **Lucent**.

13.    Contracts exist between Defendants **Lucent** and Servicios de Manufacturas

de Monterrey, S.A. de C.V., ("SDM") (the corporation that issued the Decedents' pay

checks) which govern the relationship between Defendants **Lucent** and the Decedents and

establish the duties owed by Defendants **Lucent** to the Decedents.

14.    The contract between Defendants **Lucent** and **SDM**. (The "Texas Contract")

was entered into at Brownsville, Texas, and **Lucent** was assigned all rights and obligations

under the Texas Contract by virtue of an assignment entered into in Brownsville, Texas.

15.    The Texas Contract provides that Defendant **Lucent** provide the following

services, among others, to Plaintiff and **SDM**:

      (a)    advise and assist in determining the number and types of employees
             necessary to operate and manage the facility, and the scope and
             requirements of assignments and positions;

      (b)    advise and assist in the establishment of purchasing procedures;

      (c)    advise and assist in the operation of the facility;

      (d)    advise and assist in the establishment of
             maintenance practices and procedures;

      (e)    provide training for supervisory and production personnel;

      (f)    advise and assist in the installation of and operational training for new
             equipment.

16.    Defendants **Lucent's** decisions regarding the implementation of the Texas

Contract resulted in the August, 1999 incident in which Hector Rojo Medina and others

---

*Davila v. Lucent*                                    Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention
                                              — p. 9 of 17 pp. —

were killed.

## D. Causes of Action

## 1. Strict Liability/Breach of Warranty/Failure to Warn/DTPA

17.     Defendant **Firestone** is now, and at the time of this occurrence, engaged in the business of designing, manufacturing, distributing and/or selling automotive tires, including the tire which blew out on the vehicle involved in the incident made the basis of this lawsuit.

18.     Intervenors allege that the tire made the basis of this lawsuit I. D. numbers P235/75R15 M&S [DOTV6HLB4A296]was defective, unreasonably dangerous and unsafe for its intended purpose at the time it left the control of **Firestone**.  The tire was defectively manufactured and/or designed which caused the blowout made the basis of this lawsuit. A safer alternative design would have prevented or significantly reduced the risk of injuries, without substantially impairing the tire's utility.  Furthermore, a safer alternative design was economically and technologically feasible at the time the product left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge. Further, Intervenors allege that the defects in design and/or manufacture were a producing cause of the damages set forth below.  These acts or omissions give rise to strict products liability against **Firestone**.

19.     Such actions also constitute a violation of the Texas Deceptive Trade Practices Act, § 17.46, et. seq. in that **Firestone** misrepresented characteristics, benefits

*Davila v. Lucent*                    Alejandra Marien Rodriguez de Luna's, et al. Plea In Intervention
                                                                     — p. 10 of 17 pp. —

and the quality of said tires.

20.     The vehicle and tire were defective and unreasonably dangerous, as these terms are defined by law, and such condition of the vehicle was a producing cause of the incident which caused the Decedents' deaths and their relatives' injuries. The vehicle and tire were defective at the time it was released into the stream of commerce.

21.     Defendant **Firestone** expressly and impliedly warranted to the public generally that the P235/75R15 M&S tire installed on the 1996 Chevrolet suburban was an appropriate choice for the vehicle and that the combination of vehicle and tire was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

22.     Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages as a proximate result of Defendant **Firestone's** breach of these warranties.

## 2.  Negligence/Gross Negligence/Malice

23.     Intervenors allege that the Defendants **Firestone** were negligent, grossly negligent and/or acted with malice in designing, manufacturing, and/or marketing of the tire in the following respects:

a.      Defendant Firestone was negligent, grossly negligent, and/or acted with malice in failing to design and/or manufacture the tire so that it would operate properly.

b.      Defendant **Firestone** was negligent, grossly negligent and/or acted with malice in placing the tire on the market and into the hands of the

---

*Davila v. Lucent*                    Alejandra Marien Rodriguez de Luna's, et al. Plea In Intervention
                                                                — p. 11 of 17 pp. —

owners without warning the users of any potential defects and/or limitations of said tire.

24.    Further, Defendant **Lucent,** was negligent and grossly negligent, and acted with malice in the following respects:

a.    Defendant **Lucent** failed to provide for trained and qualified driver to drive its workers to and from its seminars.

b.    Defendant **Lucent** failed to provide safe and adequate mode of transportation for its workers when sending them to seminars.

c.    Defendant **Lucent** failed to maintain the vehicle and tire in a safe condition in order to prevent a blow out such as the occurrence in question.

d.    Defendant **Lucent** failed to properly supervise, train and/or control its employees.

e.    Defendant **Lucent** failed to adequately inspect its vehicles and/or its tires to ensure that the vehicle and/or tires were in proper working order and did not pose a danger to the safety and well-being of those using the vehicle.

25.    The acts and omission of Defendants **Lucent** by and through its Texas managerial employees, constitute negligence, negligence *per se,* negligent hiring, and negligent entrustment of a defective vehicle.

26.    The acts and omissions of the managerial employees of Defendants **Lucent and Firestone** constituted gross negligence and malice, and entitle Plaintiffs to recover actual and punitive damages against said Defendants.

27.    Each and all of the foregoing acts and omissions, taken singularly or in combination, were a proximate cause of the Plaintiffs' damages as set forth below.

---

*Davila v. Lucent*                Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention
                                                                        — p. 12 of 17 pp. —

# E. Damages

28.    As a direct and proximate result of the Defendants' negligence and because of the strict liability of the Defendants, Intervenors have suffered damages as described below.

29.    Decedent, Hector Rojo Medina, suffered conscious pain and suffering immediately following the incident made the basis of this lawsuit.

30.    Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and Remedies Code § 71.001, et. seq., Intervenor **Alejandra Marien Rodriguez De Luna** sues for the following damages she has suffered:

a.    Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiff from the date of the incident in question until the remainder of decedent's lifetime had he lived;

b.    All future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiff will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

c.    Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

d.    Damages for mental anguish suffered by the Plaintiff, from the date of the incident in question until the remainder of her lifetime;

e.    All future damages for mental anguish suffered by Plaintiff, which in reasonable probability Plaintiff will suffer for the remainder of her lifetime.

*Davila v. Lucent*    Alejandra Marien Rodriguez de Luna's, et al. Plea in Intervention
— p. 13 of 17 pp. —

08/28/01   TUE 01:19   [TX/RX NO 7127]

31.     Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and

Remedies Code, § 71.001, et. seq., Plaintiffs, **Kelly Astrid Rojo Rodriguez, Cynthia**

**Ivette Rojo Rodriguez, and Mayra Evelyn Rojo Rodriguez** sue for the following

damages they have suffered:

      a.     Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiffs from the date of the incident in question until the remainder of decedent's lifetime had he lived;

      b.     all future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiffs will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

      c.     Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

      d.     Damages for mental anguish suffered by the Plaintiffs, from the date of the incident in question until the remainder of their lifetime;

      e.     All future damages for mental anguish suffered by Plaintiffs, which in reasonable probability Plaintiffs will suffer for the remainder of their lifetime.

32.     Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and

Remedies Code, § 71.001, et. seq., Plaintiffs, **Miguel Angel Rojo Garcia and Luz Medina**

**Andrade** sue for the following damages they have suffered:

      a.     Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiffs from the date of the incident in question until the remainder of decedent's lifetime

---

*Davila v. Lucent*                 Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention
                                                         — p. 14 of 17 pp. —

had he lived;

b.  all future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiffs will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

c.  Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

d.  Damages for mental anguish suffered by the Plaintiffs, from the date of the incident in question until the remainder of their lifetime;

e.  All future damages for mental anguish suffered by Plaintiffs, which in reasonable probability Plaintiffs will suffer for the remainder of their lifetime.

33.  Defendants **Lucent and Firestone's** acts and omissions were grossly negligent and done with malice. Defendants **Lucent and Firestone's** acts and omissions, when viewed objectively from said Defendants standpoint at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants **Lucent and Firestone** had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare or other, including the Intervenors.

## F.  Prayer

34.  **WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that on final trial they have:

1.  Actual damages, including physical pain, mental anguish, lost income, as well as all other damages available under the wrongful death and survival

---

*Davila v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention

actions.

2.      Punitive damages.

3.      Funeral and burial expenses

4.      Cost of suit; and

5.      Pre and Post-Judgment interest.

6.      Such other and further relief to which Intervenors may be justly entitled.

Respectfully submitted,

ELLIS, KOENEKE & RAMIREZ, L.L.P.
1101 Chicago
McAllen, Texas   78501-4822
(956) 682-2440 — Telephone
(956) 682-0820 — Telecopier

By:     *Edmundo O. Ramirez/BAB*
        EDMUNDO O. RAMIREZ
        Texas State Bar No. 16501420
        LUIS M. CARDENAS
        Texas State Bar No. 24001837

        ATTORNEYS    FOR    PLAINTIFF-
        INTERVENORS

*Davila v. Lucent*                  Alejandra Marlen Rodriguez de Luna's, et al. Plea In Intervention
                                    — p. 16 of 17 pp. —

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document

was forwarded to all counsel of record in this cause in the manner stated below on this the

August 9, 2001:

      Mr. Michael A. Caddell
      Ms. Cynthia B. Chapman
      Mr. Joe Phillips
      CADDELL & CHAPMAN
      1331 Lamar, Suite 1070
      Houston, Texas 77010-3027

      Mr. Ezequiel Reyna, Jr.
      LAW OFFICES OF EZEQUIEL REYNA, JR.
      702 West Expressway 83
      Weslaco, Texas 78596

_Edmundo O. Ramirez_ /RAB

**EDMUNDO O. RAMIREZ**

---

*Davila v. Lucent*
      Alejandra Marien Rodriguez de Luna's, et al. Plea in Intervention
      — p. 17 of 17 pp. —

CVISPDF – www.fastio.com



FROM

2001年 9月12日(水)14:59/署14:45/X番号4801713932 P 19

Tokyo, JAPAN

## AFFIDAVIT OF HIROYUKI KITA

BEFORE ME, the undersigned official, on this day appeared Hiroyuki Kita, who is personally known to me, and being first duly sworn according to law upon this oath deposed and said:

1. "My name is Hiroyuki Kita, I am over eighteen (18) years of age, I have never been convicted of a felony or crime of moral turpitude, and I am fully competent to make this affidavit.

2. Based on my employment with Bridgestone Corporation, as set forth below, I have personal knowledge of the facts stated in this affidavit, and they are all true and correct.

3. I am employed by Bridgestone Corporation as Manager, Corporate Legal Department.

4. Bridgestone Corporation is incorporated under the laws of Japan and maintains its principal place of business in Tokyo, Japan.

5. Bridgestone Corporation designs, manufactures and markets tires in Japan through transactions that are governed by Japanese law.

6. Bridgestone/Firestone, Inc. is incorporated under the laws of Ohio and maintains its principal place of business in Nashville, Tennessee.

7. I have reviewed Alejandra Marlan Rodriguez De Luna's, Individually and as Representative of the Estate of Hector Rojo Medina and as next friend of Kelly Astrid Rojo Rodriguez, Cynthia Ivette Rojo Rodriguez and Mayra Everlyn Rojo Rodriguez, Miguel Angel Rojo Garcia, and Luz Medina Andrade's Original Plea in Intervention in *Margarita Santos Davila, et al v. Lucent Technologies, Inc., Lucent Technologies Maquiladroas, Inc., Laredo Quality Transfer Services, Inc., Bridgestone/Firestone, Inc. and Bridgestone Corporation,* Civil Action No.B-01-140 in the United States District Court for the Southern District of Texas, Brownsville Division ("the subject lawsuit").



EXHIBIT
2

09/12/01   WED 00:55   [TX/RX NO 8290]

CutePDF - www.fenito.com



8.  Bridgestone Corporation is not licensed to do business in Texas and does not maintain a registered agent for service of process in Texas. *See* **Exhibit 1** Bridgestone Corporation does not do business in Texas. It maintains no offices, places of business, post office boxes, or telephone listings in Texas. Bridgestone Corporation has no real estate, bank accounts or other interest in property in Texas, and has not had real estate, bank accounts or other interest in property in Texas. It has not incurred any obligation to pay, and has not paid, any taxes in Texas. Bridgestone Corporation has no agents or sales representatives in Texas. It has no employees in Texas and has not recruited any employees from Texas. Bridgestone Corporation has not conducted any advertising, solicitation, marketing or other sales promotions activities in Texas. Bridgestone Corporation has not designed, manufactured, sold, advertised, delivered, or issued warranties on any good or product in Texas, nor has it participated in the decision to sell or deliver any good or product to Texas. At no time relevant to this lawsuit has Bridgestone Corporation entered into a contract in Texas or committed any tort, in whole or in part, in Texas.

9.  Tires manufactured in Japan by Bridgestone Corporation that are sold in the United States are purchased from Bridgestone Corporation in Japan. Individual Bridgestone Corporation manufactured tires are then sold by Bridgestone/Firestone, Inc. and other entities/distributors in the United States. Bridgestone Corporation exercises in principle no control over where and to whom such tires are sold. To my best knowledge, (i) Bridgestone Corporation does not advertise its products in the United States; (ii) Any advertising of Bridgestone Corporation manufactured tires is conducted by either Bridgestone/Firestone, Inc. or other entities. All Bridgestone Corporation manufactured tires that come as original equipment on vehicles manufactured in Japan and sold in the United States are purchased by the vehicle manufacturer in Japan. Bridgestone Corporation exercises no control over where and to whom such vehicles are sold.

2

10    Bridgestone Corporation does not maintain or operate the website that can be accessed at www.bridgestonetire.com or www.bridgetone-usa.com.

11.   Bridgestone Corporation did not design, manufacture or market the tire, Department of Transportation Number V6HLB4A296, that is at issue in the subject lawsuit, assuming that the tire model is "FR480", based upon the Plaintiffs' Original Petition in *Maria Olivia Vasquez et al v. Bridgestone Corporation et al*, Cause No.2001CVE001227D1, 49th Judicial District Court of Webb County, Texas.

12.   Bridgestone/Firestone, Inc. is a wholly owned subsidiary of Bridgestone Corporation. Further, Bridgestone Corporation and Bridgestone/Firestone, Inc. are separate, adequately capitalized corporations.

13.   Bridgestone Corporation does not establish daily management policies for Bridgestone/Firestone, Inc. nor does Bridgestone Corporation control the daily operations of Bridgestone/Firestone, Inc.. As a result, the daily operations of Bridgestone Corporation and Bridgestone/Firestone, Inc. are separate.

14.   There are formal barriers between management at Bridgestone Corporation and management at Bridgestone/Firestone, Inc., and the formalities in existence are observed.  As a result:

   ☙  Bridgestone Corporation and Bridgestone/Firestone, Inc. each conducts its own separate shareholder and board of directors meetings.

   ☙  Bridgestone Corporation and Bridgestone/Firestone, Inc. do not share common departments or businesses.

3

    ↳ Bridgestone Corporation and Bridgestone/Firestone, Inc. keep separate books and accounts and file separate tax returns.

    ↳ Bridgestone/Firestone, Inc.'s operating capital is not provided by Bridgestone Corporation. Rather, its operating capital is borrowed from outside sources and/or its own business profits.

15.   As I understand it, working capital used in the day-to-day operations of the company is distinct from long-term investment or improvement.

16.   As sole shareholder of Bridgestone/Firestone, Inc. since 1988, Bridgestone Corporation has made certain additional long-term capital investments in Bridgestone/Firestone, Inc. These long-term investments were not operating capital.

17.   In 1991, Bridgestone Corporation invested $1.4 billion in Bridgestone/Firestone, Inc. for the purpose of extinguishing long-term debt. These funds were not used as operating capital.

18.   In the mid-1990s, Bridgestone Corporation invested another $400 million in Bridgestone/Firestone, Inc. for purposes of building a new manufacturing facility. These funds were not used as operating capital.

19.   As a normal course of parent company's conduct for its subsidiaries, Bridgestone Corporation provided a Guarantee dated December 20, 1999 for a series of commercial paper issued in 2000 and 2001 by Bridgestone/Firestone, Inc. In so doing, Bridgestone Corporation did not provide any funds to Bridgestone/Firestone, Inc. whatsoever.

20.   Bridgestone Corporation does not maintain an interactive web site to solicit business from the United States and does not solicit business for or on behalf of Bridgestone/Firestone, Inc.

4

CutePDF - www.testco.com

21.   Bridgestone Corporation has never filed suit in a Texas court.

22.   No Texas court has previously found that the exercise of personal jurisdiction over Bridgestone

Corporation was appropriate on the basis of its relationship with Bridgestone/Firestone, Inc.

Further Affiant sayeth not."

Hiroyuki Kita

Manager, Corporate Legal Department

Bridgestone Corporation

SUBSCRIBED AND SWORN to before me under oath by Hiroyuki Kita on this 12th day of September, 2001.

## TOKYO LEGAL AFFAIRS BUREAU

Notary Public      Tsuneo FURUHATA



5

2001年 9月23日(水)14:59/請14:45/文書番号4801713832 P 24



# The State of Texas

## SECRETARY OF STATE

I, ELTON BOMER, Secretary of State of Texas, DO HEREBY CERTIFY that a diligent search of the active and inactive records of this office reveals no record of a domestic or foreign corporation, limited partnership or limited liability company on file in this office with the name BRIDGESTONE CORPORATION.



*IN TESTIMONY WHEREOF, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on November 29, 2000.*

Elton Bomer
Secretary of State

#53

Registered No. 0984

September 12, 2001

# Notarial   Certificate

This is to certify that Mr. Hiroyuki KITA, Manager, Corporate Legal Department of BRIDGESTONE CORPORATION, being legally constituted and existing in accordance with the laws of JAPAN and located at 10-1, Kyobashi 1-chome, Chuo-ku, Tokyo , JAPAN, swore before me in accordance with the legal procedure, that the statement in the attached document ("**AFFIDAVIT OF HIROYUKI KITA**" ) is truthful , and he signed the document in my very presence on this 12th day of   September , 2001.



Notary,

(Name)  Tsuneo  FURUHATA

Attached to the Tokyo Legal Affairs Bureau

My commission expires:

January 22, 2003.

平成 13 年登簿第　0984　号

# 認　　証

　　嘱託人・株式会社ブリヂストン（本店：東京都中央区京橋一丁目１０番１号）法務部課長　北　博行（Hiroyuki KITA）は、本公証人の面前において、添付書面「宣誓供述書」の記載が真実である旨陳述した上、これに署名した。

よって、これを認証する。
　平成 13 年 9 月 12 日、　本公証人役場において

　　　東京都中央区京橋一丁目１番１０号
　東京法務局所属
　公証人　　　　古畑　恒雄

　　Tsuneo FURUHATA NOTARY



# 証　　明

　上記署名は、東京法務局所属公証人の署名に相違ないものであり、かつ、その押印は、真実のものであることを証明する。
　平成 13 年 9 月 12 日

　　東京法務局長　　寳金敏明

## C E R T I F I C A T E

　　This is to certify that the signature affixed above has been provided by Notary, duly authorized by the Tokyo Legal Affairs Bureau and that the Official Seal appearing on the same is genuine.

Date　September 12, 2001

**Toshiaki HOUKIN**
Director of the Tokyo Legal Affairs Bureau



# APOSTILLE

## (Convention de La Haye du 5 octobre 1961)

1. Country : **JAPAN**

   This public document

2. has been signed by   **Toshiaki HOUKIN**

3. acting in the capacity of  Director of the Tokyo Legal Affairs Bureau

4. bears the seal/stamp of

### Certified

5. at Tokyo                         6. Date  September 12, 2001

7. by the Ministry of Foreign Affairs

8. 01 — № 020290

9. Seal/stamp:                      10. Signature:

                                    *T. Mochizuki*

                                    Takeshi MOCHIZUKI
                                    **For the Minister for Foreign Affairs**

