


PY

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

OCT 1 1 2001

Michael N. Milby
Clerk of Court

MARGARITA SANTOS DAVILA, et al., §
§
Plaintiffs, §
v. § CASE NO. B-01-140
§
§
LUCENT TECHNOLOGIES, INC, et al., §
§
Defendants. §
§

## DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S
## MOTION TO ABATE PRETRIAL PROCEEDINGS

Defendant Bridgestone/Firestone, Inc. ("Firestone") files this Motion to Abate Pretrial

Proceedings. Firestone respectfully shows as follows:

## I.
## INTRODUCTION

The claims which Plaintiffs and Intervenors attempt to assert in this case have already been

dismissed with prejudice by Judge Howell Cobb in the United States District Court for the Eastern

District of Texas. Judge Cobb considered the *very claims* asserted here, and determined that those

claims are controlled by Mexican law and should be tried in Mexico, where the Plaintiffs and

Intervenors reside, where the accident occurred, and where the bulk of the evidence is located.

Accordingly, on August 7, 2001, Judge Cobb dismissed the claims -- with prejudice -- based on

forum non conveniens.

Because Plaintiffs seek to relitigate the same claims dismissed by Judge Cobb -- and thereby

frustrate the effect of Judge Cobb's order -- Defendants have moved in Judge Cobb's court for an

CMPDF - www.fineso.com

injunction prohibiting Plaintiffs and Intervenors from attempting to relitigate their claims here or in any other court in the United States.[1] *See* Exs. 1 and 2. Defendants intend to seek a prompt hearing before Judge Cobb on their injunction request. Pending Judge Cobb's ruling, Defendants request that this Court abate discovery and all other pretrial proceedings, including the parties' obligations under Federal Rule of Civil Procedure 26 to confer and to provide initial disclosures. *See* Fed. R. Civ. P. 26(a), (b), (f).

By abating pretrial proceedings, this Court will promote judicial economy by eliminating the parties' need to engage in activities that will be rendered unnecessary and moot if and when Judge Cobb enjoins Plaintiffs and Intervenors from pursuing this litigation.

## II.
## PROCEDURAL BACKGROUND

This lawsuit arises from a one-car accident that occurred on August 12, 1999, in Nuevo Leon, Mexico. Plaintiffs originally filed their claims arising from this accident in state court in Orange County, Texas, on January 19, 2001. *See* Ex. 3. Intervenors filed a Plea in Intervention in the Orange County suit on February 23, 2001. *See* Ex. 4. As demonstrated by Exhibits 3 and 4, the very claims which Plaintiffs and Intervenors attempt to assert here were presented in the Orange County suit.

Defendants subsequently removed the Orange County suit to the United States District Court for the Eastern District of Texas, Beaumont Division, based on diversity of citizenship. Defendants

---

[1] Defendants are in the first instance seeking an injunction from Judge Cobb, rather than moving to dismiss in this Court based on res judicata and collateral estoppel, because of Judge Cobb's familiarity with the case. *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 721 (5th Cir. 1990) ("Being familiar with the history of the case . . . the district court determined that it was appropriate to [enjoin relitigation of plaintiffs' claims].").

CamPDF - www.fenba.com

then moved to dismiss based on forum non conveniens. After extensive briefing on this issue and an oral hearing, Judge Howell Cobb granted Defendants' motion to dismiss. In a detailed Memorandum Opinion, he determined that the claims were governed by Mexican law and should be heard in Mexico. *See* Ex. 5 at 18. Importantly, he dismissed Plaintiffs' and Intervenors' claims *with prejudice*. *See* Ex. 6; *see also* Ex. 5 at 20. Judge Cobb subsequently denied Intervenors' motion for reconsideration.

Plaintiffs, however, were not content with one lawsuit. Represented by different counsel, they filed the current suit in Cameron County state court on February 21, 2001, while the Orange County suit was already pending. In Orange County, Dana Allison and George Chandler represented Plaintiffs; however, Michael Caddell filed the Original Petition in this case.

Understandably confused by Plaintiffs' new filing with different counsel, Defendants Lucent Technologies, Inc. and Lucent Technologies Maquiladoras, Inc. (the "Lucent Defendants") filed a "Motion to Show Authority" to determine who in fact represented Plaintiffs. Before this motion was heard, Ms. Allison appeared on the scene and filed an amended petition (the Second Amended Petition) in this case, purportedly on behalf of the same Plaintiffs. At about the same time, Intervenors (represented by the same counsel as in Orange County) filed their Plea in Intervention.

On August 14, 2001, the Lucent Defendants removed the case to this Court based on diversity of citizenship. Subsequently, however, both Mr. Caddell *and* Ms. Allison disclaimed their intent and/or authority to prosecute this action. First, Ms. Allison sent a letter to the Court and counsel stating that her firm "ha[d] no authority to file the amended petition." Ex. 7. Then, Mr. Caddell sent a letter to counsel stating: "We no longer have any involvement in this matter. Please delete us from your service list and direct all communications for the plaintiffs to Dana Allison and Guy Allison." Ex. 8. Thus, it is not clear whether *anyone* is prosecuting this action on behalf of

Plaintiffs. Notably, after informing the Court that she lacked authority to file the Second Amended

Petition in this case, Ms. Allison filed *yet another* action asserting these same claims, this time in

Webb County, Texas. *See* Ex. 9. Defendants have removed the Webb County suit to the United

States District Court for the Southern District of Texas, Laredo Division. Defendants are likewise

moving to abate those proceedings pending Judge Cobb's ruling.

## III.
## ARGUMENT AND AUTHORITIES

### A.    Judge Cobb Has Authority to Enjoin Plaintiffs and Intervenors from Attempting to Relitigate Their Claims.

Judge Cobb dismissed Plaintiffs' and Intervenors' claims *with prejudice*. *See* Ex. 5 at 20;

Ex. 6. Importantly, the Fifth Circuit has expressly held that a district court has the authority to

dismiss a case "with prejudice" on forum non conveniens grounds. *See Quintero v. Klaveness Ship

Lines*, 914 F.2d 717, 721-22 (5th Cir. 1990). Dismissal with prejudice allows the Plaintiffs and

Intervenors to refile their claims in Mexico, but precludes them from relitigating the claims in a

federal or state court in the United States. *See Quintero*, 914 F.2d at 722 ("By dismissing with

prejudice the district court is effectively enjoining any refiling and later litigation. . . . [W]e

conclude that nothing about a *forum non conveniens* dismissal requires a dismissal without

prejudice.").

The Fifth Circuit also held in *Quintero* that a district court has discretion to issue an

injunction to prevent relitigation of claims dismissed on forum non conveniens grounds. *See* 914

F.2d at 719. Such an injunction "is squarely within the relitigation exception to the Anti-Injunction

Act, 28 U.S.C. § 2282." *Id.* at 720.

Judge Cobb specifically noted in his Memorandum Opinion that "[a] judgment of dismissal

under forum non conveniens here should act to preclude a future lawsuit brought elsewhere in this

country." Ex. 5 at 20. Plaintiffs and Intervenors, however, have sought to frustrate Judge Cobb's order by refiling their claims here and in Laredo. As demonstrated above and in Exhibits 1 and 2 attached hereto, Judge Cobb has the authority to enjoin this repetitive litigation.

**B.     To Promote Judicial Economy and Efficiency, the Court Should Abate Pretrial Proceedings Pending Judge Cobb's Ruling on Defendants' Injunction Request.**

The initial pretrial and scheduling conference in this case is currently set for November 7, 2001. The parties are required to meet as required by FED. R. CIV. P. 26(f) and submit a report of that meeting, along with a joint discovery/case management plan, not less than 10 days before the November 7 conference. Also, the parties are required to make their initial disclosures within 14 days after the Rule 26(f) meeting. *See* FED. R. CIV. P. 26(a)(1)(E). These activities, of course, will be rendered unnecessary and moot if Judge Cobb enjoins the Plaintiffs and Intervenors from proceeding with this litigation. Thus, requiring the parties to proceed with these or any other pretrial activities may result in a waste of time and resources.

This Court is authorized to alter the schedule for Rule 26(f) conferences and initial disclosures. *See* FED R. CIV. P. 26(f) (setting deadline for parties' conference "[e]xcept . . . when otherwise ordered"); FED. R. CIV. P. 26(a) (providing deadline for initial disclosures "unless a different time is set by stipulation or court order"). Likewise, the Court has discretion to abate discovery for the convenience of the parties and in the interest of justice. *See* FED. R. CIV. P. 26(d). Here, abating the pretrial proceedings will further the convenience of the parties and the interest of justice, as it may very well avoid the needless expenditure of time and resources.

## IV.
## PRAYER

For the foregoing reasons, Firestone prays that the Court abate discovery and all other pretrial proceedings, including the parties' obligations under Federal Rule of Civil Procedure 26 to confer

and to provide initial disclosures.  Firestone further prays for any additional relief to which it may

be entitled.                      .

Respectfully submitted,

By: _____

Knox D. Nunnally, Attorney in Charge
State Bar No. 15141000
Federal ID No. 1282
Vinson & Elkins, LLP
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2416
(713) 615-5220 (fax)

OF COUNSEL:

VINSON & ELKINS, LLP
Morgan L. Copeland
State Bar No. 04800500
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2661
(713) 615-5561 (fax)

**ATTORNEYS FOR DEFENDANT
BRIDGESTONE/FIRESTONE, INC.**

6

## CERTIFICATE OF CONFERENCE

I hereby certify that on October 9, 2001, I conferred or attempted to confer with opposing counsel to determine whether they were opposed to the relief requested in this motion. Dana Allison, counsel for Plaintiffs, could not be reached. Edward Barker, counsel for the Lucent Defendants, informed me that he is not opposed. Cynthia Chapman, a partner of Michael Caddell, informed me that she is opposed.

Spikes Kangerga

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following parties by Certified Mail, Return Receipt Requested on October 10, 2001.

Dana R. Allison
Guy H. Allison, Jr.
The Allison Law Firm
855 East Harrison
Brownsville, Texas  78520

William B. Harrison
Law Offices of William B. Harrison
920 Leopard Street
P.O. Drawer 2568
Corpus Christi, Texas  78403-2568

F. Edward Barker
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II - Suite 1200
555 North Carancahua Street
Corpus Christi, Texas  78478

Edmundo O. Ramirez,
Luis M. Cardenas
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago
McAllen, Texas  78501-4822

Michael Caddell
Caddell & Chapman
1331 Lamar, Ste. 1070
Houston, Texas  77010-3027

Spikes Kangerga



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MARGARITA SANTOS DAVILA, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CASE NO. B-01-140 |
| | § | |
| | § | |
| LUCENT TECHNOLOGIES, INC, et al., | § | |
| | § | |
| Defendants. | § | |
| | § | |

**EXHIBITS SUBMITTED IN SUPPORT OF
DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S
MOTION TO ABATE PRETRIAL PROCEEDINGS**

Defendant Bridgestone/Firestone, Inc. ("Firestone") hereby submits the following exhibits

in support of its Motion to Abate Pretrial Proceedings.

Respectfully submitted,

By: _____

Knox D. Nunnally, Attorney in Charge
State Bar No. 15141000
Federal ID No. 1282
Vinson & Elkins, LLP
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2416
(713) 615-5220 (fax)

OF COUNSEL:

VINSON & ELKINS, LLP
Morgan L. Copeland
State Bar No. 04800500
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2661
(713) 615-5561 (fax)

**ATTORNEYS FOR DEFENDANT
BRIDGESTONE/FIRESTONE, INC.**

2

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following parties by Certified Mail, Return Receipt Requested on October 10, 2001.

Dana R. Allison
Guy H. Allison, Jr.
The Allison Law Firm
855 East Harrison
Brownsville, Texas  78520

F. Edward Barker
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II - Suite 1200
555 North Carancahua Street
Corpus Christi, Texas  78478

William B. Harrison
Law Offices of William B. Harrison
920 Leopard Street
P.O. Drawer 2568
Corpus Christi, Texas  78403-2568

Edmundo O. Ramirez,
Luis M. Cardenas
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago
McAllen, Texas  78501-4822

Michael Caddell
Caddell & Chapman
1331 Lamar, Ste. 1070
Houston, Texas  77010-3027

Spikes Kangerga

# Index to Exhibits

1. Lucent Defendants' Motion for Permanent Injunction;

2. Defendant Bridgestone/Firestone, Inc.'s Motion for Permanent Injunction;

3. Plaintiff's Original Petition, Orange County;

4. Original Plea In Intervention, Orange County;

5. Judge Cobb's Memorandum Opinion;

6. Judge Cobb's order of Dismissal;

7. Letter from Dana Allison, Brownsville Case;

8. Letter from Michael A. Caddell, Brownsville Case; and

9. Plaintiff's First Amended Petition, Laredo.

CViSPDF - www.fastio.com

EXHIBIT NO. 1

CVisPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARIA OLIVIA VASQUEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | C.A. No. 1.01-CV-168 |
| | § | |
| | § | |
| BRIDGESTONE FIRESTONE, INC., | § | "JUDGE COBB" |
| GENERAL MOTORS CORPORATION; | § | |
| LUCENT TECHNOLOGIES, INC.; | § | |
| LUCENT TECHNOLOGIES | § | |
| MAQUILADORAS, INC., | § | |
| | § | |
| Defendants. | § | |

---

## LUCENT DEFENDANTS' MOTION FOR PERMANENT INJUNCTION

---

F. Edward Barker, Esq.
Texas State Bar No. 01781000
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II – Suite 1200
555 North Carancahua Street
Corpus Christi, TX  78478
(361) 881-9217
(361) 882-6590 Facsimile
**ATTORNEY IN CHARGE  FOR**
**DEFENDANTS LUCENT TECHNOLOGIES, INC.**
**AND LUCENT TECHNOLOGIES MAQUILADORAS, INC.**

OF COUNSEL:
BARKER, LEON, FANCHER &
MATTHYS, L.L.P.
Roland L. Leon
State Bar No. 12207400

**RECEIVED**

OCT 0 1 2001

**KDN**

# TABLE OF CONTENTS

PAGE

MOTION ................................................................................................... 1

RELEVANT FACTS ................................................................................... 2

A.   Vasquez I ........................................................................................ 2

B.   Vasquez II ....................................................................................... 3

C.   Vasquez III ...................................................................................... 3

D.   Vasquez IV ...................................................................................... 4

JURISDICTION AND AUTHORITY......................................................... 4

ARGUMENT ............................................................................................. 5

I.   THIS COURT'S DETERMINATION THAT MEXICO IS THE MOST APPROPRIATE
     FORUM FOR LITIGATING CLAIMS ARISING FROM THE ACCIDENT SHOULD
     PRECLUDE PLAINTIFFS AND INTERVENORS FROM LITIGATING THOSE CLAIMS
     IN ANY COURT IN AMERICA ........................................................... 5

II.  IN THE ALTERNATIVE, THIS COURT'S RESOLUTION OF THE FNC AND CHOICE
     OF LAW ISSUES PRECLUDES THE RELITIGATION OF THOSE ISSUES IN ANY
     COURT IN TEXAS, FEDERAL OR STATE........................................... 8

     A.   This Court's Determination That Mexican Law Controls May Not be Relitigated in
          Any Texas Federal Court and Bars the Assertion of Any Claim Under Texas
          Law ......................................................................................... 9

     B.   This Court's Determination that Mexican Law Controls May Not be Relitigated
          in Any Texas State Court and Bars the Assertion of Any Claim Under Texas
          Law. ........................................................................................ 10

     C    This Court's Determination that Mexico is the Most Appropriate Forum May Not Be
          Relitigated in Any Texas Federal Court. ........................................ 11

     D.   This Court's Determination That Mexico is the Most Appropriate Forum May Not
          Be Relitigated in Any Texas State Court. ....................................... 13

ii

III     EQUITABLE RELIEF IS APPROPRIATE ........................................ ......... ........... ... ..14

IV.     THE INJUNCTION SHOULD BAR ANY FURTHER ACTIONS. .......................... .....16

V      THE INJUNCTION SHOULD ENCOMPASS THE ATTORNEYS ...............................17

CONCLUSION.............................................................................................................. ....... . ......17

iii

# MOTION

Defendants Lucent Technologies, Inc. ("Lucent") and Lucent Technologies Maquiladoras, Inc. ("L.T. Maquiladoras") (collectively the "Lucent Defendants"), by and through their attorney in charge, F. Edward Barker, move this Court pursuant to Rule 65, F.R.C.P., and 28 U.S.C. § 1651(a), for the entry of an order permanently enjoining Plaintiffs, Intervenors and their attorneys of record from pursuing any claim arising from the accident (as described herein) against the Lucent Defendants in any court of the United States or of any state within the United States (other than an appeal from the judgment entered herein); or, in the alternative, permanently enjoining Plaintiffs, Intervenors and their attorneys of record from: (1) pursuing any claim against the Lucent Defendants arising from the accident based upon Texas law (or based upon any law other than the law of Mexico) in any court (state or federal) in Texas; and (2) attempting to relitigate the issue of *forum non conveniens* ("FNC") in any court (state or federal) in Texas; unless and until the judgment of dismissal entered by this Court on August 7, 2001, is reversed on appeal following exhaustion of the appellate process. In addition, the Court should permanently enjoin Plaintiffs, Intervenors and their attorneys of record from instituting any new lawsuit against the Lucent Defendants in any court of the United States or of any state within the United States, for claims arising from the accident. As grounds therefore, the Lucent Defendants state that these issues were litigated in this case and decided by this Court in the "Memorandum Opinion" and "Order of Dismissal" entered on August 7, 2001, and that the Lucent Defendants will suffer irreparable injury if the Plaintiffs, Intervenors and/or their attorneys are permitted to relitigate any of these issues in any court in the United States, as they are attempting to do, all as more fully explained below.

# RELEVANT FACTS

This litigation arises from an automobile accident which occurred near Monterrey, Mexico, on August 12, 1999 (hereafter the "Accident"). Six residents and citizens of Mexico were killed in the Accident: Valente Ibarra Ibarra, Jesus Davila Paz, Sergio Alberto Zavala Ponce, Gabriella Villagran Castro, Ivonne Juarez, and Hector Rojo Medina (collectively the "Decedents"). The surviving spouses of the Decedents, suing in multiple capacities, have repeatedly attempted to litigate, in the United States, wrongful death and other claims arising from the Accident. A summary of these attempts follows:

A.      Vasquez I

On March 15, 2000, surviving relatives of five decedents (Valente Ibarra Ibarra, Jesus Davila Paz, Sergio Alberto Zavala Ponce, Gabriella Villagran Castro and Ivonne Juarez) (hereafter the "Plaintiffs") filed a lawsuit in the United States District Court for the Southern District of Texas, civil case number B-00-040. (Exhibit 1, Plaintiffs' Original Complaint, Civil Case No. B-00-040)[1] Plaintiffs named four defendants:  Lucent, L.T. Maquiladoras, Bridgestone/Firestone, Inc. ("Firestone") and Servicios de Manufacturas de Monterrey, S.A. de C.V. ("Servicios").  (Id.)  On May 15, 2000, surviving relatives of the sixth decedent, Hector Rojo Medina (hereafter the "Intervenors"), filed a plea in intervention.  (Exhibit 2, First Amended Original Plea in Intervention, Civil Case No. B-00-040)  On June 14, 2000, Judge Tagle dismissed that action for lack of jurisdiction.  That action will be referred to hereafter as "Vasquez I."

---

[1]      References are to the "Exhibits Submitted in Support of Lucent Defendants' Motion for Permanent Injunction"

CbfPDF - www.fastio.com

B.     <u>Vasquez II</u>

On January 19, 2001, Plaintiffs filed suit in the District Court for the 128th Judicial District, Orange County, Texas. Plaintiffs again named four defendants: Lucent, L.T. Maquiladoras, Firestone and General Motors Corporation ("GMC"). On February 23, 2001, Intervenors filed a plea in intervention On March 19, 2001, the Lucent Defendants removed that action to this Court, and then moved this Court to dismiss that action on the grounds of FNC. Defendants Firestone and GMC filed similar motions. After extensive briefing by all parties addressing all aspects of the FNC question, including choice of law, this Court on August 7, 2001, issued its "Memorandum Opinion" (hereafter the "Memorandum") declaring that Mexican law controlled and dismissing this case with prejudice on the grounds of FNC. This case will be referred to hereafter as "<u>Vasquez II</u>."

On September 18, 2001, Plaintiffs and Intervenors timely initiated an appeal of this Court's rulings in <u>Vasquez II</u> to the United States Court of Appeals for the Fifth Circuit.

C.     <u>Vasquez III</u>

On February 21, 2001, surviving relatives of three decedents (Jesus Davila Paz, Sergio Alberto Zavala, and Valente Ibarra Ibarra) filed a third action, this one in the District Court for the 404th Judicial District, Cameron County, Texas. (Exhibit 3, Plaintiffs' Original Petition, Case No. 2001-02-897-G) These plaintiffs named five defendants: Lucent, L.T. Maquiladoras, Firestone, Bridgestone Corporation ("Bridgestone") and Laredo Quality Transfer Services, Inc. ("Laredo"). (<u>Id.</u>) The petition originating that action was filed by attorney Michael Caddell. (<u>Id.</u> at p. 13) After this Court dismissed <u>Vasquez II</u> with prejudice, attorney Dana Allison, who represented the Plaintiffs in <u>Vasquez II</u>, filed an amended petition in which these five Plaintiffs name six defendants: Lucent, L.T. Maquiladoras, Firestone, Bridgestone, GMC and Laredo. (Exhibit 4, Plaintiffs' Second

3

Amended Petition). On the same date, Intervenors filed a plea in intervention.[2] (Exhibit 5, Original Plea in Intervention, Cause No. 2001-02-897-G). On August 14, 2001, the Lucent Defendants removed that action to the United States District Court for the Southern District of Texas, asserting that the claims against Bridgestone and Laredo amounted to fraudulent joinder. That action is pending and will be referred to hereafter as Vasquez III.

    D.    <u>Vasquez IV</u>

On August 20, 2001, the Plaintiffs filed yet another lawsuit, this one in the District Court for the 49th Judicial District, Webb, County, Texas. (Exhibit 6, Plaintiffs' Original Petition). Plaintiffs named eight defendants: Lucent, L.T. Maquiladoras, Firestone, Bridgestone, GMC, Rudolf Miles & Sons, Inc., Dicex International, Inc., and Carlos Ramirez Villanueva. (Id.) On August 28, 2001, Plaintiffs filed an amended petition in which they add claims against Bridgestone/Firestone de Mexico, S.A. de C.V. ("Firestone de Mexico"). (Exhibit 7, Plaintiffs' First Amended Petition). At the time of filing this Motion, defendants intended to remove that action to the United States District Court for the Southern District of Texas, arguing that Bridgestone, Rudolf Miles & Sons, Dicex International, Firestone de Mexico and Carlos Villanueva had been fraudulently joined. That lawsuit is pending and will be referred to hereafter as "Vasquez IV."

## JURISDICTION AND AUTHORITY

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(2). That jurisdiction encompasses the authority to issue an injunction, even after an order of dismissal has entered. Carey v. Sub Sea International, Inc., 121 F. Supp.2d 1071, 1073 (E.D. Tex. 2000), aff'd at 211 F.3d 594 (5th Cir. 2000) (table); Southwest Airlines Co. v. Texas International Airlines, 546

---

[2]    On August 9, 2001, Intervenors filed a plea in intervention in the District Court for the 128th Judicial District, Orange County, Texas. Realizing their mistake, Intervenors non-suited that action on August 27, 2001

F.2d 84, 90 (5th Cir. 1977) ("Southwest"); 17 Wright & Miller, Federal Practice and Procedure at §

4226, pp.547-548. Further, the Court may issue an injunction to protect its judgment even after a

notice of appeal has been filed. In re Ocean Ranger Sinking Off Newfoundland, 617 F. Supp. 435,

438-439 (E.D. La. 1985) (hereafter "Ocean Ranger"); BGW Associates, Inc. v. Valley Broadcasting

Co., 532 F. Supp. 1115, 1116-1117 (S.D. N.Y 1982); Oliver v. Kalamazoo Board of Education, 510

F. Supp. 1104, 1106-1107 (W.D. Mich. 1981); Hayward v. Clay, 456 F. Supp. 1156, 1159-1160

(D.S.C. 1977); 16A Wright & Miller, Federal Practice and Procedure at § 3949.1, pp.50-51

This Court has authority under the All Writs Act, 28 U.S.C. § 1651(a), to issue an injunction

barring relitigation in other federal or state courts of issues already litigated and decided in this

Court. Kinnear-Weed Corp. v. Humble Oil & Refining Co., 441 F.2d 631, 637 (5th Cir. 1971)

(federal court); Santopadre v. Pellican Homestead and Savings Association, 749 F. Supp. 124, 125

(E.D. La 1990) (state court), aff'd at 937 F.2d 268 (5th Cir. 1991); Foyt v. Championship Auto

Racing Teams, Inc., 947 F. Supp. 290, 295 and n.11 (S.D. Tex. 1996) (federal and state court).

## ARGUMENT

I.   **THIS COURT'S DETERMINATION THAT MEXICO IS THE MOST APPROPRIATE FORUM FOR LITIGATING CLAIMS ARISING FROM THE ACCIDENT SHOULD PRECLUDE PLAINTIFFS AND INTERVENORS FROM LITIGATING THOSE CLAIMS IN ANY COURT IN AMERICA.**

In its Memorandum, this Court dismissed Vasquez II (the action herein) with prejudice on

the grounds of FNC, determining that Mexico was the appropriate forum in which to litigate claims

arising from the Accident. That determination precludes Plaintiffs and Intervenors from litigating

claims arising from the Accident anywhere in America.

Under the All Writs Act, a federal court has the power to enjoin a party before it from

attempting to relitigate the same claim or issue in another court. Kinnear-Weed, supra, 441 F.2d at

637; <u>Foyt</u>, <u>supra</u>, 947 F. Supp at 294-296. Such an injunction embodies the principles of *res judicata* and collateral estoppel. <u>Kinnear-Weed</u>, <u>supra</u>, 441 F.2d at 637 It therefore extends to any claim previously litigated (*res judicata*) and to any issue previously decided (collateral estoppel) <u>United States v Shanbaum</u>, 10 F 3d 305, 310-311 (5th Cir. 1994) (explaining *res judicata* and collateral estoppel).

When a federal court has dismissed a case on FNC grounds, holding that a foreign country rather than any court in the United States is the appropriate forum, that ruling is *res judicata* and binds plaintiff throughout the United States. <u>Villar v. Crowley Maritime Corp.</u>, 780 F. Supp. 1467, 1482-1483 (S.D. Tex. 1992), <u>aff'd</u> at 990 F.2d 1489 (5th Cir. 1993); <u>Carey</u>, <u>supra</u>, 121 F. Supp.2d at 1075-1076); <u>Anastasiadis v. Mecom</u>, 265 F. Supp. 959, 960 (S.D. Tex. 1966). In such a situation, the court may enjoin plaintiffs from litigating their claims in anywhere in the United States. <u>Villar</u>, <u>supra</u>, 780 F. Supp. at 1485-1486 (plaintiffs enjoined from litigating dispute "in any federal court, in any Texas state court, or in any other state court"); <u>Carey</u>, <u>supra</u>, 121 F. Supp.2d at 1076; <u>Simcox v. McDermott International, Inc.</u>, 152 F.R.D. 689, 700-701 (S.D. Tex. 1994) (". . . plaintiffs are enjoined from filing and/or prosecuting any claims arising out of the facts which form the subject matter of this action in any other court, state or federal, in the United States"). Such an injunction, insofar as it bars proceedings in state court, falls within the "relitigation exception" to the Anti-Injunction Act, as explained below.

Here, the FNC motions filed by the defendants in <u>Vasquez II</u> and briefed extensively by all parties raised the question whether this case should proceed in the United States or in Mexico. (Memorandum at 2, 3-4, 11, 16, 15). After reviewing the extensive submissions by all parties, this Court concluded that Mexico was the appropriate forum and the United States was not. (Memorandum at 15-17, 19). This Court then concluded that "A judgment of dismissal under *forum*

6

*non conveniens* here should act to preclude a future lawsuit brought <u>elsewhere in this country</u>." (Memorandum at 20; emphasis added). This Court's determination that Mexico, not the United States, is the appropriate forum binds Plaintiffs and Intervenors throughout these United States and should preclude any similar lawsuit against the Lucent Defendants "brought elsewhere in this country." <u>Villar</u>, <u>supra</u>, 780 F. Supp. at 1482-1483; <u>Carey</u>, <u>supra</u>, 121 F. Supp.2d at 1075-1076. Accordingly, this Court may enjoin Plaintiffs and Intervenors from litigating claims arising from the Accident anywhere in America. <u>Villar</u>, <u>supra</u>, 780 F. Supp. at 1485-1486; <u>Carey</u>, <u>supra</u>, 121 F. Supp.2d at 1076; <u>Simcox</u>, <u>supra</u>, 152 F.R.D. at 701.

Further, the fact that plaintiffs and intervenors have initiated an appeal of this Court's rulings in <u>Vasquez II</u> does not deprive those rulings of *res judicata* effect pending the outcome of that appeal. Federal courts follow the majority rule, under which a judgment retains sufficient finality for *res judicata* and collateral estoppel purposes even during an appeal. <u>Pharmacia & Upjohn Co. v. Mylan Pharmaceuticals</u>, 170 F.3d 1373, 1381 (Fed. Cir. 1999); <u>Smith v. Securities and Exchange Commission</u>, 129 F.3d 356, 362, n.7 (6th Cir. 1997); <u>Old Republic Ins. Co. v. Chuhak & Tecson, P.C.</u>, 84 F.3d 998, 1000-1001 (7th Cir. 1996); <u>Robi v. Five Platters, Inc.</u>, 838 F.2d 318, 327 (9th Cir. 1988); <u>Ruyle v. Continental Oil Co.</u>, 44 F.3d 837, 846 (10th Cir. 1994); <u>First Alabama Bank of Montgomery v. Parsons Steel, Inc.</u>, 825 F.2d 1475, 1480-1481 and n.5 (11th Cir. 1987); <u>Restatement (Second) of Judgments</u> at § 13, <u>comment f</u>, p.135; 18 Wright & Miller, <u>Federal Practice and Procedure</u> at § 4443, p.308. Not surprisingly, this rule is followed by federal district courts in Texas. <u>Timmons v. Special Insurance Services</u>, 984 F. Supp. 997, 1008 (E.D. Tex. 1997), <u>aff'd</u> at 167 F.3d 537 (5th Cir. 1998) (table); <u>TCA Building Co. v. Northwestern Resources Co.</u>, 861 F. Supp. 1366, 1374 (S.D. Tex. 1994). Therefore, this Court may issue an injunction to enforce the *res judicata* effect of its rulings in <u>Vasquez II</u>, notwithstanding the fact that those rulings are currently on appeal.

See Santopadre, supra, 749 F. Supp. at 127 and n.3 (injunction issued while appeal pending); Ocean Ranger, supra, 617 F. Supp. at 438-439 (same); BGW Associates, supra, 532 F. Supp. at 1116 (same).  In fact, "it is precisely the appealability of this Court's" rulings in Vasquez II "that warrants the issuance of the injunction."  Ocean Ranger, supra, 617 F. Supp. at 439.

II.    IN THE ALTERNATIVE, THIS COURT'S RESOLUTION OF THE FNC AND CHOICE OF LAW ISSUES PRECLUDES THE RELITIGATION OF THOSE ISSUES IN ANY COURT IN TEXAS, FEDERAL OR STATE.

In the Memorandum concluding Vasquez II, this Court resolved two distinct issues: (1) that Mexican law governed all claims arising from the Accident; and (2) that Mexico is the appropriate forum for the litigation of those claims.  Assuming for purposes of argument that this Court's judgment dismissing Vasquez II was not "on the merits," the issues actually decided therein nonetheless bind Plaintiffs and Intervenors through the doctrine of collateral estoppel (also known as issue preclusion or direct estoppel), in both federal and state courts throughout Texas.  This Court may (and should) enforce the collateral estoppel effect of its determinations by enjoining Plaintiffs and Intervenors from relitigating in any state or federal court in Texas the conclusions that Mexico is the appropriate forum and that Mexican law controls.

A judgment need not be on the merits to preclude relitigation of issues actually determined in the prior action.  Alma Torreblanca de Aguilar v. Boeing Co., 806 F. Supp. 139, 141 (E.D. Tex. 1992), aff'd at 11 F.3d 55 (5th Cir. 1993) ("Aguilar").  Rather, under the doctrine of direct estoppel, a party is barred from relitigating issues that were necessary to the court's judgment and actually determined in the prior action.  Id.  Three requirements must be met for the application of direct estoppel:  1) the issue to be precluded must be identical to that involved in the prior action; 2) in the prior action, the issue must have been actually litigated; and 3) the determination made of the issue must have been necessary to the resulting judgment.  Id.  This Court's determinations in Vasquez

8

II that the substantive law of Mexico controls and that Mexico is the appropriate forum satisfy each of these requirements.

A.   This Court's Determination That Mexican Law Controls May Not be Relitigated in Any Texas Federal Court and Bars the Assertion of Any Claim Under Texas Law.

First, the facts of this case will present the identical choice of law issue to any other federal court in Texas as was presented to this Court in Vasquez II, because federal courts must follow the choice of law rules of the state in which they sit.   Klaxon Co. v. Stentor Electric Manufacturing Co., 313 U.S. 487, 85 L.Ed.2d 1477, 61 S. Ct. 1020, 1021 (1941).   Second, the choice of law issue was fully litigated in Vasquez II.   Plaintiffs and Intervenors argued extensively that Texas law should govern their claims.   Third, this Court's resolution of the choice of law issue was necessary to its ruling on the FNC motions.   When addressing an FNC motion, the court must consider various "public interest" factors.   Piper Aircraft Co. v. Reyno, 454 U.S. 235, 70 L.Ed.2d 419, 102 S. Ct. 252, 258, n.6 (1981).   An important public interest factor is the law which governs the parties' dispute.   Reyno, supra, 102 S. Ct. at 258, n.6 and 263. This Court dismissed Vasquez II in large measure because Mexican law governed the claims.   (Memorandum at 18-19) ("Because Mexican law would be applied, a Mexican court which understands that law far better than this one should hear the case").   Accordingly, this Court's determination that Mexican law controls is entitled to collateral estoppel effect in federal court.   Therefore, this Court may enjoin Plaintiffs and Intervenors from relitigating the choice of law issue in any federal court in Texas.

If Plaintiffs and Intervenors are barred from relitigating the choice of law issue, then the law of Mexico governs their claims.   If the law of Mexico governs their claims, then Plaintiffs and Intervenors may not assert claims under Texas law.   Accordingly, the Court may enjoin Plaintiffs and Intervenors from asserting any claim based on Texas law against the Lucent Defendants in any

9

federal court in Texas.

    B.    <u>This Court's Determination That Mexican Law Controls May Not be Relitigated in Any Texas State Court and Bars the Assertion of Any Claim Under Texas Law.</u>

A federal court may enjoin proceedings in state court when necessary "to protect or effectuate its judgments." 28 U.S.C. § 2283  This "relitigation exception" to the Anti-Injunction Act permits a federal court to enjoin the parties before it from relitigating in state court any claim or issue governed by the *res judicata* or collateral estoppel effect of a prior federal judgment. <u>Chic Kam Choo v. Exxon Corp.</u>, 486 U.S. 140, 100 L.Ed.2d 127, 108 S. Ct. 1684 (1988); <u>Woods Exploration and Production Co. v. Aluminum Co. of America</u>, 438 F.2d 1286, 1312 (5th Cir. 1971) (hereafter "<u>Woods</u>"); <u>International Association of Machinists & Aerospace Workers v. Nix</u>, 512 F.2d 125, 131-132 (5th Cir. 1975). This doctrine "assures the winner in a federal court that he will not be deprived of the fruits of his victory by a later contrary state judgment which the Supreme Court may or may not decide to review." <u>Woods</u>, <u>supra</u>, 438 F.2d at 1312. It enables a party with a favorable federal judgment to protect that judgment by enjoining repetitive state court proceedings without having to rely upon a plea of <u>res judicata</u> in the state court. <u>Carey</u>, <u>supra</u>, 121 F. Supp. 2d at 1073.

Here, because this Court's determination that Mexican law governs the claims arising from the Accident satisfies each of the requirements for collateral estoppel, Plaintiffs and Intervenors may not relitigate that issue in any Texas state court. First, the choice of law issue raised by the facts of this case is identical, whether the case is filed in federal or state court. When resolving the choice of law issue in <u>Vasquez II</u>, this Court applied Texas choice of law rules as embodied in the "most significant relationship test." (<u>Id</u>.). A Texas state court addressing the choice of law issues presented by these claims would apply the same test. <u>Gutierrez v. Collins</u>, 583 S.W.2d 312, 318 (Tex. 1979); <u>Duncan v. Cessna Aircraft Co.</u>, 665 S.W.2d 414, 421 (Tex. 1984). Accordingly, the

choice of law issue presented to any Texas state court is identical to the choice of law issue presented to this Court in <u>Vasquez II</u>. Second, as explained above, the choice of law issue was fully litigated in <u>Vasquez II</u> and was essential to the Court's resolution of the FNC question.

Accordingly, Plaintiffs and Intervenors are collaterally estopped by this Court's resolution of the choice of law question in <u>Vasquez II</u> from attempting to relitigate that issue in any Texas state court. This Court may therefore issue an injunction enjoining Plaintiffs and Intervenors from attempting to relitigate the choice of law issue in any Texas state court. <u>Chic Kam Choo</u>, <u>supra</u>, 108 S. Ct. at 1691-1692; <u>Quintero v. Klaveness Ship Lines</u>, 914 F.2d 717, 720-721 (5th Cir. 1990). As a matter of law, such an injunction falls "squarely within" the relitigation exception of the Anti-Injunction Act and is "exactly the [type of] injunction that the Supreme Court authorized in <u>Chic Kam Choo</u>." <u>Quintero</u>, <u>supra</u>, 914 F.2d at 721-722.

Because Plaintiffs and Intervenors are governed by Mexican law, they may not assert a claim under Texas law. Accordingly, an injunction barring Plaintiffs and Intervenors from attempting to assert in a Texas state court any claims arising under Texas law is appropriate. <u>Chic Kam Choo</u>, <u>supra</u>, 1691-1692; <u>Exxon Corp. v. Chic Kam Choo</u>, 881 S.W.2d 301, 303, n.3 (Tex. 1994) ("Thus, the federal district court necessarily precluded the application of Texas law. An injunction preventing the relitigation of Mrs. Choo's Texas claim was therefore proper").

C.    <u>This Court's Determination That Mexico is the Most Appropriate Forum May Not Be Relitigated in Any Texas Federal Court.</u>

This Court's determination that Mexico is the appropriate forum for the litigation of claims arising from the Accident satisfies each of the requirements for collateral estoppel and therefore binds Plaintiffs and Intervenors in any other federal court in Texas. First, when considering the motions to dismiss, this Court properly applied the FNC doctrine as developed by federal courts.

11

(Memorandum at 9) Any other federal court in the Fifth Circuit must also apply the federal law of FNC. In re Air Crash Disaster Near New Orleans, 821 F.2d 1147, 1159 (5th Cir. 1987), ("Air Crash"). The FNC issue decided herein is therefore identical to the FNC issue in any other federal court in Texas in which this case may be filed.

Second, the question of FNC was actually litigated herein. The parties thoroughly analyzed all aspects of the FNC question in multiple briefs filed with this Court. Third, this Court's determination of the FNC issue was necessary to the resulting judgment of dismissal. Indeed, the Court dismissed Vasquez II with prejudice on the grounds that Mexico was the only appropriate forum in which to litigate claims arising from the Accident. (Memorandum at 11-20). Accordingly, this Court's resolution of the FNC issue in Vasquez II should preclude relitigation of that issue in any federal court in Texas.

This conclusion is consonant with cases specifically applying the doctrine of collateral estoppel to dismissals on the ground of FNC. As a general rule, a federal court's determination of FNC binds the parties in any subsequent suit filed in another federal court. Aguilar, supra, 806 F. Supp. at 141-142; Villar, 780 F. Supp. at 1482. In order to escape the binding effect of a prior FNC dismissal, the plaintiff "must show objective facts relevant to the issue that materially alter the considerations underlying the previous resolution." Villar, supra, 780 F. Supp. at 1482; Aguilar, supra, 806 F. Supp. at 141-142. Here, no "objective facts relevant to the [FNC] issue" materially alter the considerations underlying this Court's determination of the FNC issue in Vasquez II. When dismissing Vasquez II with prejudice, this Court held that Mexico was the only appropriate forum in which to litigate claims arising from the Accident and that no court in the United States would be appropriate. (Memorandum at 15-19). Indeed, this Court believed that its dismissal of Vasquez II "should act to preclude a future lawsuit brought elsewhere in this country." (Memorandum at 20)

12

Accordingly, this Court may enjoin the Plaintiffs and Intervenors from attempting to relitigate in any Texas federal court the issue of FNC.

> D.   This Court's Determination That Mexico is the Most Appropriate Forum May Not Be Relitigated in Any Texas State Court.

Because this Court's resolution of the FNC issue in Vasquez II satisfies each of the requirements for collateral estoppel, it binds Plaintiffs and Intervenors in any Texas state court as well.  First, the FNC issue as presented to this Court in Vasquez II is identical to the FNC issue as presented to any state court in Texas.  The Texas Legislature has declared that Texas courts may dismiss a case on the grounds of FNC.  TEX. CIV. PRAC. and REM. CODE at § 71.051.  With respect to plaintiffs who are legal residents of the United States, the statute adopts the FNC factors applied in federal courts. TEX. CIV. PRAC. and REM. CODE § 71.051(b); Baker v. Bell Helicopter Textron, Inc., 985 S.W.2d 272, 275, n.3 (Tex. App. 1999).  Here, although Plaintiffs are not legal residents of the United States, a Texas state court would nonetheless follow the federal FNC factors as outlined in § 71.051(b) when evaluating this issue. Baker, supra, 985 S.W.2d at 277.  Thus, in essence, a Texas state court faced with the issue would employ virtually the same FNC test as employed by this Court in Vasquez II.

In addition, as already discussed, the resolution of the FNC issue in Vasquez II satisfies each of the other requirements for collateral estoppel: the FNC issue was fully litigated, and it was essential to this Court's judgment of dismissal with prejudice.  Accordingly, the FNC issue as determined by this Court in Vasquez II is binding on Plaintiffs and Intervenors in any Texas state court through collateral estoppel.  The Court may therefore enjoin Plaintiffs and Intervenors from attempting to relitigate that issue in Texas state courts.

Plaintiffs may argue that the decision of the United States Supreme Court in Chic Kam Choo

13

v. Exxon, supra, precludes the issuance of an injunction barring them from relitigating the FNC issue in Texas state court. This argument would be unavailing. At the time Chic Kam Choo was decided, Texas courts could not dismiss a wrongful death claim brought under TEX. CIV. PRAC. and REM. CODE § 71.031 (the "Open Courts Act") on FNC grounds. Dow Chemical Co. v. Castro Alfaro, 786 S.W.2d 674, 679 (Tex. 1990) However, in 1997, the Texas legislature amended § 75.051 (the *forum non conveniens* statute) to make clear that it encompassed actions filed under § 71.031 (the Open Courts Act). See TEX. CIV. PRAC. and REM. CODE § 71.051(i).

Now that the Texas Legislature has declared that Texas courts should apply an FNC analysis to claims brought under § 71.031, and recognizing that a Texas court will apply the federal FNC factors when conducting such analysis, the proscription in Chic Kam Choo no longer controls. Accordingly, the Court may enjoin Plaintiffs and Intervenors from relitigating the FNC issue in Texas state court, notwithstanding Chic Kam Choo. See Villar, supra, 780 F. Supp. at 1482 (discussing Chic Kam Choo and issuing injunction); Carey, supra, 121 F. Supp.2d at 1075-1076 (issuing an injunction well after the decision in Chic Kam Choo); Picco v. Global Marine Drilling Co., 900 F.2d 846, 848 (5th Cir. 1990) (discussing Chick Kam Choo and noting that a federal court may enjoin a state court from hearing a case after a federal FNC dismissal where "the issues raised in the state proceeding had been directly decided by the federal court").

III.    EQUITABLE RELIEF IS APPROPRIATE.

Although the customary rules governing the grant of injunctive relief are of "secondary significance" when considering an injunction to bar relitigation of issues already determined, they are not irrelevant. Superior Savings Association v. Bank of Dallas, 705 F. Supp. 326, 328 and n.5 (N.D. Tex. 1989). In order to secure a preliminary injunction, the moving party must demonstrate four elements: 1) a substantial likelihood of success on the merits; 2) a substantial threat that the

14

movant will suffer irreparable injury if the injunction is not issued; 3) that threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and 4) that the injunction will not disserve the public interest. <u>Apple Barrel Productions, Inc. v. Beard</u>, 730 F.2d 384, 386 (5th Cir. 1984); <u>Dallas Cowboys Cheerleaders, Inc. v. Scoreboard Posters, Inc.</u>, 600 F.2d 1184, 1187 (5th Cir. 1979). Although the Lucent Defendants here seek a permanent injunction, they can nonetheless satisfy each of these requirements.

First, the Lucent Defendants have a "substantial likelihood of success on the merits." Indeed, they have already succeeded: in <u>Vasquez II</u> this Court agreed with the Lucent Defendants that Mexico was the only appropriate forum in which to litigate claims arising from the Accident and that Mexican law would govern those claims. Second, the Lucent Defendants will suffer irreparable injury if the requested injunction is not issued. The "relitigation exception" to the Anti-Injunction Act "was aimed at preventing the costly and judicially wasteful re-determination of issues in state court." <u>Quintero</u>, <u>supra</u>, 914 F.2d at 720-721. The defense of even a frivolous claim can be extremely costly to the defendant and can waste an inordinate amount of court time. <u>Harrelson v. United States</u>, 613 F.2d 114, 116 (5th Cir. 1980). Unless the Plaintiffs and Intervenors are enjoined as requested herein, the Lucent Defendants "will face an expensive, time-consuming action, as well as a vexatious attempt to relitigate issues already decided." <u>American Horse Protection Association v. Lyng</u>, 690 F. Supp. 40, 44 (D.D.C. 1998). The Lucent Defendants may never be able to recover the funds expended in relitigating the FNC and choice of law issues in <u>Vasquez III</u> and <u>IV</u>.

Third, the threatened harm to the Lucent Defendants should the injunction not issue outweighs any possible harm the Plaintiffs and Intervenors might claim to suffer should they be enjoined. The Lucent Defendants may never be able to recover the cost of relitigating the FNC and choice of law issues if the injunction is denied. On the other hand, Plaintiffs will suffer no harm

should the injunction be issued, because the courts in <u>Vasquez III</u> and <u>Vasquez IV</u> should ultimately reach the same conclusions this Court reached in the Memorandum. The injunction would simply save the parties the time and expense of relitigating issues already decided.

Fourth, the requested injunction will not disserve the public interest but will promote the public interest in the conservation of judicial resources and comprehensive disposition of litigation. <u>American Horse</u>, <u>supra</u>, 690 F. Supp. at 45; <u>Southwest Airlines</u>, <u>supra</u>, 546 F.2d at 94. "Nothing would be as productive of friction between the state and federal courts as to permit a state court to interpret and perhaps to upset such a judgment of a federal court." <u>Southwest Airlines</u>, <u>supra</u>, 546 F.2d at 91. The relitigation exception to the Anti-Injunction Act recognizes that state courts as well as federal courts have a responsibility to maintain harmony between the state and federal governments. <u>Id</u>. An injunction barring relitigation in state courts of issues already decided in federal court therefore promotes the principles of federalism underlying the Anti-Injunction Act. <u>Southwest Airlines</u>, <u>supra</u>, 546 F.2d at 93-94; <u>Nix</u>, <u>supra</u>, 512 F.2d at 130. Indeed, as this Court found in <u>Carey</u>, "principles of equity, comity and federalism are not hindered by enjoining Plaintiffs from relitigating this case in Texas state courts." 121 F. Supp.2d at 1076.

IV.    THE INJUNCTION SHOULD BAR ANY FURTHER ACTIONS.

Plaintiffs and Intervenors have already initiated four separate proceedings against the Lucent Defendants in an effort to find a favorable forum in which to litigate their Mexican claims. A federal court need not "stand by idly while plaintiffs file suit after repetitious suit" seeking to find a favorable forum in which to relitigate issues already decided by the federal court. <u>Hill v. Estelle</u>, 423 F. Supp. 690, 695 (S.D. Tex 1976. Rather, this Court may act now to prevent a recurrence of the <u>Aguilar</u> forum shopping spree. <u>Id</u>.; <u>see</u> <u>Aguilar</u>, <u>supra</u>, 806 F. Supp. at 141, n.1. Further, an injunction prohibiting the filing of any further actions does not even implicate the Anti-Injunction

CHIPDF - www.fsxio.com

Act. <u>Royal Ins. Co. of America v. Quinn-L Capitol Corp.</u>, 3 F.3d 877, 884 (5th Cir 1993); 17 Wright

& Miller, <u>Federal Practice and Procedure</u> at § 4222, pp.506-507

V.     THE INJUNCTION SHOULD ENCOMPASS THE ATTORNEYS.

Injunctions issued under Rule 65 and the relitigation exception of the Anti-Injunction Act

may extend to <u>both</u> the parties <u>and</u> their attorneys.  Rule 65(d), F.R.C.P ; <u>Santopadre</u>, <u>supra</u>, 749 F

Supp. at 128.  Accordingly, any injunction issued herein should expressly extend to the attorneys

representing the Plaintiffs and the Intervenors in <u>Vasquez II</u>.

## CONCLUSION

For the reasons stated above, the Court should enter an order enjoining Plaintiffs, Intervenors

and their attorneys from pursuing in any court of the Untied States or of any state within the United

States any claim arising from the Accident against the Lucent Defendants.  In the alternative, the

Court should enjoin Plaintiffs, Intervenors and their attorneys from relitigating in any federal or state

court in Texas the determinations made herein that Mexico is the only appropriate forum in which

to litigate claims arising from the Accident and that Mexican law will govern all such claims (and

therefore preclude the assertion of any claim under Texas law); unless and until these determinations

are reversed on appeal after exhaustion of the appellate process. A proposed order is submitted

separately for the Court's convenience.

Dated this 27th day of September 2001.

Respectfully submitted,

OF COUNSEL:
BARKER, LEON, FANCHER &
MATTHYS, L.L.P.
Roland L. Leon
State Bar No. 12207400

F. Edward Barker, Esq.
Texas State Bar No. 01781000
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II – Suite 1200
555 North Carancahua Street
Corpus Christi, TX 78478
(361) 881-9217
(361) 882-6590 Facsimile
**ATTORNEY IN CHARGE FOR
DEFENDANTS LUCENT
TECHNOLOGIES, INC. AND
LUCENT TECHNOLOGIES
MAQUILADORAS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 27 day of September 2001, a true and correct copy of the foregoing **LUCENT DEFENDANTS' MOTION FOR PERMANENT INJUNCTION,** was sent by U.S. Mail to the following:

Dana R. Allison, Esq.
The Allison Law Firm
855 East Harrison
Brownsville, TX 78520

Guy H. Allison, Esq.
The Allison Law Firm
920 Leopard Street
Corpus Christi, TX 78401

William B. Harrison, Esq.
Law Offices of William B. Harrison
920 Leopard Street
P. O. Drawer 2568
Corpus Christi, TX 78403-2568

Edmundo O. Ramirez, Esq.
Luis M. Cardenas, Esq.
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago
McAllen, TX 78501-4822

18

Knox D. Nunnally, Esq.
Vinson & Elkins, L.L.P.
1001 Fannin
2300 First City Tower
Houston, TX 77002

Kyle Dreyer, Esq.
Hartline, Dacus, Dreyer & Kern, L.L.P
6688 North Central Expressway
Suite 1000
Dallas, TX 75206

George Chandler
George Chandler Law Office
207 E. Frank (75901)
P.O. Box 340
Lufkin, TX 75902-0340

H:\Users\TROUTL\MSM\pfj\vasquez v  lucent\Federal case - beaumont\Mot for injunction doc

EXHIBIT NO. 2

CVisPDF – www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| MARIA OLIVIA VASQUEZ, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CASE NO. 1:01CV168 |
| | § | JUDGE HOWELL COBB |
| | § | |
| BRIDGESTONE/FIRESTONE, INC.; | § | |
| GENERAL MOTORS CORPORATION; | § | |
| LUCENT TECHNOLOGIES, INC.; | § | |
| LUCENT TECHNOLOGIES, | § | |
| MAQUILADORAS, INC. | § | |
| | § | |
| Defendants. | § | |

## DEFENDANT BRIDGESTONE/FIRESTONE, INC.'S
## MOTION FOR PERMANENT INJUNCTION

Defendant Bridgestone/Firestone, Inc. ("Firestone") files this Motion for Permanent

Injunction, and respectfully shows as follows:

### INTRODUCTION

The Lucent Defendants (Lucent Technologies, Inc. and Lucent Technologies Maquiladoras,

Inc.) have previously filed a Motion for Permanent Injunction with this Court seeking to enjoin the

Plaintiffs[1] and their counsel from attempting to relitigate in the United States the claims dismissed

by this Court in its August 7, 2001 final judgment. The Lucent Defendants have thoroughly briefed

the controlling issues, and Firestone adopts the Lucent Defendants' arguments and supporting

exhibits in full.

---

[1] "Plaintiffs" as used herein also refers to the Intervenors in the suit previously heard and
dismissed by this Court.

As this Court is aware, Plaintiffs -- who are Mexican citizens -- seek to assert claims arising from an August 1999 traffic accident that occurred in Mexico. This Court dismissed their claims *with prejudice* based on forum non conveniens. *See* August 7, 2001 Memorandum Opinion, at 20 (for consistency with Lucent's Motion for Permanent Injunction, this Court's adjudication of Plaintiffs' claims is referred to as "Vasquez II"). The Court specifically noted that its dismissal "should act to preclude a future lawsuit brought elsewhere in this country." *Id.* at 20. Plaintiffs and their attorneys, however, have blatantly sought to undercut this Court's judgment by *twice* refiling their claims in the United States, first in Brownsville and then in Laredo. *See* Lucent's Motion for Permanent Injunction, at 3-4. Firestone respectfully asks that this Court put an end to Plaintiffs' abuse of the judicial process by enjoining Plaintiffs and their counsel from filing additional suits or further prosecuting their claims in any federal or state court in the United States.

Although Firestone adopts the Lucent Defendants' argument, for the Court's convenience Firestone also offers the following brief overview of the controlling legal principles.

## ARGUMENT AND AUTHORITIES

**I.      This Court Has the Power to Enjoin Plaintiffs' Repetitive Litigation.**

Federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions." 28 U.S.C. § 1651(a). Under this "All Writs Statute," a federal court which has decided a claim or issue may enjoin parties from attempting to relitigate that claim or issue in another federal **or** state court, where the relitigation would be barred by res judicata or collateral estoppel.

2

### A. This Court may enjoin proceedings in other federal courts.

Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court.

*New York Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998). *See also Municipal Energy Agency v. Big Rivers Elec. Corp.*, 804 F.2d 338, 343 (5th Cir. 1986).

### B. This Court may enjoin proceedings in state court.

The Fifth Circuit has likewise held that a federal court may enjoin relitigation in state courts. *See, e.g., Next Level Comm. LP v. DSC Comm. Corp.*, 179 F.3d 244, 249-50 (5th Cir. 1999). Although the Anti-Injunction Act (28 U.S.C. § 2283) *generally* prohibits federal courts from enjoining state court actions, it does not prevent federal courts from enjoining repetitive state court actions that would be barred by res judicata or collateral estoppel. *See Next Level*, 179 F.3d at 249-50. This "relitigation exception" is based on the express terms of the Anti-Injunction Act, which provides that a federal court may enjoin state court actions "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283; *see Next Level*, 179 F.3d at 249.

Thus, a federal court may enjoin federal **or** state court proceedings where those proceedings would be barred by res judicata or collateral estoppel.

## II. Res Judicata Bars Plaintiffs' Repetitive Litigation.

Res judicata, or claim preclusion, bars relitigation of claims. It applies where (1) the former and current action involve the same parties, (2) the former judgment was rendered by a court of competent jurisdiction, (3) there was a final judgment on the merits in the former action, and (4) the

3

CitaPDF - www.fasiia.com

former and current action involve the same claims. *See Howe v. Vaughan*, 913 F.2d 1138, 1143-44 (5th Cir. 1990).[2]  Each of these requirements is met here.

### A.    There is identity of parties.

Firestone was a defendant in Vasquez II.  Firestone seeks an injunction against the Plaintiffs (and their attorneys) who asserted claims in Vasquez II.  This is sufficient identity of parties to support an injunction in favor of Firestone (and all other defendants in Vasquez II) based on res judicata. *See Carey v. Sub Sea Int'l, Inc.*, 121 F. Supp. 2d 1071, 1074 (E.D. Tex. 2000) (Cobb, J.). The fact that Plaintiffs are now trying to sue additional defendants who were not present in Vasquez II does not affect Firestone's and Lucent's right to an injunction.  *See id.*

### B.    The former judgment was rendered by a court of competent jurisdiction.

The judgment in Vasquez II was rendered by this Court, clearly a court of competent jurisdiction.  Vasquez II was properly before this Court based on diversity jurisdiction.  *See* Memorandum Opinion, at 2-5.

### C.    This Court rendered a final judgment on the merits in Vasquez II.

While this Court obviously did not adjudicate the merits of Plaintiffs' personal injury claims, it did decide that those claims were governed by Mexican law and should be tried in Mexico.  This constitutes a merits adjudication for purposes of a relitigation injunction. *See Quintero v. Klaveness Ship Lines*, 914 F.2d 717, 719 (5th Cir. 1990) ("[W]e hold that a *forum non conveniens* dismissal that includes a choice-of-law determination is a determination on the merits . . . .").  The court held in *Quintero* that a forum non conveniens dismissal may be granted "with prejudice," *see id.*, which of course is exactly what this Court did in dismissing Plaintiffs' claims.

---

[2] Federal law controls the preclusive effect of a prior federal court judgment.  *See Gulf Island-IV, Inc. v. Blue Streak OPS*, 24 F.3d 743, 746 (5th Cir. 1994).

Notably, numerous courts -- including this one -- have held that res judicata bars domestic relitigation of claims previously dismissed for forum non conveniens. *See Carey*, 121 F. Supp. 2d at 1075-76 (Cobb, J.); *Villar v. Crowley Maritime Corp.*, 780 F. Supp. 1467, 1482-83 (S.D. Tex. 1992), *aff'd*, 990 F.2d 1489 (5th Cir., 1993); *Anastasiadis v. Mecom*, 265 F. Supp. 959, 960 (S.D. Tex. 1966).

> **D.      Plaintiffs are attempting to relitigate the same claims adjudicated by this Court.**

Plaintiffs have twice refiled the very claims dismissed by this Court -- their personal injury claims arising from the August 1999 traffic accident in Mexico. There can be no dispute that they are attempting to relitigate the same claims.

In sum, because res judicata bars Plaintiffs' repetitive litigation, this Court should grant an injunction prohibiting Plaintiffs from refiling or further prosecuting their claims in the United States.

> **III.    Alternatively, the Court Should Issue an Injunction Because Collateral Estoppel Bars Plaintiffs From Relitigating the Forum Non Conveniens and Choice of Law Issues.**

Collateral estoppel, or issue preclusion, bars relitigation of specific issues. It applies where (1) the issue at stake is identical to the one involved in the prior action, (2) the issue was actually litigated in the prior action, and (3) the determination of the issue was a necessary part of the judgment in the prior action. *See Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 868 (5th Cir. 2000). These three elements are satisfied for both the forum non conveniens and the choice-of-law issues.

> **A.      Collateral estoppel bars relitigation of the forum non conveniens issue.**

**Plaintiffs seek to relitigate the same issue.** This court held in Vasquez II that Plaintiffs' claims should be tried in Mexico. By refiling their claims in the United States, Plaintiffs necessarily seek to relitigate this forum non conveniens issue. Moreover, because Plaintiffs' subsequent filings

involve the same claims and the same sources of proof, the forum non conveniens issue in those cases will be identical to that decided by this Court.[3]

**This Court actually adjudicated the forum non conveniens issue.** The parties extensively briefed the forum non conveniens issue, and this Court held an oral hearing before rendering its decision. There can be no dispute that the issue was actually litigated.

**The forum non conveniens issue was a necessary part of the judgment in Vasquez II.** This Court rendered final judgment dismissing Plaintiffs' claims based on forum non conveniens. *See* Memorandum Opinion at 20; August 7, 2001, Order of Dismissal. The forum non conveniens issue was obviously a necessary part of the Court's judgment.

This Court has recognized that a forum non conveniens decision has preclusive effect in later litigation, unless the plaintiff comes forward with new, objective facts that would alter the analysis. *See Torreblanca de Aguilar v. Boeing Co.*, 806 F. Supp. 139, 141-42 (E.D. Tex. 1992) (Cobb, J.). There are no such new facts here. Accordingly, Plaintiffs should be barred from attempting to relitigate the forum non conveniens issue.

**B.      Collateral estoppel bars relitigation of the choice-of-law issue.**

**Plaintiffs seek to relitigate the same issue.** This Court held that Plaintiffs' claims are governed by Mexican law. *See* Memorandum Opinion, at 18. Because Plaintiffs assert in their subsequent lawsuits that their claims are governed by Texas law, they necessarily seek to relitigate this issue. Importantly, because Vasquez II was a diversity case, this Court applied *Texas* choice-of-law principles. *See id.*; *Klaxon Co. v. Stentor Elec. Mfg.*, 313 U.S. 487, 496 (1941). Thus, the

---

[3] Importantly, the forum non conveniens issue would be identical even in subsequent actions heard in state court. Although the forum non conveniens analysis in state court is governed by state law -- rather than the federal law applied by this Court -- the Texas standard is not materially different from the federal standard. *See* TEX. CIV. PRAC. & REM. CODE § 71.051(a); *Baker v. Bell Helicopter Textron, Inc.*, 985 S.W.2d 272, 277-78 (Tex. App. -- Fort Worth 1999, pet. denied).

choice-of-law issue will be identical in all future cases, regardless of whether they are heard in federal or state court.

**This Court actually adjudicated the choice-of-law issue.** The parties extensively briefed the choice-of-law issue, and this Court specifically ruled in its Memorandum Opinion that the case should be governed by Mexican law. *See* Memorandum Opinion, at 18. Thus, the choice-of-law issue was actually adjudicated.

**The choice-of-law issue was a necessary part of the judgment in Vasquez II.** Determining whose laws should apply is a key element in the forum non conveniens analysis. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947). In holding that this case should be tried in Mexico, this Court relied heavily on its conclusion that Mexican law governed Plaintiffs' claims. *See* Memorandum Opinion at 19. ("Because Mexican law would be applied, a Mexican court which understands that law far better than this one should hear the case."). Thus, the Court's choice-of-law ruling was a necessary part of its judgment of dismissal.

In sum, because collateral estoppel bars Plaintiffs from attempting to relitigate the forum non conveniens and choice-of-law issues, the Court should enjoin Plaintiffs from filing or further prosecuting their claims in the United States.

## CONCLUSION AND PRAYER

This Court has the power to enjoin repetitive actions in both federal and state court. Because Plaintiffs are abusing the judicial process by attempting to prosecute subsequent actions that are clearly barred by res judicata and collateral estoppel, the Court should issue an injunction to stop that abuse.

Firestone respectfully prays that the Court permanently enjoin Plaintiffs, Intervenors, and their respective counsel from filing or prosecuting any claim against Firestone arising from the

August 1999 traffic accident in any court – federal or state – in the United States.  Firestone further

prays for any additional relief to which it may be entitled.

Respectfully submitted,

By: _Knox Nunnally_____

Knox D. Nunnally, Attorney in Charge
State Bar No. 15141000
Federal ID No. 1282
Vinson & Elkins, LLP
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2416
(713) 615-5220 (fax)

*[handwritten: by permission Spikes Hance]*

OF COUNSEL:

VINSON & ELKINS, LLP
Morgan L. Copeland
State Bar No. 04800500
1001 Fannin
2300 First City Tower
Houston, Texas  77002
(713) 758-2661
(713) 615-5561 (fax)

**ATTORNEYS FOR DEFENDANT
BRIDGESTONE/FIRESTONE, INC.**

8

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on the following parties by Certified Mail, Return Receipt Requested on October 9, 2001.

Dana R. Allison
Guy H. Allison, Jr.
The Allison Law Firm
855 East Harrison
Brownsville, Texas 78520

William B. Harrison
Law Offices of William B. Harrison
920 Leopard Street
P.O. Drawer 2568
Corpus Christi, Texas 78403-2568

F. Edward Barker
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II - Suite 1200
555 North Carancahua Street
Corpus Christi, Texas 78478

Edmundo O. Ramirez,
Luis M. Cardenas
Ellis, Koeneke & Ramirez, L.L.P.
1101 Chicago
McAllen, Texas 78501-4822

Kyle Dreyer
Hartline, Dacus, Dreyer & Kern, L.L.P.
6688 North Central Expressway
Suite 1000
Dallas, Texas 75206

Michael Caddell
Caddell & Chapman
1331 Lamar, Ste. 1070
Houston, Texas 77010-3027

George Chandler
Chandler Law Offices
207 E. Frank, Ste. 105
P.O. Box 340
Lufkin, Texas 75902-0340

Spikes Kangerga

EXHIBIT NO. 3

CAdPDF – www.fastio.com

CAUSE NO. *A010031-C*

| | |
|---|---|
| MARIA OLIVIA VASQUEZ, INDIVIDUALLY§<br>AND AS REPRESENTATIVE OF THE §<br>ESTATE OF VALENTE IBARRA IBARRA, §<br>DECEASED, AND AS NEXT FRIEND OF §<br>OLIVIA LIZETH IBARRA VAZQUEZ AND §<br>JESUS ALAN IBARRA VASQUEZ, MINORS§<br>CHILDREN §<br> §<br>MARGARITA SANTOS DAVILA, §<br>INDIVIDUALLY AND AS REPRE- §<br>SENTATIVE OF THE ESTATE OF JESUS §<br>DAVILA PAZ, DECEASED, AND AS NEXT§<br>FRIEND OF OCTAVIO HIPOLITO DAVILA §<br>SANTOS, ZAIDETH MARGARITA DAVILA§<br>SANTOS, ANDREA DENISSE DAVILA §<br>SANTOS, AND VALERIA NAYEL DAVILA §<br>SANTOS, MINOR CHILDREN; §<br> §<br>ETHNA ZULEYMA PEREZ LARA, §<br>INDIVIDUALLY AND AS §<br>REPRESENTATIVE OF THE ESTATE §<br>OF SERGIO ALBERTO ZAVALA §<br>PONCE, DECEASED, AND AS NEXT §<br>FRIEND OF SERGIO ALBERTO ZAVALA §<br>PEREZ, MINOR CHILD; §<br> §<br>MARIO ALBERTO §<br>VILLAGRAN TREVINO AND §<br>EVANGELINA CASTRO DE VILLEGRAN, §<br>INDIVIDUALLY AND AS §<br>REPRESENTATIVES OF THE ESTATE §<br>OF GABRIELA VILLAGRAN CASTRO, §<br>DECEASED; §<br> §<br>JESSICA JUAREZ AND OSCAR JUAREZ,§<br>INDIVIDUALLY AND AS REPRESENTA- §<br>TIVE OF THE ESTATE OF IVONNE §<br>JUAREZ, DECEASED; §<br> §<br>VS. §<br> § | IN THE DISTRICT COURT<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>*128* TH JUDICIAL DISTRICT COURT |

BRIDGESTONE/FIRESTONE, INC.,  §
GENERAL MOTORS CORPORATION,  §
LUCENT TECHNOLOGIES, INC.,  §
LUCENT TECHNOLOGIES  §
MAQUILADORAS, INC.  §  ORANGE COUNTY, TEXAS

## PLAINTIFFS' ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Maria Olivia Vasquez, Individually and as representative of the Estate of Valente Ibarra Ibarra, Deceased, and as next friend of Olivia Lizeth Ibarra Vazquez and Jesus Alan Ibarra Vasquez, minor children, Margarita Santos Davila, Individually and as representative of the Estate of Jesus Davila Paz, Deceased, and as next friend of Octavio Hipolito Davila Santos, Zaideth Margarita Davila Santos, Andrea Denisse Davila Santos, and Valeria Nayel Davila Santos, minor children, and Ethna Zuleyma Perez Lara, Individually and as representative of the Estate of Sergio Alberto Zavala Ponce, Deceased, and as next friend of Sergio Alberto Zavala Perez, minor child, Mario Alberto Villagran Trevino, and Evangelina Castro de Villegran, Individually and as representatives of the Estate of Gabriela Villagran Castro, Deceased, and Jessica Juarez and Oscar Juarez, Individually and as Representatives of the Estate of Ivonne Juarez, Deceased, collectively referred to as the Plaintiffs, file their Plaintiffs' Original Petition complaining of Bridgestone/Firestone Tire, Inc. (Defendant Firestone), General Motors Corporation (Defendant General Motors), Lucent Technologies, Inc., and Lucent Technologies

(Defendants Lucent), hereinafter collectively referred to as Defendants. Plaintiffs show unto this Honorable Court the following:

## I. DISCOVERY CONTROL PLAN

1.   Plaintiffs intend to conduct discovery under Level 2 pursuant to Texas Rule of Civil Procedure 190.3. Plaintiffs reserve the right to seek an order from this Court to allow Plaintiffs to conduct discovery under Level 3, if the parties agree to this designation or circumstances warrant it.

## II. PARTIES TO THIS LITIGATION

### A.     Plaintiffs

1.   Plaintiff MARIA OLIVIA VASQUEZ is an individual who is a citizen of Monterrey, Nuevo Leon, Mexico. Plaintiff Vasquez is the legal spouse of Valente Ibarra Ibarra, deceased, and the natural mother of OLIVIA LIZETH IBARRA VASQUEZ and JESUS ALAN IBARRA VASQUEZ, minor children of the marriage.

2.   Plaintiff MARGARITA SANTOS DAVILA is an individual who is a citizen of Monterrey, Nuevo Leon, Mexico. Plaintiff is the legal spouse of Jesus Davila Paz, deceased, and the natural mother of OCTAVIO HIPOLITO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, and VALERIA NAYEL DAVILA SANTOS, minor children of the marriage.

3. Plaintiff EHINA ZULEYMA PEREZ LARA is an individual who is a citizen of Monterrey, Nuevo Leon, Mexico. Plaintiff is the legal spouse of Sergio Alberto

Zavala Ponce, deceased, and the natural mother of SERGIO ALBERTO ZAVALA PEREZ, a minor child of the marriage.

4.  Plaintiffs MARIO ALBERTO VILLAGRAN TREVINO and EVANGELINA CASTRO DE VILLAGRAN are individuals who are citizens of Monterrey, Nuevo Leon, Mexico.  Plaintiffs are the natural parents of Gabriela Villagran Castro, deceased.

5.  JESSICA JUAREZ and OSCAR JUAREZ are individuals who are citizens of Monterrey, Nuevo Leon, Mexico.  Plaintiffs are the natural brother and sister of Ivonne Juarez, deceased.

**B.     Defendants**

6.  Defendant BRIDGESTONE/FIRESTONE, INC. (Defendant Firestone) is a corporation incorporated under the laws of the State of Ohio, and is authorized to do business and is doing business throughout the State of Texas.  Defendant Firestone has declared its principal place of business to be Orange, Texas, Orange County.  (See Exhibit 1)  Defendant Firestone may be served with process by serving its registered agent for service, C.T.Corp. System, 350 N. St. Paul, Dallas, Texas 75201, by certified mail, return receipt requested.  Service is requested at this time.

7.  Defendant GENERAL MOTORS CORPORATION (Defendant GM) is a corporation organized and existing under the laws of Delaware, is authorized to

conduct business in the State of Texas, and may be served with process by serving its registered agent for service of process, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201.  Service is requested at this time.

8.  Defendant LUCENT TECHNOLOGIES, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas.  With regard to this incident, Defendant Lucent Technologies, Inc.'s place of business is Brownsville, Texas, in that all business activities are coordinated in Brownsville, Texas.  Defendant Lucent Technologies, Inc. may be served with process by serving its registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested.  Service is requested at this time.

9.  Defendant LUCENT TECHNOLOGIES MAQUILADORAS, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas.  With regard to this incident, Defendant Lucent Technologies Maquiladora, Inc.'s principle place of business is Brownsville, Texas, in that all business activities are coordinated in Brownsville, Texas. Defendant Lucent Technologies Maquiladora, Inc. may be served with process by

serving its registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested.

10.     Defendants Lucent Technologies, Inc. and Lucent Technologies Maquiladoras, Inc. are, for all practical purposes, the same with regard to this incident which resulted in the deaths of five Plaintiffs and the injuries to all Plaintiffs. As such, the two corporations will be collectively referred to as Defendants Lucent Technologies or Defendants Lucent.

## III.   VENUE

11.  Venue is proper in Orange, Orange County, Texas pursuant to Texas Civil Practices and Remedies Code, §§15.002(a)(3), 15.004, and 15.005.  Defendant Firestone has publicly declared that its principal place of business and principal office in the State of Texas is 1006 Farm Rd., Orange, Orange County, Texas.  See Exhibit 1.

12.  Since venue is proper against Defendant Firestone, this Court has venue as to all Defendants since Plaintiffs' claims arise out of  the same transaction, occurrence, or series of transactions or occurrences.

## IV. BASIS FOR SUIT

13.  This suit is brought against the Defendants pursuant to the provisions of the Texas Wrongful Death and Survival Statutes, Chapter 71 of the Texas Civil Practices & Remedies Code, wherein the Plaintiffs, as statutory beneficiaries of the

decedents are entitled to bring suit on behalf of all persons entitled to be benefitted by this action. TEX.CIV.PRAC. & REM. CODE §§ 71.001, 71.002, 71.004, AND 71.021.

## V.  BACKGROUND FACTS

14.    This lawsuit results from a one-car accident that occurred at approximately 7:20 p.m. on August 12, 1999, in Cadereyta, Nuevo Leon, Distrito Norte, Mexico.  At the time of the accident, the decedents, Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez,  were passengers in a 1996 Chevrolet Suburban, owned and operated by Defendants Lucent.  The suburban was being driven by Carlos Ramirez Villanueva, who was acting within the course and scope of his employment with Defendants Lucent.  Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, the Decedents, were being driven home from a one day seminar/training session with Defendants Lucent when the right rear Bridgestone/Firestone tire on the 1996 Chevrolet Suburban delaminated, causing the vehicle to lose control, roll over numerous times, and fatally injure them.

15.  The 1996 Chevrolet Suburban and its Bridgestone/Firestone tires  were owed and maintained by Defendants Lucent.   The driver was selected by Defendants Lucent,  and the seminar was arranged by Defendants Lucent and

conducted by Defendants Lucent.  The Decedents were required, by Defendants Lucent, to attend the seminar.

16.   Decisions as to the Decedents' attendance at the seminar, their transportation to and from the seminar, the driver and use of the suburban for their transportation, and other related matters were made by Defendants Lucent's managerial employees at their Brownsville, Texas location.   The Decedents systematically and routinely traveled to the Brownsville office of Defendants Lucent for their work.   The Decedents' work was performed for and to the benefit of Defendants Lucent.

17.   Contracts exist between Defendants Lucent and Servicios de Manufacturas de Monterrey, S.A. de C.V., hereinafter referred to as Servicios (the corporation that issued the Decedents' pay checks) which govern the relationship between  Defendants Lucent and the Decedents and establish the duties owed by Defendants Lucent to the Decedents.

18.   The contract between Defendants Lucent and Servicios (the "Texas Contract") was entered into at Brownsville, Texas, and Defendants Lucent were assigned all rights and obligations under the Texas Contract by virtue of an assignment entered into in Brownsville, Texas.

19.   The Texas Contract provides that Defendants Lucent provide the following services, among others, to Servicios, including the Decedents:

(a)   advise and assist in determining the number and types of employees necessary to operate and manage the Lucent facility, and the scope and requirements of assignments and positions;

(b)   advise and assist in the establishment of purchasing procedures for Defendant Lucent;

(c)   advise and assist in the operation of the Lucent facility;

(d)   advise and assist in the establishment of maintenance practices and procedures;

(e)   provide training for supervisory and production personnel; and

(f)   advise and assist in the installation of and operational training for new equipment.

Defendants Lucent's decisions regarding the implementation of the Texas Contract resulted in the August 1999 incident in which Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez were killed.

## VI.  BRIDGESTONE/FIRESTONE'S NEGLIGENCE

20.   Plaintiffs assert claims against Defendant Firestone on the basis of negligence, gross negligence, strict liability, product liability, design defect, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the tire's properties.

21.   Defendant Firestone is engaged in the business of engineering, designing, manufacturing, fabricating, selling, marketing, providing quality control,

and inspecting the tire, I.D. number P235/75R15 M&S [DOT V6HLB4A296].   The

right rear tire on the 1996 Chevrolet Suburban that delaminated was defectively and

improperly designed.   The tire may also have been defectively manufactured.   No

adequate quality control was exercised by Defendant Firestone with regard to this

tire.

22.   The tire,  I.D. number P235/75R15 M&S [DOT V6HLB4A296] was

installed and maintained on the 1996 Chevrolet Suburban, owned by Defendants

Lucent.   The tire was defective at the time it was released into the stream of

commerce.

23. The tire's dangerous condition rendered it unreasonably dangerous in that

it was   defectively designed, defectively manufactured, defective in materials,

inadequately inspected, and in a defective condition when it was released into the

stream of commerce.   These conditions were all a producing cause of the injuries

and damages of the Plaintiffs.

24.   Defendant Firestone expressly and impliedly warranted to the public

generally that the P235/75R15 M&S tire installed on the 1996 Chevrolet Suburban

was of merchantable quality and was safe and fit for the purpose intended when

used under ordinary conditions and in an ordinary manner.

25.   Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages as a proximate result of Defendant Firestone's breach of these warranties.

26.   The representations made by Defendant Firestone were false, misleading, and deceptive in that the tire was of inferior design, quality, and materials, was not properly inspected or manufactured, and was in a defective condition.  Moreover, the tire did not have the necessary qualities and characteristics to be deemed safe for use at the time it was released into the stream of commerce..

27.   The misrepresentations made by Defendant Firestone violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer Protection Act, hereinafter referred to as the DTPA.  The violations include misrepresentations that the goods have benefits, characteristics, or uses which they do not have, that the goods are of a particular standard, quality, or grade when they are of another, and that the goods are of a particular style or model when they are not.

28.   In the design, manufacturing, marketing, and inspection of the tire, Defendant Firestone engaged in an unconscionable action or course of action, taking advantage of the lack of knowledge, ability, experience, and capacity of ultimate users, including the Decedents, to a grossly unfair degree by expressly and impliedly warranting to the public generally, that the tire was of merchantable quality

and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

29.   Defendant Firestone's conduct was a producing cause of Decedents' injuries, damages, and resulting deaths, in that the tire was unsafe and unfit for the purpose intended.

30.   Each of these acts and omissions, singularly or in combination, constituted negligence and gross negligence which proximately caused the occurrence made the basis of this action, and Plaintiffs' injuries and damages.

31.   Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

## VI.   GENERAL MOTORS' NEGLIGENCE

32.   Plaintiffs assert claims against Defendant General Motors on the basis of negligence, gross negligence, strict liability, product liability, design defect, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the Chevrolet Suburban's properties.

33.   Defendant General Motors is engaged in the business of engineering, developing, researching, designing, manufacturing, assembling, fabricating, selling, marketing, inspecting, providing quality control, and testing the Chevrolet Suburban. The right rear tire on the 1996 Chevrolet Suburban delaminated, and this tire was

CSHPDF - www.fenlxs.com

designated by General Motors as an appropriate tire for its vehicle when the tire was not an appropriate choice. No adequate testing and quality control was exercised by Defendant General Motors with regard to its vehicle and its choice of tire.

34. The vehicle was defective and unreasonably dangerous, as these terms are defined by law, and such condition of the vehicle was a producing cause of the incident which caused the Decedents' deaths and their relatives' injuries. The vehicle was defective at the time it was released into the stream of commerce.

35. Defendant General Motors expressly and impliedly warranted to the public generally that the P235/75R15 M&S tire installed on the 1996 Chevrolet Suburban was an appropriate choice for its vehicle and that the combination of vehicle and tire was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

36. Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages as a proximate result of Defendant General Motor's breach of these warranties.

37. The representations made by Defendant General Motors were false, misleading, and deceptive in that the vehicle was defective and unreasonably dangerous when released into the stream of commerce. Moreover, the vehicle did not have the necessary qualities and characteristics to be deemed safe for use at the time it was released into the stream of commerce..

38.   The misrepresentations made by Defendant General Motors  violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer Protection Act, hereinafter referred to as the DTPA.  The violations include misrepresentations that the goods have characteristics, uses, or benefits which they do not have, that the goods are of a particular standard, quality, or grade when they are of another, and that the goods are of a particular style or model when they are not.

39.   In the design, manufacturing, marketing, and inspection of the vehicle, Defendant General Motors engaged in an unconscionable action or course of action, taking advantage of the lack of knowledge, ability, experience, and capacity of ultimate users, including the Decedents, to a grossly unfair degree by expressly and impliedly warranting to the public generally, that the vehicle was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

40.   Defendant General Motor's conduct was a producing cause of Decedents' injuries, damages, and resulting deaths, in that the vehicle  was unsafe and unfit for the purpose intended.

41.   Each of these acts and omissions, singularly or in combination, constituted negligence and gross negligence which proximately caused the occurrence made the basis of this action, and Plaintiffs' injuries and damages.

CutePDF - www.tesite.com

42. Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

## VII. LUCENT'S NEGLIGENCE

43. Plaintiffs assert claims against Defendants Lucent by virtue of the acts and omissions of Lucent's managerial employees.

44. Defendants Lucent failed to exercise ordinary and reasonable care in the supervision and control of its employees, failed to repair and maintain the suburban, failed to properly train its driver as to the safe operation of the vehicle, and failed to instruct its driver as to safety procedures.

45. Defendants Lucent, through its driver, violated road safety laws; as such, they are liable to Plaintiffs under the doctrine of negligence per se.

46. Defendants Lucent selected  the vehicle and tires and provided the vehicle and tires to its employees for purposes of transporting Servicios employees on the highways, both in Texas and in Mexico.  Defendants Lucent were negligent in improperly maintaining the vehicle and tires. Defendants Lucent were negligent by providing an unsafe vehicle for transportation of the Decedents.

47. Defendants Lucent's negligence, negligence per se, and gross negligence were a proximate cause of the horrific injuries to the Decedents and their families.

## VIII. DAMAGES

48.  Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, were tragically killed as a result of all Defendants' misconduct.  Each decedent endured conscious physical pain and suffering, emotional distress and mental anguish, fear, the anticipation of death, and death.  Their injuries alone far exceed the jurisdictional limits of this Court.

49.  Additionally, each estate has incurred funeral and burial expenses.

50.  Also, the wrongful death beneficiaries have suffered mental anguish and emotional distress, loss of society, loss of companionship, loss of financial support, loss of the decedents' estate, loss of consortium, loss of parental guidance, loss of earning capacity, medical expenses, and burial expenses.

51.  Plaintiffs also seek punitive damages for the Defendants' malicious conduct and gross neglect.  Moreover, Plaintiffs seek prejudgment interest, postjudgment interest, their attorneys' fees and expenses, and costs of Court.

52.  Lastly, Plaintiffs request a jury trial and assert that all conditions precedent have occurred or been performed.

Respectfully submitted,

THE ALLISON LAW FIRM
855 East Harrison
Brownsville, Texas 78520
(956) 541-8338 (telephone)
(956) 541-2535 (facsimile)

DANA R. ALLISON
State Bar No. 12235280
LEAD COUNSEL FOR PLAINTIFFS

THE ALLISON LAW FIRM
920 Leopard Street
Corpus Christi, Texas 78401
(361) 884-8900 (telephone)
(361) 888-8543 (facsimile)

GUY H. ALLISON
State Bar No. 01086000
LEAD COUNSEL FOR PLAINTIFFS

LAW OFFICES OF WILLIAM B. HARRISON
920 Leopard Street
Corpus Christi, Texas 78401
(361) 883-2777 (telephone)
(361) 883-2781 (facsimile)

WILLIAM B. HARRISON
State Bar No. 09125100
CO-COUNSEL FOR PLAINTIFFS

3333

**TEXAS FRANCHISE TAX**
**PUBLIC INFORMATION REPORT**

MUST be filed with your Corporation Franchise Tax Report

Corporation name and address

BRIDGESTONE/FIRESTONE, INC.
50 CENTURY BLVD.

NASHVILLE          TN 37214

00242151543

a. Taxpayer identification number
1-34-0228448-1

d. Report year
2000

e. FM / NO #    1, 2, 3, 4

Secretary of State file number or, if none, Comptroller number

Item I on Franchise Tax Report form, Part 1
1-34-0228448

The following information MUST be provided for the Secretary of State (S.O.S.) by each corporation that files a Texas Corporation Franchise Tax Report. The information will be available for public inspection.

"SECTION A" MUST BE COMPLETE AND ACCURATE.
If preprinted information is not correct, please type or print the correct information.

☐ Check here if there are currently no changes to the information preprinted in Sections A, B, and C of this report.

**Corporation's principal office**
50 CENTURY BLVD., NASHVILLE, TN 37214

**Principal place of business**
1000 FARM RD., GRANGE, TX 77630

**SECTION A.** Name, title and mailing address of each officer and director. Use additional sheets, if necessary.

| NAME | TITLE | | | Social Security No. (Optional) |
|------|-------|---|---|---|
| ONO, MASATOSHI | CEO | | | |
| MAILING ADDRESS | | | | Expiration date (mm-dd-yy) |
| 50 CENTURY BLVD. | NASHVILLE | TN | 37214 | |
| NAME | TITLE | | | Social Security No. (Optional) |
| SHIBATA, KENJI | PRES | | | |
| MAILING ADDRESS | | | | Expiration date (mm-dd-yy) |
| 50 CENTURY BLVD. | NASHVILLE | TN | 37214 | |
| NAME | TITLE | | | Social Security No. (Optional) |
| ONO, TETSUO | TREAS. | | | |
| MAILING ADDRESS | | | | Expiration date (mm-dd-yy) |
| 50 CENTURY BLVD. | NASHVILLE | TN | 37214 | |
| NAME | TITLE | | | Social Security No. (Optional) |
| THOMAS, DAVID | SEC. | | | |
| MAILING ADDRESS | | | | Expiration date (mm-dd-yy) |
| 50 CENTURY BLVD. | NASHVILLE | TN | 37214 | |
| NAME | TITLE | | | Social Security No. (Optional) |
| SEGLE, DAVID | CONTROLLER-TAX | | | |
| MAILING ADDRESS | | | | Expiration date (mm-dd-yy) |
| 50 CENTURY BLVD. | NASHVILLE | TN | 37214 | |

**SECTION B.** List each corporation in which this reporting corporation owns an interest of ten percent (10%) or more. Enter the information requested for each corporation. If none, enter "NONE." Use additional sheets if necessary.

| Name of owned (subsidiary) corporation | State of incorporation | Texas S.O.S. file number | Percentage interest |
|---|---|---|---|
| LIST ATTACHED | | | 0.0000 |
| Name of owned (subsidiary) corporation | State of incorporation | Texas S.O.S. file number | Percentage interest |
| | | | 0.0000 |

**SECTION C.** List each corporation that owns an interest of ten percent (10%) or more in this reporting corporation. Enter the information requested for each corporation. If none, enter "NONE." Use additional sheets, if necessary.

| Name of owning (parent) corporation | State of incorporation | Texas S.O.S. file number | Percentage interest |
|---|---|---|---|
| BRIDGESTONE CORPORATION | | | 100.0000 |

Registered agent and registered office currently on file. (Changes must be filed separately with the Secretary of State.)

Agent: CT CORPORATION

Office: 350 NORTH ST. PAUL STREET    DALLAS
        TX  75201

☐ Check here if you need forms
to change this information

| NAME | Title | Date | Service phone (incl Area Code) |
|------|-------|------|---|
| [signature] | CONTROLLER-TAX | 5-24-00 | 615-872-1970 |

Copyright 1999 Brazilian & Holub LP - Forms Software Only

BTTTLLC

Case 1:01-cv-00140   Document 16    Filed in TXSD on 10/11/2001   Page 65 of 131



# COMPTROLLER OF PUBLIC ACCOUNTS

### P.O. BOX 13528
### AUSTIN, TX 78711-3528

THE STATE OF TEXAS                    §

COUNTY OF TRAVIS                      §


I, Arthur M. Hernandez, Section Supervisor of the Open Government Division of the Comptroller of Public Accounts of the State of Texas, DO HEREBY CERTIFY AND ATTEST, I am custodian of all tax records and files of the Comptroller of Public Accounts.

I FURTHER CERTIFY that the attached document is a true and correct copy of the microfilmed reproduction of the public information report filed by Bridgestone/Firestone, Inc., taxpayer number 1-34-0220440-1 for the 2000 report year.

I FURTHER CERTIFY that this document was authorized by law to be filed and was actually filed in a public office.


IN TESTIMONY WHEREBY, I have hereunto signed my name officially and caused to be impressed hereon the seal of my office on this 22nd day of September, 2000.


Arthur M. Hernandez, Section Supervisor
Open Government Division
Comptroller of Public Accounts



AMH:jr

an equal opportunity employer



**ESTONE/FIRESTONE, INC.**

ONE BRIDGESTONE/FIRESTONE PARKWAY    AKRON, OHIO 44817

Nancy Elsworth, Law Department

Scott Edwards, Esq.
Hartline, Dacus, Dreyer & Kern, LLP
6688 N. Central Expressway, Suite 1000
Dallas, TX 75206

CutePDF - www.fesito.com

# EXHIBIT NO. 4

CVisPDF – www.fastio.com

## CAUSE NO. A010031-C

| | | |
|---|---|---|
| MARIA OLIVIA VASQUEZ, et al. | § | |
| | § | |
| *plaintiffs,* | § | |
| | § | |
| v. | § | |
| | § | 128TH JUDICIAL DISTRICT COURT |
| BRIDGESTONE/FIRESTONE, INC., | § | |
| LUCENT TECHNOLOGIES, INC., | § | |
| L U C E N T   TECHNOLOGIES | § | ORANGE COUNTY, TEXAS |
| MAQUILADORAS, INC., and GENERAL | § | |
| MOTORS CORPORATION, | § | |
| | § | |
| *defendants* | § | |

### ALEJANDRA MARLEN RODRIGUEZ DE LUNA'S, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF HECTOR ROJO MEDINA AND AS NEXT FRIEND OF KELLY ASTRID ROJO RODRIGUEZ, CYNTHIA IVETTE ROJO RODRIGUEZ, AND MAYRA EVELYN ROJO RODRIGUEZ, MIGUEL ANGEL ROJO GARCIA, AND LUZ MEDINA ANDRADE'S ORIGINAL PLEA IN INTERVENTION

### TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Intervenors **Alejandra Marlen Rodriguez De Luna, Individually and as Representative of the Estate of Hector Rojo Medina, and as next Friend of Kelly Astrid Rojo Rodriguez, Cynthia Ivette Rojo Rodriguez, and Mayra Evelyn Rojo Rodriguez, Miguel Angel Rojo Garcia, and Luz Medina Andrade,** ("Intervenors") and file this Original Plea in Intervention complaining of Defendants **Lucent Technologies, Inc., Lucent Technologies Maquiladoras, Inc.,** ("Lucent"), **General Motors Corporation** ("GM"), and **Bridgestone/Firestone, Inc.** ("Firestone"), and for cause of action shows:

---

*Rodriguez v. Lucent*

Alejandra Marlen Rodriguez de Luna's, et al. Plea in Intervention          — p. 1 of 14 pp. —

## A. Parties

1.      Intervenors are citizens and residents of Monterrey, Nuevo Leon, Mexico. Alejandra Marlen Rodriguez de Luna is the surviving spouse of Hector Rojo Medina, deceased, and the natural mother of Kelly Astrid Rojo Rodriguez, Cynthia Ivette Rojo Rodriguez, and Mayra Evelyn Rojo Rodriguez, the natural and surviving children of Hector Rojo Medina. Miguel Angel Rojo Garcia, and Luz Medina Andrade are the natural and surviving parents of Hector Rojo Medina, deceased.

2.      Defendant **Lucent Technologies, Inc.** is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas. With regard to this incident, Defendant **Lucent Technologies, Inc.'s** place of business is Brownsville, Texas, in that all business activities are coordinated in Brownsville, Texas. Defendant **Lucent Technologies, Inc.** may be served with process by serving its registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service is requested at this time.

3.      Defendant **Lucent Technologies Maquiladoras, Inc.** is a corporation that is incorporated under the laws of the State of Delaware and is authorized to do busienss and is doing business within the State of Texas, more particularly Harlingen, Texas and Brownsville, Texas. With regard to this incident, Defendant **Lucent Technologies Maquiladora, Inc.'s** principle place of business is Brownsville, Texas, in that all business

---

*Rodriguez v. Lucent*                          Alejandra Marlen Rodriguez de Luna's, et al. Plea In
                                               Intervention              — p. 2 of 14 pp. —

CutePDF - www.fenito.com

activities are coordinated in Brownsville, Texas. Defendant **Lucent Technologies Maquiladora, Inc.** may be served with process by serving its registered agent for service, Prentice Hall Corporation System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service is requested at this time.

4.    Defendant **General Motors Corporation**, is a corporation organized and existing under the laws of the State of Delaware, is authorized to do business and is doing business in the State of Texas, and may be served with process by serving its registered agent for service, C.T. Corporation System, 350 N. St. Paul Street, Dallas, Texas 75201. Service is requested at this time.

5.    Defendant **Bridgestone/Firestone, Inc.** is a corporation incorporated under the laws of the State of Ohio, and is authorized to do business and is doing business throughout the State of Texas. Defendant Firestone has declared its principal place of business to be Orange, Texas, Orange County. Defendant **Firestone** may be served with process by serving its registered agent for service C.T. Corp. System, 350 N. St. Paul, Dallas, Texas 75201, by certified mail, return receipt requested. Service is requested at this time.

## B. Venue

6.    Venue is proper in Orange, Orange County, Texas pursuant to Texas Civil Practices and Remedies Code, §§ 15.002(a)(3), 15.004, and 15.005. Defendant **Firestone** has publicly declared that its principal place of business and principal office in

---

*Rodriguez v. Lucent*                    Alejandra Marien Rodriguez de Luna's, et al. Plea In
                                         Intervention        — p. 3 of 14 pp —

the State of Texas is 1006 Farm Rd., Orange, Orange County, Texas.

7.    Since venue is proper against Defendant **Firestone**, this Court has venue as to all Defendants since Plaintiffs' claims arise out of the same transaction, occurrence, or series of transactions or occurrences.

## C. Statement of Facts

8.    This lawsuit results from a one-car accident that occurred at approximately 7:20 p.m. On August 12, 1999, in Cadereyta, Nuevo Leon, Distrito Norte, Mexico. At the time of the accident, Hector Rojo Medina, deceased, along with others was a passenger in a 1996 Chevrolet Suburban, owed and operated by Defendants Lucent. The suburban was being driven by Carlos Ramirez Villaneuva, who was acting within the course and scope of his employment with Defendants Lucent. Hector Rojo Medina, deceased, and others were being driven home from a one day seminar/training session with Defendants Lucent when the right rear Bridgestone/Firestone tire on the 1996 Chevrolet Suburban delaminated, causing the vehicle to lose control, roll over numerous times, and fatally injury them.

9.    The 1996 Chevrolet Suburban and its Bridgestone/Firestone tires were owed and maintained by Defendants Lucent. The driver was selected by Defendants Lucent, and the seminar was arranged by Defendants Lucent and conducted by Defendants Lucent. The Intervenor was required, by Defendants Lucent, to attend the seminar.

10.    Decisions as to the Decedents' attendance at the seminar, their

---

*Rodriguez v. Lucent*                    Alejandra Marlen Rodriguez de Luna's, et al. Plea in
                                          Intervention              — p. 4 of 14 pp. —

CutePDF - www.tevisu.com

transportation to and from the seminar, the driver and the use of the suburban for their

transportation, and other related maters were made by Defendants Lucent's managerial

employees at their Brownsville, Texas location.  The Decedents systematically and

routinely traveled to the Brownsville office of Defendants Lucent for their work.  The

Decedents' work was performed for and to the benefit of Defendants Lucent.

11.    Contracts exist between Defendants Lucent and Servicios de Manufacturas

de Monterrey, S.A. de C.V., ("SDM") (the corporation that issued the Decedents' pay

checks) which govern the relationship between Defendants Lucent and the Decedents and

establish the duties owed by Defendants Lucent to the Decedents.

12.    The contract between Defendants Lucent and SDM. (The "Texas Contract")

was entered into at Brownsville, Texas, and Lucent was assigned all rights and obligations

under the Texas Contract by virtue of an assignment entered into in Brownsville, Texas.

13.    The Texas Contract provides that Defendant Lucent provide the following

services, among others, to Plaintiff and SDM:

(a)    advise and assist in determining the number and types of employees
       necessary to operate and manage the facility, and the scope and
       requirements of assignments and positions;

(b)    advise and assist in the establishment of purchasing procedures;

(c)    advise and assist in the operation of the facility;

(d)    advise and assist in the establishment of
       maintenance practices and procedures;

(a)    provide technical assistance and production personnel

---

*Rodriguez v. Lucent*                    Alejandra Marien Rodriguez de Luna's, et al. Plea in
                                         Intervention            — p. 5 of 14 pp. —

CAMPDF – www.texis.com

(f)     advise and assist in the installation of and operational training for new
        equipment.

14.     Defendants **Lucent's** decisions regarding the implementation of the Texas

Contract resulted in the August, 1999 incident in which Hector Rojo Medina and others

were killed.

## D.  Causes of Action

### 1.  Strict Liability/Breach of Warranty/Failure to Warn/DTPA

15.     Defendant **Firestone** is now, and at the time of this occurrence, engaged in

the business of designing, manufacturing, distributing and/or selling automotive tires,

including the tire which blew out on the vehicle involved in the incident made the basis of

this lawsuit.

16.  Intervenors allege that the tire made the basis of this lawsuit I. D. numbers

P235/75R15 M&S [DOTV6HLB4A296] was defective, unreasonably dangerous and unsafe

for its intended purpose at the time it left the control of **Firestone and General Motors**

**Corporation.**  The tire was defectively manufactured and/or designed which caused the

blowout made the basis of this lawsuit.  A safer alternative design would have prevented

or significantly reduced the risk of injuries, without substantially impairing the tire's utility.

Furthermore, a safer alternative design was economically and technologically feasible at

the time the product left the control of the Defendants by the application of existing or

reasonably achievable scientific knowledge.  Further, Intervenors allege that the defects

in design and/or manufacture were a producing cause of the damages set forth below.

CIMPDF - www.fsesiu.com

These acts or omissions give rise to strict products liability against **Firestone and General Motors Corporation**.

17    Such actions also constitute a violation of the Texas Deceptive Trade Practices Act, § 17.46, et. seq. in that **Firestone and General Motors Corporation** misrepresented characteristics, benefits and the quality of said tires.

18.    Defendant **General Motors** is engaged in the business of engineering, developing, researching, designing, manufacturing, assembling, fabricating, selling, marketing, inspecting, providing quality control, and testing the vehicle made the basis of this suit, more specifically, a 1996 Chevrolet Suburban. The right rear tire on the 1996 Chevrolet Suburban delaminated; this tire was designed by **General Motors** as an appropriate tire for its vehicle when the tire was not an appropriate choice. No adequate testing and quality control was exercised by Defendant **General Motors** with regard to its vehicle and its choice of tire.

19.    The vehicle and tire were defective and unreasonably dangerous, as these terms are defined by law, and such condition of the vehicle was a producing cause of the incident which caused the Decedents' deaths and their relatives' injuries. The vehicle and tire were defective at the time it was released into the stream of commerce.

20.    Defendant **General Motors and Firestone** expressly and impliedly warranted to the public generally that the P235/75R15 M&S tire installed on the 1996 Chevrolet suburban was an appropriate choice for the vehicle and that the combination of vehicle and tire was safe and fit for the purpose intended when used under ordinary conditions and in

---

*Rodriguez v. Lucent*                          Alejandra Marlen Rodriguez de Luna's, et al. Plea In
                                               Intervention              — p. 7 of 14 pp. —

an ordinary manner.

21.    Decedents relied upon these express and implied warranties, as members

of the general public, and suffered injuries and damages as a proximate result of

Defendants General Motors and Firestone's breach of these warranties.

## 2. Negligence/Gross Negligence/Malice

22.    Intervenors allege that the Defendants Firestone and General Motors were

negligent, grossly negligent and/or acted with malice in designing, manufacturing, and/or

marketing of the tire in the following respects:

     a.    Defendant Firestone was negligent, grossly negligent, and/or acted with malice in failing to design and/or manufacture the tire so that it would operate property.

     b.    Defendants Firestone and General Motors were negligent, grossly negligent and/or acted with malice in placing the tire on the market and into the hands of the owners without warning the users of any potential defects and/or limitations of said tire.

     c.    Defendant General Motors was negligent, grossly negligent and/or acted with malice in designing the vehicle, including, but not limited to the tire in question.

23.    Further, Defendant Lucent, was negligent and grossly negligent, and acted

with malice in the following respects:

     a.    Defendant Lucent failed to provide for trained and qualified driver to drive its workers to and from its seminars.

     b.    Defendant Lucent failed to provide safe and adequate mode of transportation for its workers when sending them to seminars.

---

c.    Defendant **Lucent** failed to maintain the vehicle and tire in a safe condition in order to prevent a blow out such as the occurrence in question.

d.    Defendant **Lucent** failed to properly supervise, train and/or control its employees.

e.    Defendant **Lucent** failed to adequately inspect its vehicles and/or its tires to ensure that the vehicle and/or tires were in proper working order and did not pose a danger to the safety and well-being of those using the vehicle.

24.    The acts and omission of Defendants **Lucent** by and through its Texas managerial employees, constitute negligence, negligence *per se*, negligent hiring, and negligent entrustment of a defective vehicle.

25.    The acts and omissions of the managerial employees of Defendants **Lucent**, **General Motors and Firestone** constituted gross negligence and malice, and entitle Plaintiffs to recover actual and punitive damages against said Defendants.

26.    Each and all of the foregoing acts and omissions, taken singularly or in combination, were a proximate cause of the Plaintiffs' damages as set forth below.

## E. Damages

27.    As a direct and proximate result of the Defendants' negligence and because of the strict liability of the Defendants, Intervenors have suffered damages as described below.

28.    Decedent, Hector Rojo Medina, suffered conscious pain and suffering immediately following the incident made the basis of this lawsuit.

---

*Rodriguez v. Lucent*                Alejandra Marlen Rodriguez de Luna's, et al. Plea In
                                     Intervention          — p. 9 of 14 pp. —

CIMPDF - www.fesko.com

29.   Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and

Remedies Code § 71.001, et. seq., Intervenor Alejandra Marlen Rodriguez De Luna sues

for the following damages she has suffered:

a.   Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiff from the date of the incident in question until the remainder of decedent's lifetime had he lived;

b.   All future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiff will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

c.   Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

d.   Damages for mental anguish suffered by the Plaintiff, from the date of the incident in question until the remainder of her lifetime;

e.   All future damages for mental anguish suffered by Plaintiff, which in reasonable probability Plaintiff will suffer for the remainder of her lifetime.

30.   Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and

Remedies Code, § 71.001, et. seq., Plaintiffs, **Kelly Astrid Rojo Rodriguez, Cynthia**

**Ivette Rojo Rodriguez, and Mayra Evelyn Rojo Rodriguez** sue for the following

damages they have suffered:

---

*Rodriguez v. Lucent*                                   Alejandra Marlen Rodriguez de Luna's, et al  Plea In
                                                         Intervention              — p. 10 of 14 pp —

a.   Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiffs from the date of the incident in question until the remainder of decedent's lifetime had he lived;

b.   all future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiffs will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

c.   Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

d.   Damages for mental anguish suffered by the Plaintiffs, from the date of the incident in question until the remainder of their lifetime;

e.   All future damages for mental anguish suffered by Plaintiffs, which in reasonable probability Plaintiffs will suffer for the remainder of their lifetime.

31.   Pursuant to the Texas Wrongful Death Statute, under the Civil Practice and Remedies Code, § 71.001, et. seq., Plaintiffs, **Miguel Angel Rojo Garcia and Luz Medina Andrade** sue for the following damages they have suffered:

a.   Loss of financial contributions, to wit: Loss of services, advice, counsel, and contributions of pecuniary value that the decedent would in reasonable probability have contributed to Plaintiffs from the date of the incident in question until the remainder of decedent's lifetime had he lived;

b.   all future damages for loss of services, advice, counsel, and contributions of pecuniary value, and the value of decedent's care, attention, protection, and kindness, which in reasonable probability Plaintiffs will suffer, from the date of the incident in question until the remainder of decedent's lifetime had he lived;

c. Loss of love, society, solace, comfort, companionship, and emotional support from the date of the incident until the remainder of decedent's lifetime had he lived;

d. Damages for mental anguish suffered by the Plaintiffs, from the date of the incident in question until the remainder of their lifetime;

e. All future damages for mental anguish suffered by Plaintiffs, which in reasonable probability Plaintiffs will suffer for the remainder of their lifetime.

32. Defendants **Lucent, General Motors and Firestone's** acts and omissions were grossly negligent and done with malice. Defendants **Lucent, General Motors and Firestone's** acts and omissions, when viewed objectively from said Defendants standpoint at the time they occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to others. Defendants **Lucent, General Motors and Firestone** had actual subjective awareness of the risk involved, but nevertheless proceeded with conscious indifference to the rights, safety, or welfare or other, including the Intervenors.

## F. Prayer

33. **WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that on final trial they have:

1. Actual damages, including physical pain, mental anguish, lost income, as well as all other damages available under the wrongful death and survival actions.

2. Punitive damages.

3. Funeral and burial expenses

---

*Rodriguez v. Lucent*        Alejandra Marlen Rodriguez de Luna's. et al. Plea In
Intervention     — p. 12 of 14 pp. —

4.    Cost of suit; and

5.    Pre and Post-Judgment interest.

6.    Such other and further relief to which Intervenors may be justly entitled.

Respectfully submitted,

ELLIS, KOENEKE & RAMIREZ, L.L.P.
1101 Chicago
McAllen, Texas  78501-4822
(956) 682-2440 — Telephone
(956) 682-0820 — Telecopier


By:    _____
EDMUNDO O. RAMIREZ
Texas State Bar No. 16501420
LUIS M. CARDENAS
Texas State Bar No. 24001837

ATTORNEYS FOR PLAINTIFF


*Rodriguez v. Lucent*

Alejandra Marlen Rodriguez de Luna's, et al. Plea in
Intervention          — p. 13 of 14 pp. —

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document

was forwarded to all counsel of record in this cause in the manner stated below on this the

February 19, 2001:

| | |
|---|---|
| Ms. Dana Allison<br>THE ALLISON LAW FIRM<br>855 East Harrison<br>Brownsville, Texas  78520 | **Via Facsimile** |
| Mr. Guy Allison<br>THE ALLISON LAW FIRM<br>920 Leopard<br>Corpus Christi, Texas 78401 | **Via Facsimile** |
| Mr. William B. Harrison<br>LAW OFFICES OF WILLIAM B. HARRISON<br>920 Leopard<br>Corpus Christi, Texas  78401 | **Via Facsimile** |
| Mr. Scott G. Edwards<br>HARTLINE, DACUSA, DREYER & KERN, L.L.P.<br>6688 North Central Expressway, Suite 1000<br>Dallas, Texas  75206 | **Via CM/RRR** |
| Mr. Darrell Barger<br>BARGER, HERMANSEN, McKIBBEN & VILLARREAL, L.L.P.<br>One Shoreline Plaza — North Tower, Suite 2000<br>800 North Shoreline Boulevard<br>Corpus Christi, Texas  78401 | **Via CM/RRR** |

EDMUNDO O. RAMIREZ

---

*Rodriguez v. Lucent*                      Alejandra Marien Rodriguez de Luna's, et al. Plea In
                                           Intervention        — p. 14 of 14 pp. —

CT System

**Service of Process Transmittal Form**
Dallas, Texas

02/28/2001

RECEIVED

MAR 1 6 2001

N. H. ESWORTHY

LAW DEPT

MAR 2 2001

623405
Master 618302

TO:  Amy Breckenridge
     Bridgestone/Firestone, Inc.
     Law Department
     1200 Firestone Parkway
     Akron, OH 44317

     Phone: (330) 379-4437 ax:
     FAX: (330) 379-4064
     EMAIL: BRECKENRIDGE@BFUSA.COM

RE:  **PROCESS SERVED IN TEXAS**

FOR    Bridgestone/Firestone, Inc. Domestic State: Oh

ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:

1. TITLE OF ACTION:      Maria Olivia Vasquez, Et Al vs Bridgestone/Firestone, Inc., Et Al

2. DOCUMENT(S) SERVED:   Citation, Letter, Original Plea in Intervention, Certificate of Service

3. COURT:                128th Judicial District Court, Orange County, Texas
                         Case Number A010031C

4. NATURE OF ACTION:     Alleging wrongful death as a result of a defective tire.

5. ON WHOM PROCESS WAS SERVED:   CT Corporation System, Dallas, Texas

6. DATE AND HOUR OF SERVICE:     By Certified mail on 02/28/2001 with Postmarked Date 02/26/2001

7. APPEARANCE OR ANSWER DUE:     10:00 a.m. Monday next after the expiration of 20 days

8. ATTORNEY(S):          Edmundo O. Ramirez
                         Ellis Koeneka & Ramirez, L.L.P.
                         1101 Chicago
                         McAllen, Texas 78501-4822

9. REMARKS:              i-Note sent 02/28/2001 to BRECKENRIDGE@BFUSA.COM

due 3-22-
CAN

SIGNED     CT Corporation System

PER        Tiffany Wortham
ADDRESS    350 North St. Paul Street
           Dallas, TX  75201
           SOP WS 8003497165

Information contained on this transmittal form is recorded for C T Corporation System's record keeping purposes only and to permit quick reference for the recipient. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information that can be obtained from the documents themselves. The recipient is responsible for interpreting the documents and for taking the appropriate action.

CIVIL CITATION

## THE STATE OF TEXAS

**TO:**  BRIDGESTONE/FIRESTONE INC  C/O C T CORP SYSTEM
350 N ST PAUL

DALLAS, TX. 75201

Defendant. **NOTICE:**

**YOU HAVE BEEN SUED.** You may employ an attorney. If you or your attorney do not file a written answer with the clerk who issued this citation by 10.00 A.M. on the Monday next following the expiration of twenty days after you were served this citation and petition, a default judgment may be taken against you.

Said **ANSWER** may be filed at the District Clerk's Office at the Orange County Courthouse, 801 Division Street, or by mailing it to P. O. Box 427, Orange, Texas, 77630.

Said **ORIGINAL PLEA IN INTERVENTION**

was filed and docketed in the Honorable 128TH DISTRICT COURT of Orange County, Texas at the District Clerk's Office at the Orange County Courthouse, 801 Division Street, Orange, Texas on FEBRUARY 23, 2001 in the following styled and numbered cause.

## CAUSE NO. 010031-C

**MARIA OLIVIA VASQUEZ ET AL VS BRIDGESTONE/FIRESTONE INC ET AL**

The name and address of the attorney for plaintiff otherwise the address of Plaintiff is  **LUIS M. CARDENAS**
1101 CHICAGO  MCALLEN, TEXAS 78501

**ISSUED AND GIVEN** under my hand and seal of said Court at Orange, Texas, this February 26, 2001.

**VICKIE EDGERLY, District Clerk**
Orange County, Texas

By _____, Deputy.

## RETURN

Came to hand on the _____ day of _____, 20____ at _____ o'clock ____.M. and executed in _____ County, Texas  at _____ o'clock ____.M. on the _____ day of _____, 20____ by delivering in accordance with the requirements of law, to the within named _____

person, a true copy of this citation together with the accompanying copy of the petition, having first endorsed thereon the date of delivery

And not executed as to the defendant _____

diligence used to execute being _____ the cause of failure to execute is _____ the defendant may be found _____

TOTAL FEES _____

# EXHIBIT NO. 5

CVisPDF – www.fastio.com

EOD  8/8/01

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT

01 AUG -7 PM 3: 53

TX EASTERN-BEAUMONT

BY _Marilyn Percy_

MARIA OLIVIA VASQUEZ, ET AL     §

VS.                            §   NO. 1:01-CV-168

BRIDGESTONE/FIRESTONE ET AL     §

### MEMORANDUM OPINION

## I. Background and Findings

On August 12, 1999, in Nuevo Leon, Mexico, the driver of a Chevrolet Suburban

and seven passengers were in a single car accident. All of the persons in the car were

residents and citizens of the Republic of Mexico. The passengers were employees of

Servicios de Manufacturas de Monterrey, S.A. de C.V., a Mexican corporation, which

had a contract with Lucent Technologies for furnishing operating and managerial support.

The passengers had been to a training session in Matamoros, and were returning to

Monterrey. The driver was an employee of Lucent Technologies de Mexico, a Mexican

corporation. The driver and one passenger survived the accident. All others were killed.

The plaintiffs allege that, during the return trip, one of the tires manufactured by

Bridgestone/Firestone, Inc. in Mexico, delaminated, causing the Suburban to go out of

control and roll over several times. There is evidence that a tire did indeed delaminate.

On March 15, 2000, the plaintiffs brought suit in the United States District Court

for the Southern District of Texas, Brownsville Division, against Lucent Technologies,

Inc., Lucent Technologies Maquiladoras, Inc., Servicios de Manufacturas de Monterrey,

1



S.A. de C.V., and Bridgestone/Firestone, Inc., in Civil Action No. B-00-040.  Judge Tagle

in that court dismissed the case on June 13, 2000, because Servicios "is a non-resident

Mexican corporate business entity" with a principal place of business in Guadalupe,

Nuevo Leon, Mexico.  It was therefore a citizen of Mexico, which destroyed diversity

jurisdiction.

The plaintiffs then filed suit in the 128th Judicial District of Orange County, Texas,

against defendants Bridgestone/Firestone, Inc., General Motors Corp., Lucent

Technologies, Inc., and Lucent Technologies Maquiladoras, Inc.  Defendants received

notice of the state lawsuit on February 20, 2001, and timely removed the action to this

court on March 19, 2001, under diversity jurisdiction.

Unlike the Brownsville suit, the plaintiffs have not sued the driver or "Servicios,"

or Lucent Technologies de Mexico in this suit, nor are they likely to do so because

diversity might vanish.

The plaintiffs and intervenors are suing under Texas state law, alleging various

negligence causes of action as well as strict liability and warranty actions against the

various defendants.  Their underlying cause of action, however, is for wrongful death of

the decedents in Mexico.  The defendants, led by Lucent, contend that if this lawsuit

belongs in a federal court in the United States, then Mexican law should be applied

instead of Texas law.  However, the defendants' most forceful argument is that this

lawsuit should properly be filed in Mexico, the locale of the accident and the homeland of

all of the victims and of all of the plaintiffs involved.  In addition, the automobile was

2

manufactured and sold in Mexico, and serviced and maintained in Mexico, and the tires were manufactured in Mexico. For those reasons, the defendants move to dismiss this action under the doctrine of *forum non convenines*.

The Plaintiffs Vasquez, et al ("plaintiffs," and Plaintiff-Intervenors Rodriguez De Luna, et al (intervenors"),[1] have each respectively filed Motions to Extend Time to Respond to the defendants' motions to dismiss but have submitted "preliminary responses." All defendants have similarly filed motions to extend time to reply to any "final responses."

The court, having reviewed the defendants' motions and the responses on file on behalf of Plaintiffs Vasquez, et al, and Plaintiff-Intervenors Rodriguez De Luna, et al, is of the opinion that the motions to dismiss on the grounds of *forum non conveniens* be GRANTED. Further, the plaintiffs' and intervenors' motions to extend time to respond will be DENIED and all other existing motions will be DENIED as MOOT.

## II. Procedural Issues.

This case has seen a flurry of thirty-two separate motions entered by the various parties since it was removed here in March. Some, such as motions to appear *pro hac vice*, have been routinely ruled upon by the court. As of July 13, 2001, eighteen remained open, including the first motion to dismiss on *forum non conveniens* grounds by Lucent, filed on April 19, 2001. Because the issue of whether the action properly belongs in a

---

[1] Because the intervenors' filings, motions and responses closely track those of the plaintiffs', the court will generally address the entire group as "plaintiffs."

3

court of law in Mexico will determine whether this case will proceed in the United States, this court scheduled a hearing on the *forum non conveniens* determination, along with all other pending motions, on July 27, 2001, and issued an Order that no further motions be filed pending that hearing and the ruling thereon.

Briefly addressing some of the earlier motions, the plaintiffs moved to remand their case to Texas state court on May 17, 2001, which the court denied. The plaintiffs and intervenors have subsequently moved for reconsideration of the denial, claiming that this case should be remanded to the Texas state court for various reasons. Their accompanying motion to join the Bridgestone Corporation, a Japanese entity, as a defendant is untimely. The plaintiffs' claim that the U.S. corporation Bridgestone/Firestone, Inc., is merely an operating unit of the Japanese Bridgestone Corp. is unfounded. The motion would be denied even if there were no pending *forum non conveniens* analysis.

Similarly, the plaintiffs' claim that Bridgestone/Firestone, Inc., is a citizen of Texas because of its chemical plant in Orange County, Texas, and its Texas state franchise tax filing reflecting the address of that plant, all of which they claim destroys diversity, is meritless. Bridgestone/Firestone, Inc., is an Ohio corporation with its principal place of business in Nashville, Tennessee. Further, even if it were a Texas citizen, there would still be complete diversity because all of the plaintiffs are Mexican citizens and all of the defendants are U.S. citizens. The fact that the lawsuit was brought

4

CZ4PDF - www.finebig.com

in Texas by Texas lawyers representing the plaintiffs' interests is immaterial to the diversity determination.

Because the defendants assert that Mexican law should be applied if this case were to go forward in a federal court under diversity jurisdiction, the plaintiffs insist that the case should be remanded to Texas state court because the jurisdictional amount in controversy requiring damages in excess of $75,000 cannot be met under the remedies provided in Mexican law. That contention is also meritless. The amount in controversy determination can be satisfied if it is facially apparent that the damages sought by the plaintiffs exceed the jurisdictional amount at the time of removal. *See Aguilar v. Boeing Co..*, 11 F.3d 55, 57 (5th Cir. 1993). There, it was facially apparent that a wrongful death claim, including terror in anticipation of death, loss of companionship, and funeral expenses exceeded the jurisdictional amount at the time of removal. The same analysis pertains to the *Vasquez* plaintiffs' claims. In particular, the plaintiffs are proceeding in the U.S. courts because Mexican law limits recovery to a lower sum per individual. Thus, although their state lawsuit does not specify an amount of damages, they must be seeking more than that amount, which satisfies diversity jurisdictional requirements. Further, these plaintiffs sought a specific amount in their earlier complaint filed in and dismissed by the Southern District of Texas. In that complaint, they sought actual damages of $50,000,000, and punitive damages of $200,000,000. That easily exceeds the jurisdictional amount per individual plaintiff and satisfies the analysis denying remand. *See Id.* at 58.

5

The plaintiffs have filed "preliminary" responses to the *forum non conveniens* motions, but have also moved for an extension of time for one hundred and twenty days of virtually unfettered discovery followed by fourteen days in which to prepare their "final" responses. They contend they must conduct in-depth discovery of the entities involved and depose various affiants and witnesses to prepare their responses meaningfully. The plaintiffs complain that they were only made aware of the *forum non conveniens* motions filed by the three defendants on April 18, and should be allowed more time and discovery before responding to all three of the motions. However, a *forum non conveniens* motion should come as no surprise to the plaintiffs, because the same group of Lucent defendants made the same motion more than a year ago in the plaintiffs' original action filed in the Southern District of Texas before Judge Tagle dismissed the case for lack of diversity. Additionally, the burden of responding to three such motions is not great. They are nearly identical and the Bridgestone/Firestone and General Motors defendants joined in the arguments offered by Lucent. Further, as Bridgestone/Firestone has put very well, the discovery sought by the plaintiffs really goes to the *merits* of their case, not to the *forum non conveniens* analysis. Therefore, delay is unnecessary.

On August 3, 2001, the plaintiffs filed a "post-submission brief in support of the denial of the motions to dismiss for *forum non conveniens*" in which they argue that Texas state case law applies certain international treaties to permit citizens of foreign countries who are not Texas residents to bring tort-based lawsuits in Texas state courts. Specifically, the plaintiffs cite recent Texas Supreme Court and Texas Appellate Court

6

cases for the proposition that dismissal under *forum non conveniens* is inappropriate in this case and that "an international treaty supports retention of this case." Their contention is ill-founded.

The plaintiffs argue that *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000) applies several international treaties, notably including the International Covenant on Civil and Political Rights (the Covenant), to determine whether citizens of the U.S. and citizens of another country have "equal treaty rights" for access to each others' courts. In *Dubai*, the survivors of an Indian national, who was killed while working on an oil rig off the coast of the United Arab Emirates in the Persian Gulf, brought suit in Harris County, Texas, under Texas Civil Practice and Remedies Code § 71.031 in 1993. The Harris County court dismissed the case for lack of subject matter jurisdiction. The Texas Court of Appeals reversed and the Texas Supreme Court affirmed on the issue that the Covenant and other treaties granted equal access to the courts of signatory nations, which conferred subject matter jurisdiction on a court of general jurisdiction in Texas. *See Dubai*, 12 S.W.3d at 81-83. Plaintiffs in this case propose that, therefore, the instant lawsuit is properly brought in this Court, removed from Orange County, Texas, state court, and should go forward. However, as the Texas Supreme Court noted in *Dubai*,

> The Kazis filed this action nineteen days before the effective date of Texas Civil Practice and Remedies Code section 71.051(a), which allows a Texas court to dismiss an action by a non-resident alien for an injury or death occurring outside Texas under the doctrine of *forum non conveniens*. Therefore, defendants did not seek to dismiss the case under that statute.

7

*See Id.* at 74 n.2. The plaintiffs here also argue that *forum non conveniens* was held to be improper as applied to a foreign citizen in *Toubaniaris v. American Bureau of Shipping*, 981 S.W.2d 858 (Tex. App. - Houston [1st Dist.] 1998, pet. denied). However, in that case, the lawsuit pursued by the foreign national also predated the current Texas doctrine of *forum non conveniens*. The Texas Civil Practice and Remedies Code § 71.051(a) states:

> With respect to a plaintiff who is not a legal resident of the United States, if a court of this state, on written motion of a party, finds that in the interest of justice a claim or action to which this section applies would be more properly heard in a forum outside this state, the court may decline to exercise jurisdiction under the doctrine of forum non conveniens and may stay or dismiss the claim or action in whole or in part on any conditions that may be just.

In that regard, the Texas law of *forum non conveniens* matches the federal doctrine. Regardless whether the application of any international treaty creates subject matter jurisdiction within a Texas state court for a lawsuit by a foreign citizen, the Texas state doctrine of *forum non conveniens* still applies. There is no doubt that this court also holds subject matter jurisdiction in this case. However, as is discussed below, the federal law will be applied in any *forum non conveniens* determination made within the U.S. Court of Appeals for the Fifth Circuit. Thus, the contentions of the plaintiffs' post-submission brief do not affect the *forum non conveniens* analysis in this case.

Having determined that the parties' various urgings contain no bar to a *forum non conveniens* determination, the court will turn to that topic.

8

## III. The Standard for Dismissal under *Forum Non Conveniens.*

The U.S. Supreme Court originally recognized the common law of *forum non conveniens* in federal courts as a method of dismissing damages actions or of transferring venue from a jurisdiction to another where venue was more appropriate. *See Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S. Ct. 839, 91 L. Ed. 1055 (1947). Congress has since amended the transfer of venue function of the *forum non conveniens* doctrine by enacting 28 U.S.C. 1404(a). *See Quackenbush v. Allstate Ins. Co..* 517 U.S. 706, 722, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996). However, the U.S. Supreme Court continues to recognize that federal courts have the power to dismiss damages actions under *forum non conveniens* analysis where "the alternative forum is abroad." *Id.*

When reviewing an action under diversity jurisdiction, a federal court in the Fifth Circuit must employ the federal law of *forum non conveniens* instead of state law. *See In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982*, 821 F.2d 1147, 1159 (5th Cir. 1987), *vacated on other grounds and remanded, Pan American World Airways, Inc. v. Lopez*, 490 U.S. 1032, 109 S. Ct. 1928, 104 L. Ed. 2d 400 (1989), *reinstated in relevant part, In re Air Crash Disaster Near New Orleans*, 883 F.2d 17 (5th Cir. 1989).

The Fifth Circuit will review a district court's decision on a motion to dismiss for *forum non conveniens* for a clear abuse of discretion. *See McLennan v. American Eurocopter Corp., Inc.*, 245 F.3d 403, 423 (5th Cir. 2001). Generally, a court would be found to have abused its discretion when it grants a motion to dismiss without oral or

9

written reasons or if it fails to address and balance the relevant principles and factors. *See Dickson Marine, Inc., v. Panalpina, Inc.*, 179 F.2d 331, 341 (5th Cir. 1999), *McLennan*, 245 F.3d at 424 (the Fifth Circuit will review the district court's compliance with the relevant analytical framework and will not perform a de novo analysis nor make the initial determination for the district court.

The premise underlying the doctrine of *forum non conveniens* is "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized." *See McLennan*, 245 F.3d at 423 (citing *Dickson Marine*, 179 F.3d at 341). The doctrine presupposes at least two forums where the defendant or defendants are amenable to process and simply furnishes criteria for choice between them. *Id.* at 424.

The framework for analysis under *forum non conveniens* requires that the defendant seeking dismissal must first establish that there is an alternative forum which is both available and adequate. *Id.* A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. *Id.*. A foreign forum is adequate when the parties will not be deprived of all remedies, even though they may not enjoy the same benefits as they might receive in an American court. *Id.; Aguilar v. Boeing Co.*, 806 F. Supp. 139, 143 (E.D. Tex. 1992) (citing *Perusahaan Umum Listrik Negara v. M/V Tel Aviv*, 711 F. 2d 1231 (5th Cir. 1983)).

Once the movant establishes that there is an alternative forum which is both available and adequate, the movant must show that dismissal is warranted because of the balance of certain private and public interests. *See McLennan*, 245 F.3d at 423. The

10

relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The relevant public interest factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

This court will proceed on the basis so described.

## IV. Analysis.

## A.   Availability and Adequacy of an Alternative Foreign Forum.

There are two possible forums for this action, the United States and Mexico. Jurisdiction in this court is not in question. Because all of the activity took place in Mexico–including the manufacture, purchase, and operation of the Suburban and its tires–and all of the plaintiffs are, and all of the decedents were citizens of Mexico, that country is certainly an alternative forum to the United States.

A defendant's submission to the jurisdiction of an alternative forum renders that forum available. *See Aguilar*, 806 F. Supp. At 143 (citing *Vega-Chemie, A.G. v. M/V Getafix*, 711 F. 2d 1243, 1245 (5th Cir. 1983)).   In this case, the Lucent defendants,

11

Bridgestone/Firestone, Inc., and General Motors have all agreed to submit to the jurisdiction of Mexico, have certified that they will abide by the rulings of that jurisdiction, and will pay any recovery adjudged against them. Therefore, Mexico is an available forum to hear the action.

Mexican law has been ruled to be adequate in a wrongful death action in this and other federal courts. *See Aguilar*, 806 F. Supp. at 143; *David Rodriguez Diaz v. Mexicana de Avion, S.A.*, No. SA-86-CA-1065, 1987 U.S. Dist. LEXIS 13399, at *4-9 (W.D. Tex. Jan 23, 1987), *aff'd mem.* 843 F.2d 498 (5th Cir. 1988), *cert denied*, 488 U.S. 826,, 109 S. Ct. 26,  102 L. Ed. 2d 53  (1988). Here, the plaintiffs are proceeding under negligence and strict liability actions. Mexico recognizes wrongful death actions but not strict product liability. The lack of a strict product liability cause of action in a foreign forum does not per se render that forum inadequate. *See David Rodriguez Diaz*, 1987 U.S. Dist. LEXIS 13399, at *8, citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254-55, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). The *Rodriguez Diaz* court specifically ruled that the lack of a strict liability cause of action in Mexican law did not render Mexican law inadequate. Further, the fact that a plaintiff may recover less in a wrongful death action in Mexico than in the United States does not render that system of laws inadequate. *Id.*

There is no reason to believe that Mexican law is inappropriate. The court will turn to a balancing of the private and public factors.

**B.  Private and Public Factors.**

12

Preliminarily, while it is true that a plaintiff's choice of forum should be given deference, when that plaintiff is a citizen of a foreign country who is trying to avail himself of the more favorable laws of the United States, his choice will be given less deference. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981).

*Piper Aircraft Co. v. Reyno, supra,* is particularly instructive on the issue before this court. A five-place private plane crashed in Scotland, killing all aboard. Suit was filed in Pennsylvania Federal Court and the district court, after a full analysis, dismissed the case. The Court of Appeals for the Third Circuit reversed because the remedies and damages available in Scotland were not as generous as in the United States, either under Pennsylvania law or Ohio law, holding that was the determining factor. The Supreme Court reversed.

The Court held:

> The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum. The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry. (at p. 247)

and:

> Except for the court below, every Federal Court of Appeals that has considered this question after *Gilbert* has held that dismissal on grounds of *forum non conveniens* may be granted even though the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. (at p. 250)

13

Further:

> Upholding the decision of the Court of Appeals would result in other
> practical problems. At least where the foreign plaintiff named an American
> manufacturer as defendant, a court could not dismiss the case on grounds of
> *forum non conveniens* where dismissal might lead to an unfavorable change
> in law. The American courts, which are already extremely attractive to
> foreign plaintiffs, would become even more attractive. The flow of
> litigation into the United States would increase and further congest already
> crowded courts. (at p. 251)

and:

> It suggested that defendants seeking *forum non conveniens* dismissal must
> submit affidavits identifying the witnesses they would call and the
> testimony these witnesses would provide if the trial were held in the
> alternative forum. Such detail is not necessary. (at p. 258)

In addition, in *Piper Aircraft*, the pilot's estate was not a defendant, nor was his

employer. There, the court held that one forum is preferable in order that all parties could

be before one court. The same is applicable here. The driver and Servacios and L.T.

Mexico could all be joined in one action, if appropriate under the laws of Mexico.

In addition, the judges in Mexico are required to be "learned in the (civil) law."

This court, not learned in civil law of Mexico, would be required to rely on expert

testimony of lawyers admitted in Mexico and be faced with conflicting opinions of those

"experts."

## 1. Private factors.

All of the events leading to this action took place in Mexico. The decedents were

all Mexican citizens; the plaintiffs are all Mexican citizens; the accident occurred in

Mexico in a vehicle which was built, purchased, and maintained in Mexico and was

outfitted with tires which were made in Mexico. All of the eyewitnesses, medical and law enforcement personnel and physical evidence are in Mexico. It would be difficult and expensive to produce those witnesses and transport the evidence to a court in the United States. Under these circumstances, Mexico is the most appropriate forum. *See Aguilar*, 806 F. Supp. at 144, *aff'd Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir. 1993). In *Aguilar*, a Mexicana Airlines Boeing 727 flew nonstop from Chicago's O'Hare airport to Guadalajara, Mexico, and then to Mexico City. The following day, it crashed after takeoff, killing its crew and passengers. Most of the plaintiffs in that case were Mexican citizens; evidence and witnesses concerning damage issues were also located in Mexico. Some evidence concerning the aircraft's design and manufacture might have been located in the United States. However, because the bulk of the evidence and witnesses were in Mexico, and the fact that the crash occurred in Mexico and involved mainly Mexican citizens, the invocation of *forum non conveniens* was appropriate and the case was dismissed from the Eastern District of Texas. *Id.* Unlike the ties to the U.S. in *Augilar*, the present case has virtually no tie to the United States. It is similarly appropriate to dismiss under *forum non conveniens*.

This court has no power of compulsory process over citizens of Mexico. As noted, all witnesses of the accident, surviving victims, medical and police personnel, forensic analysts and other unknown individuals reside in Mexico. The plaintiffs have asserted that they, the plaintiffs will be available and present in a U.S. court. However, they cannot guarantee the availability of any of the necessary witnesses who might be

15

unwilling to appear, and this court cannot summon them. The court has previously noted that the testimony of unwilling nonparty witnesses in Mexico can only be obtained to aid in a United States litigation through letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231. The procedure presents difficulties in obtaining adequate deposition testimony, is expensive, and is time consuming. Further, relying on depositions instead of live testimony would deprive the court and the trier of fact from evaluating the credibility of the witnesses. *See Aguilar*, 806 F. Supp. at 14. Additionally, the cost of transporting and domiciling such a group would be expensive for those witnesses who would be willing to appear in person. This factor strongly favors dismissal to allow the plaintiffs to proceed in Mexico.

Viewing the location of the accident could be appropriate, if unlikely, to a determination of this action. Although courts and juries in these types of cases are usually informed of the circumstances of vehicular accidents by photographs, models and animations, physical viewing of the locale of the accident does occur. If it were necessary in this case, such a viewing would be virtually impossible due to the time and cost it would take to transport all court personnel and the jury to the location in Mexico.

Nearly all of the reports detailing the accident are in Spanish. A few have been translated but are subject to verification. The translation process is a lengthy and expensive one. Additionally, most of the witnesses who are Mexican citizens who are willing to appear in person would require translators to testify, again at greater expense

16

and at the risk of loss of accuracy. Such translation requirements would certainly slow the case and perhaps introduce confusion among jurors.

In balance, all of the private factors indicate that Mexico is a more appropriate forum and that this case should be dismissed.

## 2. Public factors.

This court currently carries a docket including over four hundred civil and over one hundred and twenty criminal cases. The addition of this case would significantly burden the docket in terms of time and resources.

According to the statistics of the Clerk's office, there have been filed in this court 416 civil cases and 92 criminal cases in the 12-month period from July 1, 2000, to June 30, 2001. A number of those cases include complicated patent suits, copyright suits, class action suits, suits seeking class action status, qui tam actions under the False Claims Act, RICO suits, and the usual federal court mix of employment discrimination suits, wage and hour suits, federal tort claims suits, maritime and admiralty suits, product liability suits, contract suits, negligence suits, and ERISA suits.

There is virtually no local interest in deciding this controversy. Plaintiffs argue that, because Bridgestone/Firestone, Inc., has a chemical plant in Orange, Texas, the U.S. in general and southeast Texas in particular are appropriate forums. However, the Orange County plant is not the company's principal place of business and does not even produce tires; no local citizen was involved in any aspect of the decedents' accident; all the decedents and all the plaintiffs are citizens of Mexico; the accident occurred in Mexico in

17

a vehicle built and bought in Mexico on tires manufactured in Mexico; and the accident

was investigated in Mexico.. It would be manifestly unfair to impose the requirement on a

community in southeast Texas to provide a jury to hear such a case.

The plaintiffs assert that Texas state law should be employed. However, under

Texas conflict of laws analysis and the same circumstances just noted, Mexican law

would have to be employed in a federal diversity action.

According to Mexican civil law, as indicated by the affidavits of three Mexican

attorneys, Mexico follows civil law based generally on the Institutes of Justinian. That is

that in injury to persons cases, the *lex loci delicto* is applied. The *lex loci delicto* here is

located in the Republic of Mexico, the place of the unfortunate accident, the place of the

manufacture and maintenance of the vehicle, the place of the manufacture and sale of the

tires, and the fault (if any), of the driver. There is absolutely no real nexus to Texas in

this dispute, except that plaintiffs' lawyers are located in Texas.

> In all conflicts cases sounding in tort, the Texas courts apply the law of the
> forum with the most significant relationship to the occurrence and the
> parties. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). *Duncan v.
> Cessna Aircraft Company*, 665 S.W.2d 414, 421 (Tex. 1984). The most
> significant relationship test is applied to wrongful death cases. *Total Oil
> Field Services, Inc. v. Garcia*, 711 S.W.2d 237 [, 239] (Tex. 1986). The
> relevant contacts to be considered in determining which forum has the most
> significant relationship are: (1) the place where the injury occurred, (2) the
> place where the conduct causing the injury occurred, (3) the domicile,
> residence, nationality, place of incorporation, and place of business of the
> parties, and (4) the place where the relationship between the parties is
> centered.

18

*See Rodriguez Diaz*, 1987 U.S. Dist. LEXIS 13399, at *4-5; *See also Torrington Co. v.*

*Stutzman*, No. 99-0261, 2000 Tex. LEXIS 109, at *48 (Tex. Dec. 21, 2000) (recent

affirmation that Texas conflict of law analysis is founded in the RESTATEMENT (SECOND)

OF CONFLICT OF LAWS §§ 6, 145 (1971) and that for tort analysis, the four factors

enunciated in *Rodriguez Diaz* are relevant). All of these factors are met by the

circumstances of this case to establish Mexico as the forum with the most significant

relationship to the plaintiffs and their decedents' accident. Because Mexican law would

be applied, a Mexican court which understands that law far better than this one should

hear the case. That would also avoid any conflict between the laws of Mexico and the

framework of U.S. federal procedural law.

All of the public interest factors indicate that Mexico is a more appropriate forum

and that this case should be dismissed.

## V. Conclusion

*Aguilar* was similar to this case in another respect. Various of the *Aguilar*

plaintiffs chased their lawsuit across the United States, attempting to find a forum that

would try the case. It had been dismissed from the Western District of Texas under *forum*

*non conveniens. See David Rodriguez Diaz v. Mexicana de Avion, S.A.*, No. SA-86-CA-

1065, 1987 U.S. Dist. LEXIS 13399 (W.D. Tex. Jan. 23, 1987). They subsequently

brought their suit in the Eastern District of Texas under the name of another of the

plaintiffs. This Court dismissed the action on two grounds. First, under the doctrine of

direct estoppel, the Court held that the preclusive effect of the Western District's

19

dismissal prevented the plaintiffs from asserting the same issues in another forum.

Second, the Court applied the *forum non conveniens* analysis once again and found

independently that it was appropriate to dismiss. The Fifth Circuit affirmed on both

grounds. *See Aguilar*, 11 F.3d 55. Here, the *Vasquez* plaintiffs brought suit in the

Southern District of Texas. Rebuffed, they turned to the Texas state court in Orange

County and were removed to this jurisdiction. A judgment of dismissal under *forum non*

*conveniens* here should act to preclude a future lawsuit brought elsewhere in this country.

For all the reasons in the above analysis, the defendants' motions to dismiss will

be granted. It is, therefore,

ORDERED, that the three Motions to Dismiss on the grounds of *Forum Non*

*Conveniens* are hereby GRANTED, and the dismissal will be with prejudice.

It is, further, ORDERED that all other existing motions in this case are hereby

DENIED as moot. It is, further,

SIGNED, this _7_ day of August, 2001.

HOWELL COBB
UNITED STATES DISTRICT JUDGE

20

# EXHIBIT NO. 6

EOD __8/8/01__ . IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

FILED-CLERK
U.S. DISTRICT COURT

01 AUG -7 PM 3: 53

TX EASTERN·BEAUMONT

BY _Marilyn Levy_

MARIA OLIVIA VASQUEZ, ET AL          §

VS.                                  §   NO. 1:01-CV-168

BRIDGESTONE/FIRESTONE ET AL          §

## ORDER OF DISMISSAL

It is hereby ORDERED, ADJUDGED and DECREED that the above entitled and
numbered cause is hereby DISMISSED with prejudice, for the reasons set forth in the
memorandum opinion entered this date.

It is further ORDERED that costs of court shall be borne by the party incurring the
same.

SIGNED this ___7th___ day of August, 2001.

_____
HOWELL COBB
UNITED STATES DISTRICT JUDGE



# EXHIBIT NO. 7

CVISPDF – www.fastio.com

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 108 of 131

THE ALLISON LAW FIRM

RECEIVED

AUG 2 9 ·

MLC

RECEIVED

SEP 0 7 2001

TKJ

August 24, 2001

Guy Hendrick Allison

Dana Ruth Allison

Brandt A. Johnson

Charles Pugsley Fincher
  Of Counsel

Brownsville Office:

855 East Harrison

Brownsville, TX 78520

Tel 956-541-8338

Fax 956-541-2535

Corpus Christi Office:

920 Leopard Street

Corpus Christi, TX 78401

Tel 361-884-8900

Fax 361-888-8543

Mr. F. Edward Barker                    *via Facsimile (361) 884-9437*
BARKER, LEON, FANCHER & MATTHYS L.L.P.
First City Tower II, Ste 1200,
555 N. Carancahua St
Corpus Christi, TX 78478

Re:     Cause No. A010031-C; In the 128th Judicial District Court of Orange
        County, Texas; *Maria Olivia Vasquez, et al v Bridgestone/Firestone,
        Inc., et al*
        ALF No. 99-511

Dear Ed:

Given the mess created by Caddell's filing, I have withdrawn my notice of
substitution and joined Lucent in their motion to show authority. I have given the federal
court notice of this position.

As such, your amended notice of removal is not necessary. My firm has not been
substituted in on this case; therefore, my firm has no authority to file the amended petition.

Thank you for the courtesy copy. Let me know when your motion to show
authority is set.

Very truly yours,

Dana R. Allison

DRA/pm

cc:     Honorable Filemon B. Vela
        United States District Judge

# EXHIBIT NO. 8

CVISPDF – www.fastio.com

FAX_AUS * Pg 2/6
SEP 14'01 08:33 FR   LP HOU 32E 2346   713 758 2346 TO   22363332#   P.02

SEP-07-2001   09:18   FROM   .DDELL & CHAPMAN   TO   '436155736   P.02/03
Received OF '2001 09:16AM in 00:52 on line [9] for TJ17   Pg 2/3

## CADDELL & CHAPMAN
### ATTORNEYS AT LAW
THE PARK IN HOUSTON CENTER
1331 LAMAR, SUITE 1070
HOUSTON, TEXAS 77010-3027

MICHAEL A. CADDELL
BOARD CERTIFIED CIVIL TRIAL LAW
TEXAS BOARD OF LEGAL SPECIALIZATION

TEL (713) 751-0400
FAX (713) 751-0906
EMAIL CADDELL@AOL.COM

September 7, 2001

BY FAX

Mr. Thad K. Jenks
Vinson & Elkins
2200 First City Tower
1001 Fannin Street
Houston TX 77002-6760

Mr. Ed Barker
Barker, Leon, Fancher &
   Matthys, LLP
Tower III, Suite 1200
666 N. Carancahua
Corpus Christi TX 78478

Mr. Kyle Dreyer
Hartline, Dacus, Dreyer &
   Kern, LLP
6688 North Central Expressway
Suite 1000
Dallas TX 75206

Mr. Trek C. Doyle
Mr. Burgain G. Hayes
Clark, Thomas & Winters, P.C.
P. O. Box 1148
Austin TX 78701

Mr. Richard G. Morales
602 E. Carlton Rd.
Laredo TX 78401

Re:   Case No. B-01-140; *Margarita Santos Davila, et al. V. Lucent Technologies, Inc., et al.*; In the United States District Court for the Southern District of Texas, Brownsville Division

Dear Counsel:

We no longer have any involvement in this matter. Please delete us from your service list and direct all communications for the plaintiffs to Dana Allison and Guy Allison.

Best regards.

Sincerely,

Michael A. Caddell

MAC/ms

G:\MAC\LETTERS\COCOUNSEL\ALL.002

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 111 of 131

FAX_AUS * Pg 3/6

SEP 14'01 08:34 FR ve LLP HOU 32E 2346  713 758 2346 TO 95122363332#     P.03

SEP-07-2001  09:18  Received OF    2001 09:16## in 00:52 on line [9] for TJ17   Pg 3/3
                    FROM  UDELL & CHAPMAN                        TO  7..36135736     P.03/03

September 7, 2001
Page 2


cc:    Mr. Dana Allison
       Mr. Guy Allison
       Mr. Edmundo Ramirez


G:\MARQUEZ\LETTERS\0000UNISEWALL.###

# EXHIBIT NO. 9

CVISPDF – www.fastio.com

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 113 of 131

## CAUSE NO. 2001-CV001227-B1

| | |
|---|---|
| MARIA OLIVIA VASQUEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF VALENTE IBARRA IBARRA, DECEASED, AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VAZQUEZ AND JESUS ALAN IBARRA VASQUEZ, MINOR CHILDREN; | § § § § § § § |
| | § |
| MARGARITA SANTOS TORRES, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JESUS HIPOLITO DAVILA PAZ, DECEASED, AND AS NEXT FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, AND VALERIA NAYEL DAVILA SANTOS, MINOR CHILDREN; | § § § § § § § § § § § |
| | § |
| ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF SERGIO ALBERTO ZAVALA PONCE, DECEASED, AND AS NEXT FRIEND OF SERGIO ALBERTO ZAVALA PEREZ, MINOR CHILD; | § § § § § § § § |
| | § |
| MARIO ALBERTO VILLAGRAN TREVINO AND EVANGELINA CASTRO DE VILLEGRAN, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF GABRIELA VILLAGRAN CASTRO, DECEASED; | § § § § § § § § |
| | § |
| GRICELDA LETICIA TORRES DE JUAREZ, JOSE GUADALUPE JUAREZ LOPEZ, JESSICA JUAREZ AND OSCAR JUAREZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF IVONNE JUAREZ, DECEASED; | § § § § § § § § |

IN THE DISTRICT COURT

49th JUDICIAL DISTRICT

LAREDO COUNTY, TEXAS

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 114 of 131

VS.                                              §
                                                 §
BRIDGESTONE/FIRESTONE, INC.,                     §
BRIDGESTONE CORPORATION OF JAPAN,                §
BRIDGESTONE/FIRESTONE DE MEXICO,                 §
GENERAL MOTORS CORPORATION, INC.,                §
LUCENT TECHNOLOGIES, INC.,                       §
LUCENT TECHNOLOGIES                              §
MAQUILADORAS, INC.,                              §
RUDOLPH MILES AND SONS, INC.,                    §
DICEX INTERNATIONAL, INC., AND                   §
CARLOS RAMIREZ VILLANUEVA                        §

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Maria Olivia Vasquez, Individually and as representative of the Estate of Valente

Ibarra Ibarra, Deceased, and as next friend of Olivia Lizeth Ibarra Vazquez and Jesus Alan

Ibarra Vasquez, minor children, Margarita Santos Torres, Individually and as representative

of the Estate of Jesus Hipolito Davila Paz, Deceased, and as next friend of Jesus Octavio

Davila Santos, Zaideth Margarita Davila Santos, Andrea Denisse Davila Santos, and Valeria

Nayel Davila Santos, minor children, and Ethna Zuleyma Perez Lara, Individually and as

representative of the Estate of Sergio Alberto Zavala Ponce, Deceased, and as next friend of

Sergio Alberto Zavala Perez, minor child, Mario Alberto Villagran Trevino, and Evangelina

Castro de Villegran, Individually and as representatives of the Estate of Gabriela Villagran

Castro, Deceased, and Gricelda Leticia Torres De Juarez, Jose Guadalupe Juarez Lopez,

Jessica Juarez and Oscar Juarez, Individually and as Representatives of the Estate of Ivonne

CVAPDF - www.fmise.com

Juarez, Deceased, collectively referred to as the Plaintiffs, file their Plaintiffs' First Amended Petition complaining of Bridgestone/Firestone Tire, Inc. and Bridgestone/Firestone de Mexico S.A. (Defendants Firestone), Defendant Bridgestone Corporation of Japan (Defendant Bridgestone), General Motors Corporation (Defendant General Motors or GMC), Lucent Technologies, Inc., Lucent Technologies Maquiladoras, Inc.(Defendants Lucent), Rudolph Miles and Sons, Inc. (Defendant Miles), Dicex International, Inc. (Defendant Dicex), and Carlos Ramirez Villanueva (Defendant Ramirez), hereinafter collectively referred to as Defendants. Plaintiffs show unto this Honorable Court the following:

## I. DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 2 pursuant to Texas Rule of Civil Procedure 190.3. Plaintiffs reserve the right to seek an order from this Court to allow Plaintiffs to conduct discovery under Level 3, if the parties agree to this designation or circumstances warrant it.

## II. PARTIES TO THIS LITIGATION

### A.    Plaintiffs

1. Plaintiff MARIA OLIVIA VASQUEZ is an individual and citizen of Mexico who is the legal spouse of Valente Ibarra Ibarra, deceased, and the natural mother of OLIVIA LIZETH IBARRA VASQUEZ and JESUS ALAN IBARRA VASQUEZ, minor children of the marriage.

2. Plaintiff MARGARITA SANTOS TORRES is an individual and citizen of Mexico

---

who is the legal spouse of Jesus Hipolito Davila Paz, deceased, and the natural mother of JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, and VALERIA NAYEL DAVILA SANTOS, minor children of the marriage.

3.   Plaintiff ETHNA ZULEYMA PEREZ LARA is an individual and citizen of Mexico who is the legal spouse of Sergio Alberto Zavala Ponce, deceased, and the natural mother of SERGIO ALBERTO ZAVALA PEREZ, a minor child of the marriage.

4.   Plaintiffs MARIO ALBERTO VILLAGRAN TREVINO and EVANGELINA CASTRO DE VILLAGRAN are individuals and citizens of Mexico who are the natural parents of Gabriela Villagran Castro, deceased.

5.   Plaintiffs JOSE GUADALUPE JUAREZ LOPEZ and GRICELDA LETICIA TORRES DE JUAREZ are individuals and citizens of Mexico who are the natural parents of Ivonne Juarez, deceased, and JESSICA JUAREZ and OSCAR JUAREZ are individuals who are the natural brother and sister of Ivonne Juarez, deceased.

### B.   Defendants

6.   Defendant BRIDGESTONE/FIRESTONE, INC. (Defendant Firestone) is a corporation incorporated under the laws of the State of Ohio, and is authorized to do business and is doing business throughout the State of Texas. Defendant Firestone has declared its principal place of business to be Orange, Texas, Orange County. Defendant Firestone may be served with process by serving its registered agent for service, C.T. Corp. System, 350 N.

---

St. Paul, Dallas, Texas 75201, by certified mail, return receipt requested. Service has previously been requested.

7. Defendant BRIDGESTONE/FIRESTONE DE MEXICO S.A. (also referred to as Defendant Firestone since Defendant Bridgestone/Firestone, Inc. designs the tire and provides the design to Firestone de Mexico for manufacture) is a branch of Defendant Bridgestone/Firestone, Inc.. Defendant Bridgestone/Firestone de Mexico S.A. may be served by registered mail containing a true and correct coy of this Plaintiffs' First Amended Petition to its Chairman, C.E.O., President at Darwin 74, COL. Anzures del, M. Hidalgo, Apartado Postal 53-1000, 11590 Mexico D.F. Mexico. Service is requested at this time.

8. Defendant BRIDGESTONE CORPORATION of Japan (Defendant Bridgestone) is a Japanese corporation or business association. Defendant Bridgestone does business throughout the State of Texas, but does not maintain a registered agent for service of process in Texas. Defendant Bridgestone may be served by registered mail containing a true and correct copy of this Plaintiffs' Original Petition to its President, Chairman, and C.E.O., Yoichiro Kaizaki, or his designated successor, Shigeo Watanabe, or any other corporate officer, pursuant to the manner provided by Japanese law for service of documents in domestic actions on persons within its territory, at Bridgestone Corporation, 10-1 Kyobashi 1-Chome, Chuo-Ku, Tokyo 104-8340, Japan. Service has previously been requested.

Defendants Bridgestone and Firestone are, for all practical purposes, the same with regard to this incident which resulted in the deaths of five Plaintiffs and the injuries to all

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 118 of 131

Plaintiffs. As such, the three corporations will be collectively referred to as Defendants Bridgestone/Firestone.

9.   Defendant GENERAL MOTORS CORPORATION (Defendant GMC) is a corporation organized and existing under the laws of Delaware, and is authorized to conduct business in Texas and is doing business throughout the State of Texas. It may be served with process by serving its registered agent for service of process, C.T. Corp. System, 350 N. St. Paul Street, Dallas, Texas 75201. Service has previously been requested.

10.   Defendant LUCENT TECHNOLOGIES, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business throughout the State of Texas, including, but not limited to Brownsville, Texas. With regard to the decedents, Defendant Lucent was coordinating and conducting business activities in McAllen, Texas, Brownsville, Texas, and Laredo, Texas. Defendant Lucent Technologies, Inc. may be served with process by serving its registered agent for service, Prentice Hall Corp. System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service has previously been requested.

11.   Defendant LUCENT TECHNOLOGIES MAQUILADORAS, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business within the State of Texas. Defendant Lucent Technologies Maquiladoras, Inc. may be served   Defendant Lucent Technologies Maquiladora, Inc. May be served with process by serving its registered agent for service, Prentice Hall Corp.

System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service has previously been requested.

Defendants Lucent Technologies, Inc. and Lucent Technologies Maquiladoras, Inc. are, for all practical purposes, the same with regard to the incident which resulted in the deaths of five Plaintiffs and the injuries to all Plaintiffs. As such, the two corporations will be collectively referred to as Defendants Lucent.

12. Defendant RUDOLPH MILES AND SONS, INC. (Defendant Miles) is a corporation organized and existing under the laws of the State of Texas, and is authorized to conduct business within the State of Texas. Defendant Miles may be served by registered mail containing a true and correct copy of the citation accompanied by a true and correct copy of this petition to its registered agent W. Dean Hester, 1100 Chase Tower, 201 E. Main, El Paso, Texas 79901. Service is requested at this time.

13. Defendant DICEX INTERNATIONAL, INC., (Defendant Dicex) is a corporation organized and existing under the laws of the State of Texas, and is authorized to conduct business within the State of Texas. Defendant Dicex may be served by registered mail containing a true and correct copy of the citation accompanied by a true and correct copy of this petition to its registered agent Ricardo Peimbert, 14001 Mines Road, Laredo, Texas 78041. Service has previously been requested.

14. Defendant CARLOS RAMIREZ VILLANUEVA is a Mexican citizen who may be served by registed mail containing a true and correct copy of the citation accompanied by

Case 1:01-cv-00140   Document 16   Filed in TXSD on 10/11/2001   Page 120 of 131

a true and correct copy of this petition to his official address at Corona Boreal No. 3744, Col.

Ardoledas, Zapopan, Jalisco, Mexico, C.P. 45070.  Service is requested at this time.

### III.   VENUE and JURISDICTION

#### Venue in Laredo County, Texas is Proper

15.  Venue is proper in Laredo County, Texas pursuant to Texas Civil Practices and

Remedies Code, §§15.001 et seq, including  §15.005 and  §15.002(a)(3) since Laredo

County is the county of Defendant Dicex's principal office in Texas.  Moreover, a portion

of the cause of action accrued in Laredo County, Texas.

#### This Court Has Subject-Matter Jurisdiction

16. This Court has subject-matter jurisdiction over these claims pursuant to Texas

Civil Practices and Remedies Code, §71.031.  Plaintiffs meet all requirements of §71.031;

as such, they have a right to be before this Court.  *Dubai Petroleum v. Kazi*, 12 S.W.3d 71

(Tex. 2000); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252 (Tex. App. – San Antonio 1999,

pet. denied); *Toubaniaris v. American Bureau of Shipping, et al*, 981 S.W.2d 858 (Tex. App.

-- Houston [1ˢᵗ Dist.] 1998, pet. denied).

17. Moreover, The International Covenant on Civil and Political Rights  supports the

filing of this case in this Court.  The Covenant was adopted by the United States on

September 8, 1992.   The Covenant expressly supports the Plaintiffs' choice of filing in

Laredo County, Texas.

---

CutePDF - www.tesla.com

## This Court Has Personal Jurisdiction Over Defendant Bridgestone Corporation

18.    Personal jurisdiction exists as to Defendant Bridgestone in that it maintains continuous and systematic contacts with the State of Texas through its tire business and through its publicly traded stock.

19.    Defendant Bridgestone conducts business in the State of Texas on a daily basis as its stock is bought or sold. There is no stock with regard to Firestone (that is, Defendant Bridgestone/Firestone or Defendant Bridgestone/Firestone de Mexico); rather, all publicly traded stock is Defendant Bridgestone's.

20.    Defendant Bridgestone/Firestone, Inc. (Defendant Firestone) is the wholly owned subsidiary Defendant Bridgestone, and Defendant Bridgestone/Firestone de Mexico is a unit of Defendant Bridgestone/Firestone, Inc.. There is an intermingling of directors, employees and officers with regard to Bridgestone/Firestone, Inc. and Bridgestone Corporation of Japan. Also, Defendant Firestone manufactures tires in the United State of America under the "Bridgestone" name, and conversely, Defendant Bridgestone manufactures tires under the "Firestone" brand at its Hofu plant in Yamaguchi prefecture, Japan. Additionally, Defendant Bridgestone maintains a world wide website wherein it claims that the "Bridgestone" and "Firestone" brands "herald the company's (Defendant Bridgestone's) strong presence in tire markets worldwide," claims to utilize a "multi-brand" strategy, concentrating on both the "Bridgestone" and "Firestone" brands; claims that Bridgestone of Japan supplies original equipment tires to automobile manufacturers in North

America; identifies Bridgestone/Firestone tire manufacturing facilities in the United States as "Bridgestone" plants", identifies the Bridgestone/Firestone stores in the United States as "company-owned" stores and makes numerous other references which blend the two companies. Moreover, Defendant Bridgestone's annual reports blend the two companies, the two companies' resources, and the two companies' finances.

Clearly, Defendant Bridgestone and Defendant Firestone integrate their resources to achieve a common business purpose. As such, Defendant Bridgestone is liable for the tort obligations of Defendant Firestone incurred in the pursuit of that business purpose. In fact, it is Plaintiffs' belief that Defendant Firestone would be undercapitalized (and underinsured) in relation to the reasonably foreseeable risks of its business operations.

21. Defendants Bridgestone and Firestone are corporate *alter egos*. Defendant Firestone is operated as a tool or business conduit of its corporate parent, Defendant Bridgestone. Defendant Bridgestone has used Defendant Firestone to perpetuate an actual and/or constructive fraud on the public – including the Plaintiffs – for the direct benefit of Defendant Bridgestone. Defendants Bridgestone and Firestone are united as one, and any separateness, if there ever was, has ceased.

**Personal Jurisdiction Exists As To Defendant Lucent Technologies Maquiladoras**

22. There is no issue with regard to this Court's (a Texas State District Court) personal jurisdiction over Defendant Lucent Technologies Maquiladoras, Inc. Plaintiffs had previously filed this action against this Defendant in an Texas State District Court, and this

Case 1:01-cv-00140  Document 16  Filed in TXSD on 10/11/2001  Page 123 of 131

issue was not raised. As such, Defendant Lucent Technologies Maquiladoras, Inc. has judicially admitted that this Court (a Texas state district court) has jurisdiction over it, and it is estopped from taking a contrary position before this Court.

### Notice of Non-Removable Status of Plaintiffs' Cause of Action

23.    This case is not removable to any federal court since Plaintiffs are foreign citizens and Defendant Bridgestone is a foreign corporation (Japan) – as such, complete diversity does not exist. Additionally, one defendant is a Mexican citizen and one defendant is a Mexican Corporation; as such, there is no complete diversity.

24.    Moreover, two of the Defendants are Texas residents/citizens; as such, this case is not removable. 28 U.S.C.A. §1441(b).

In support of this notice of non-removability, Plaintiffs also rely upon 28 U.S.C.A. § 1332; *Bank of Nova Scotia v. S&W Berisford, Inc.*, 753 F. Supp. 237 (N.D. Ill. 1990), *Faysound Limited v. United Coconut Chemicals, Inc.*, 878 F.2d 290 (9th Cir. 1999); *Corporacion Venezolana v. Vintero Sales Corporation v. Venezolana De Cruceros Del Caribe*, 629 F.2d 786 (2nd Cir. 1980); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295 (5th Cir. 1985), and other pertinent case law.

## IV. BASIS FOR SUIT

25.    This suit is brought against the Defendants pursuant to the provisions of the Texas Wrongful Death and Survival Statutes, Chapter 71 of the Texas Civil Practices & Remedies Code, wherein the Plaintiffs, as statutory beneficiaries of the decedents are entitled

---

to bring suit on behalf of all persons entitled to be benefitted by this action. TEX.CIV.PRAC. & REM. CODE §§ 71.001, 71.002, 71.004, AND 71.021.

26. Plaintiffs have an undisputed right to file their cause of action in this Court. The Texas Legislature has specifically ordained a foreign citizen's right to file a civil lawsuit in Texas with regard to an accident or injury outside of the State of Texas. TEX.CIV.PRAC.& REM. CODE ANN. §71.031. Plaintiffs are Mexican citizens and the incident occurred outside of the State of Texas. Plaintiffs are properly before this Court.

## V. BACKGROUND FACTS

27. This lawsuit results from a one-car accident that occurred on August 12, 1999, in Cadereyta, Nuevo Leon, Mexico. At the time of the accident, the decedents, Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, were passengers in a 1996 GMC Chevrolet Suburban 2500 with a defective FR 480 Bridgestone/Firestone tire. Defendant Ramirez was the driver of the GMC Suburban.

28. Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, the Decedents, were being driven home from a one day seminar/training session with Defendants Lucent when the right rear Bridgestone/Firestone tire on the 1996 Chevrolet Suburban delaminated, causing the vehicle to lose control, roll over numerous times, and fatally injure them.

29. The decedents had previously traveled in the GMC Suburban for work, as Lucent

---

employees, in McAllen, Texas, Brownsville, Texas, and Laredo, Texas. Also, some of the

decedents had traveled to other United States' locations for work with Defendants Lucent.

On the day of the accident, the decedents had attended a Lucent seminar, as required by

Lucent, at the Lucent Matamoros Brownsville facility.

## VI. BRIDGESTONE AND FIRESTONE'S RESPONSIBILITY

30. Plaintiffs assert claims against Defendants Bridgestone and Firestone on the basis

of negligence, gross negligence, strict liability, product liability, design defect, breach of

implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade

Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the

tire's properties.

31. Defendants Bridgestone and Firestone are engaged in the business of engineering,

designing, manufacturing, fabricating, selling, marketing, providing quality control, and

inspecting the FR 480 tire. The right rear tire on the 1996 GMC Chevrolet Suburban that

delaminated was defectively and improperly designed. The tire may also have been

defectively manufactured by Defendant Bridgestone/Firestone de Mexico. No adequate

quality control was exercised by Defendants Bridgestone/Firestone with regard to this tire.

32. The FR 480 tire was defective at the time it was released into the stream of

commerce. The tire's dangerous condition rendered it unreasonably dangerous in that it was

defectively designed, defectively manufactured, defective in materials, inadequately

inspected, and in a defective condition when it was released into the stream of commerce.

These conditions were all a producing cause of the injuries and damages of the Plaintiffs.

33. Defendants Bridgestone and Firestone expressly and impliedly warranted to the public generally that the FR 480 P235/75R15 tire installed on the 1996 Chevrolet Suburban was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

34. Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages  as a proximate result of Defendants Bridgestone's and Firestone's breach of these warranties.

35. The representations made by Defendants Bridgestone and Firestone were false, misleading, and deceptive, and violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer Protection Act, hereinafter referred to as the DTPA.   Defendants Bridgestone and Firestone violations of the DTPA include their unconscionable actions or course of actions.

36. Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

## VI. GENERAL MOTORS' RESPONSIBILITY

37. Plaintiffs assert claims against Defendant General Motors on the basis of negligence, gross negligence, strict liability, product liability, design defect, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the

---

CutePDF - www.tesio.com

Chevrolet Suburban's properties.

38. Defendant General Motors is engaged in the business of engineering, developing, researching, designing, manufacturing, assembling, fabricating, selling, marketing, inspecting, providing quality control, and testing the Chevrolet Suburban. The right rear tire on the 1996 Chevrolet Suburban delaminated, and this tire was designated by General Motors as an appropriate tire for its vehicle when the tire was not an appropriate choice. No adequate testing and quality control was exercised by Defendant General Motors with regard to its vehicle and its choice of tire.

39. The vehicle was defective and unreasonably dangerous, as these terms are defined by law, and such condition of the vehicle was a producing cause of the incident which caused the Decedents' deaths and their relatives' injuries. The vehicle was defective at the time it was released into the stream of commerce.

40. Defendant GMC expressly and impliedly warranted to the public generally that its 1996 Chevrolet Suburban was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

41. Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages as a proximate result of Defendant GMC's breach of these warranties.

42. The representations made by Defendant GMC were false, misleading, and deceptive, and violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer

Protection Act, hereinafter referred to as the DTPA.  Defendant GMC's violations of the

DTPA include its  unconscionable actions or course of actions.

43.   Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the

Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

44.   The GMC Suburban was substantially manufactured in the United States with

only a small percentage of the vehicle originating from Mexico for final assembly by

GMC in Silao, Mexico (GMC Mexico).  GMC Mexico is a wholly owned subsidiary of

Defendant GMC, and Defendant GMC participates in and controls the business activities

of GMC Mexico, including design of products, manufacture of products, manufacture of

component parts of products, safety recalls, and other aspects of corporate management.

As such, GMC Mexico acts pursuant to the direction and control of Defendant

GMC.  The corporate formalities separating these two (2) corporations are not correctly

adhered to, and the corporate veil is appropriately pierced, and the legal rule of alter ego

applies.  Additionally, and/or in alternatively, Plaintiffs would show that these two

corporations conduct business as a single business enterprise.  Additionally, and/or

alternatively, Plaintiffs would show that these two corporations are engaged in a joint

enterprise.  These two companies will be collectively referred to as GMC.

## VII.  MILES' AND DICEX'S RESPONSIBILITY

45.   Plaintiffs would show that Defendant Miles and Defendant Dicex were

sellers of the GMC vehicle made the subject of this suit.  As brokers, Defendant Miles

and Defendant Dicex were engaged in the business of distributing vehicles and/or vehicle component parts into Mexico for a commercial purpose, and introducing the subject vehicle (and/or its component parts) into Mexico's stream of commerce for their and GMC's financial benefit. As stated above, the GMC Suburban vehicle was defective and unreasonably dangerous, and a producing cause of the injuries and deaths suffered by Plaintiffs. Plaintiffs sue Defendants Miles and Dicex as a seller in this product liability action.

## VIII.  LUCENTS' RESPONSIBILITY

46.  Plaintiffs assert claims against Defendants Lucent by virtue of the acts and omissions of Lucent's managerial employees.

47.  Defendants Lucent failed to exercise ordinary and reasonable care in the supervision and control of its employees, and failed to provide safe transportation to the decedents.

48.  Defendants Lucent, through its driver, violated road safety laws; as such, they are liable to Plaintiffs under the doctrine of negligence per se.

49.  Defendants Lucent required decedents to be transported in an unsafe vehicle with a defective tire.

50.  Defendants Lucent's negligence, negligence per se, and gross negligence were a proximate cause of the horrific injuries to the Decedents and their families.

## IX. RAMIREZ' RESPONSIBILITY

51. Defendant Ramirez was the driver of the GMC Suburban at the time of the incident which lead to Plaintiffs' injuries and/or deaths. Defendant Ramirez was negligent in handling the GMC Suburban, and was driving at an unsafe speed.

52. Defendant Ramirez' negligence and negligence per se were a proximate cause of the horrific injuries to the Decedents and their families.

## X. DAMAGES

53. Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, were tragically killed as a result of all Defendants' misconduct. Each decedent endured conscious physical pain and suffering, emotional distress and mental anguish, fear, the anticipation of death, and death. Their injuries alone far exceed the jurisdictional limits of this Court.

54. Additionally, each estate has incurred funeral and burial expenses.

55. Also, the wrongful death beneficiaries have suffered mental anguish and emotional distress, loss of society, loss of companionship, loss of financial support, loss of the decedents' estate, loss of consortium, loss of parental guidance, loss of earning capacity, medical expenses, and burial expenses.

56. Plaintiffs also seek punitive damages for the Defendants' malicious conduct and gross neglect. Moreover, Plaintiffs seek prejudgment interest, postjudgment interest, their attorneys' fees and expenses, and costs of Court.

57. Lastly, Plaintiffs request a jury trial and assert that all conditions precedent have

occurred or been performed.

**PLAINTIFFS REQUEST A TRIAL BY JURY.**

> Respectfully submitted,
>
> THE ALLISON LAW FIRM
> 855 East Harrison
> Brownsville, Texas 78520
> (956) 541-8338 (telephone)
> (956) 541-2535 (facsimile)
>
> DANA R. ALLISON
> State Bar No. 12235280
> CHARLES PUGSLEY FINCHER
> State Bar No. 07003000
>
> THE ALLISON LAW FIRM
> 920 Leopard Street
> Corpus Christi, Texas 78401
> (361) 884-8990 (telephone)
> (361) 888-6543 (facsimile)
>
> GUY H. ALLISON
> State Bar No. 01086000
> LEAD COUNSEL FOR PLAINTIFFS

---