*17*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### BROWNSVILLE DIVISION

United States District Court
Southern District of Texas

OCT 3 0 2001

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MARGARITA SANTOS DAVILA, INDIVIDUALLY, AND AS NEXT FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, AND VALERIA NAYEL DAVILA SANTOS, AND ALL AS REPRESENTATIVES OF THE ESTATE OF JESUS DAVILA PAZ; ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY, AND AS NEXT FRIEND OF SERGIO ALBERTO ZAVALA PEREZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF SERGIO ALBERTO ZAVALA; MARIA OLIVIA VASQUEZ, INDIVIDUALLY, AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VASQUEZ AND JESUS ALAN IBARRA VASQUEZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF VALANTE IBARRA IBARRA | § § § § § § § § § § § § § § § § § § § § § § § § | |
|     Plaintiffs, | § § § | Civil Action No. B-01-140 |
| V. | § § | |
| LUCENT TECHNOLOGIES, INC., LUCENT TECHNOLOGIES MAQUILADORAS, INC.; LAREDO QUALITY TRANSFER SERVICES, INC; BRIDGESTONE/FIRESTONE INC.; AND BRIDGESTONE CORPORATION | § § § § § § § § | |
|     Defendants. | § § | |

## STIPULATION AND ORDER OF DISMISSAL

Now comes Michael A. Caddell, attorney-in-charge for Plaintiffs in the above-captioned action, and pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii) states the following:

ChkPDF - www.faxio.com

1.     On December 22, 2000, Plaintiffs in the present case retained Michael Caddell and Cynthia Chapman of Caddell & Chapman, P.C., to prosecute the claims pleaded in this case after representing that they had terminated their previously retained counsel, The Allison Law Firm, in this matter.[1]  Caddell & Chapman filed suit on Plaintiffs' claims in the 404th District Court of Cameron County ("Cameron County Action").

2.     Sometime after Plaintiffs retained Caddell & Chapman to prosecute their claims against Defendants, Plaintiffs again retained The Allison Law Firm to prosecute their claims without the knowledge of Caddell & Chapman.  On June 25, 2001, Dana Allison informed Caddell & Chapman by letter that her law firm represented Plaintiffs, and requested that Caddell & Chapman "end the erroneously field lawsuit in Cameron County."[2] **Not desiring to enter into litigation with the Allison Law Firm as to who properly represented Plaintiffs, Caddell & Chapman agreed to withdraw as counsel of record in this case and nonsuit the Cameron County Action.**[3]

3.     Prior to nonsuiting the Cameron County Action, on August 8, 2001,  Dana Allison filed a Notice of Substitution of Counsel, which requested that she and the Allison Law Firm be substituted as counsel in the Cameron County Action.[4]  On August 16, 2001, the Order Substituting Counsel was entered.[5]  However, on August 14, 2001, the Cameron

---

[1]     Along with Caddell & Chapman, Plaintiffs hired Ezequiel Reyna, Jr.  Frank Costilla later joined Caddell, Chapman, and Reyna as local counsel for Plaintiffs.

[2]     See June 25, 2001 letter from Dana Allison to Caddell & Chapman asserting her representation of Plaintiffs for claims asserted in this cause, attached hereto as Exhibit A.

[3]     See August 16, 2001 letter from Cynthia B. Chapman to Dana Allison, attached hereto as Exhibit B.

[4]     See Notice of Substitution of Counsel, attached hereto as Exhibit C.

[5]     See Order Substituting Counsel, attached hereto as Exhibit D.

County Action was removed, thereby rendering the Order Substituting Counsel ineffective as to this action. Subsequent to removal of this action, Dana Allison filed another action on behalf of Plaintiffs in the 49th Judicial Court, Laredo County, Texas, which she is currently prosecuting on Plaintiffs' behalf.[6]

4.    Given the foregoing, Michael Caddell as counsel for Plaintiffs, Edmundo Ramirez as counsel for Intervenors, F. Edward Barker as counsel for Defendants Lucent Technologies, Inc., and Lucent Technologies Maquiladoras, Inc., Knox D. Nunnally as counsel for Defendant Bridgestone/Firestone, Inc., Richard Morales Jr. as counsel for Defendant Laredo Transfer Services, Inc., and Trek C. Doyle as counsel for Defendant Bridgestone Corporation stipulate that the above action be dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(ii) as witnessed by their signatures below.

Respectfully submitted,

Michael A. Caddell
SBT No. 03576700
Caddell & Chapman
1331 Lamar, Suite 1070
Houston, TX 77010-3027
Telephone: (713) 751-0400
Facsimile: (713) 751-0906

ATTORNEY-IN-CHARGE FOR
PLAINTIFFS

---

[6]    *See* Plaintiffs' First Amended Petition in the District Court, 49th Judicial District, Laredo County, Texas, attached hereto as Exhibit E.

Edmundo Ramirez
SBT No. 16501420
Ellis, Koeneke & Ramirez
1101 Chicago Avenue
McAllen, TX  78501-4822
Telephone: (956) 682-2440
Facsimile: (956) 682-9748

ATTORNEY-IN-CHARGE FOR PLAINTIFF-
INTERVENORS Alejandra Marlen
Rodriguez De Luna, Individually and as
Representative of the Estate of Hector Rojo
Medina, and as next Friend of Kelly Astrid
Rojo Rodriguez, Cynthia Ivette Rojo
Rodriguez, and Mayra Evelyn Rojo
Rodriguez, Miguel Angel Rojo Garcia, and
Luz Medina Andrade

F. Edward Barker
SBT No. 01741000
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

ATTORNEY-IN-CHARGE FOR
DEFENDANTS LUCENT TECHNOLOGIES,
INC., LUCENT TECHNOLOGIES
MAQUILADORAS, INC.

Edmundo Ramirez
SBT No. 16501420
Ellis, Koeneke & Ramirez
1101 Chicago Avenue
McAllen, TX  78501-4822
Telephone: (956) 682-2440
Facsimile: (956) 682-9748

ATTORNEY-IN-CHARGE FOR PLAINTIFF-
INTERVENORS Alejandra Marlen
Rodriguez De Luna, Individually and as
Representative of the Estate of Hector Rojo
Medina, and as next Friend of Kelly Astrid
Rojo Rodriguez, Cynthia Ivette Rojo
Rodriguez, and Mayra Evelyn Rojo
Rodriguez, Miguel Angel Rojo Garcia, and
Luz Medina Andrade


F. Edward Barker
SBT No. 01741000
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
Telephone: (361) 881-9217
Facsimile: (361) 882-9437

ATTORNEY-IN-CHARGE FOR
DEFENDANTS LUCENT TECHNOLOGIES,
INC., LUCENT TECHNOLOGIES
MAQUILADORAS, INC.

Knox D. Nunnally /w/permission
Morgan Copel

Knox D. Nunnally
Morgan Copeland
Thad K. Jenks
J. Stevenson Weimer
Vinson & Elkins, L.L.P.
Attorneys at Law
2300 First City Tower
1001 Fannin
Houston, Texas 77002-6760
Telephone:(713) 758-2416
Facsimile: (713) 758-2416

ATTORNEYS FOR DEFENDANTS
BRIDGESTONE/FIRESTONE, INC.

---

Trek C. Doyle
Burgain G. Hayes
G. Robert Sonnier
Clark, Thomas & Winters, P.C.
P.O. Box 1148
Austin, Texas 78767
Telephone: (512) 472-8800
Facsimile: (512) 472-8800

ATTORNEYS FOR DEFENDANT
BRIDGESTONE CORPORATION

Knox D. Nunnally
Morgan Copeland
Thad K. Jenks
J. Stevenson Weimer
Vinson & Elkins, L.L.P.
Attorneys at Law
2300 First City Tower
1001 Fannin
Houston, Texas 77002-6760
Telephone:(713) 758-2416
Facsimile: (713) 758-2416

ATTORNEYS FOR DEFENDANTS
BRIDGESTONE/FIRESTONE, INC.


Trek C. Doyle
Burgain G. Hayes
G. Robert Sonnier
Clark, Thomas & Winters, P.C.
P.O. Box 1148
Austin, Texas 78767
Telephone: (512) 472-8800
Facsimile: (512) 472-8800

ATTORNEYS FOR DEFENDANT
BRIDGESTONE CORPORATION

Trek C. Doyle
Burgain G. Hayes
G. Robert Sonnier
Clark, Thomas & Winters, P.C.
P.O. Box 1148
Austin, Texas 78767
Telephone: (512) 472-8800
Facsimile: (512) 472-8800

ATTORNEYS FOR DEFENDANT
BRIDGESTONE CORPORATION

Richard G. Morales, Jr.
Person, Whitworth, Ramos, Borchers,
& Morales, L.L.P.
602 East Carlton
P.O. Box 6668
Laredo, Texas 78042–6668
Telephone: (956) 727-4441
Facsimile: (956) 727-2696

ATTORNEY-IN-CHARGE FOR DEFENDANT
LAREDO TRANSFER SERVICES, INC.

_____ _____

PRESIDING JUDGE
U.S. District Court
Southern District of Texas
Brownsville Division

G.\Vasquez2\Pleading\Stipord dis2

CVisPDF – www.fastio.com

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2001, a true and correct copy of the foregoing document was served by Certified Mail, Return Receipt Requested to the following:

Edmundo Ramirez
Ellis, Koeneke & Ramirez
1101 Chicago Avenue
McAllen, TX  78501-4822
**ATTORNEY-IN-CHARGE FOR PLAINTIFF-INTERVENORS**

F. Edward Barker
Barker, Leon, Fancher & Matthys, L.L.P.
Tower II, Suite 1200
555 N. Carancahua St.
Corpus Christi, Texas 78478
**ATTORNEY-IN-CHARGE FOR DEFENDANTS LUCENT TECHNOLOGIES, INC., LUCENT TECHNOLOGIES MAQUILADORAS, INC.**

Knox D. Nunnally
Morgan Copeland
Thad K. Jenks
J. Stevenson Weimer
Vinson & Elkins, L.L.P.
Attorneys at Law
2300 First City Tower
1001 Fannin
Houston, Texas 77002-6760
**ATTORNEYS FOR DEFENDANTS BRIDGESTONE/FIRESTONE, INC.**

Trek C. Doyle
Burgain G. Hayes
G. Robert Sonnier
Clark, Thomas & Winters, P.C.
P.O. Box 1148
Austin, Texas 78767
**ATTORNEYS FOR DEFENDANT BRIDGESTONE CORPORATION**

Richard G. Morales, Jr.
Person, Whitworth, Ramos, Borchers, &
     Morales, L.L.P.
602 East Carlton
P.O. Box 6668
Laredo, Texas 78042–6668
**ATTORNEY-IN-CHARGE FOR DEFENDANT LAREDO TRANSFER SERVICES, INC.**

Cynthia B. Chapman

CVISPDF - www.fastio.com

REC'D AUG  1 2001



THE ALLISON ⅃ ⅃ M

July 25, 2001

Guy Hendrick Allison

Dana Ruth Allison

Brandt R. Johnson

Charles Pugsley Fincher
    Of Counsel

**via Facsimile (713) 751-0900**
Mr. Michael A. Caddell
Caddell & Chapman
The Park In Houston Center
1331 Lamar, Suite 1070
Houston, Texas 77010-3027

Brownsville Office:

855 East Harrison

Brownsville, TX 78520

Tel 956•541•8338

Fax 956•541•2535

Re:   C.A.   No.1:01CV168:   *Maria   Olivia   Vasquez,   et   al   v
      Bridgestone/Firestone, Inc., et al*; In The United States District Court
      Eastern District, Beaumont Division
      <u>ALF No. 99-511</u>

Dear Mr. Caddell:

I am attaching  to this letter the affidavits of our three clients, filed in Federal
Court, which leave no question that our firm represents them.

Please sign below indicating that you will take whatever steps are necessary to end
the erroneously-filed lawsuit in Cameron County, that you have no financial interest in the
case, and that you will immediately cease contact with our clients.

Corpus Christi Office:

920 Leopard Street

Corpus Christi, TX 78401

Tel  361•884•8900

Fax 361•888•6543

Very truly yours,

THE ALLISON LAW FIRM

Dana R. Allison

DRA/pm

_____
Michael A. Caddell

a inclusive las facturas salían a nombre de Lucent y con el nombre de mi esposo.

Cuando mi esposo Sergio Zavala empezo a trabajar para Servicios de Manofactura tuvo forzosamente que asistir por un periodo de una semana para capacitación en la planta de Lucent en oklahoma y los gastos fueron cubiertos totalmente por personal de oklahoma a excepcion del avion.

Sergio Alberto Zavala Ponce se vio involucrado en un accidente automovilistico el 12 de Agosto de 1999 alrededor de las 6:30 p.m., cuando regresaba de un curso en Matamoros Tamps, en el cual perdio la vida, tras su muerte me informaron que una indemnisación y compensación economica estaba disponible en Mexico al parecer por una cantidad aproximada de $78,000.00 pesos mexicanos pero con la condición de otorgar el perdon y excloir de cualquier cargo juridico al chofer (sr. Carlos Ramirez) en aquel momento me parecio absurda esa cantidad, pues mi familia se compone de un solo hijo que apenas tenia 10 meses de nacido, mi hijo en plena niñez y con todo un futuro escolar por delante, asi mismo y con toda la responsabilidad de su manutención a mi cargo, razones por las cuales rechaze esa indemnizacion y tomo la decision de demandar en los estados unidos pues las leyes Mexicanas no tienen un sistema de justicia civil como el de haya.

Parte de mi decision para entablar la demanda en los estados unidos fue porque tampoco la empresa contaba con un seguro de vida para

Yo Ethna Zuleyma Pérez Lora con 28 Años de edad con capacidad para hacer esta declaración. Tengo conocimiento personal de los hechos a mencionar en esta declaración y los expongo con base a mi propio conocimiento.

Mi esposo Sergio Alberto Zavala Ponce fue empleado por Servicios de Manufactura de Monterrey S.A. de C.V. Planta Lucent ~~en Corporation Ltda~~ Technologies en Monterrey desde 1995.

El 12 de Agosto de 1999 el en compañia de otros compañeros de trabajo regresaban a su lugar de trabajo, procedentes de la Planta Lucent Technologies de Matamoros Tamps., a la cual habia asistido a un curso organizado por el Sr. Carlos Ramirez y autorizado por el Sr. Mitch West Gerente de Lucent Technologies y tambien Gerente General de Servicios de Manufactura de Monterrey SA. de C.V. Mi esposo recibia con frecuencia articulos promocionales tales como camisas, gorras, maletas, taza, thermos hieleras etc. con el logotipo de Lucent asi mismo su correo electronico era @ lucent.com.

Mi esposo Sergio Alberto Zavala Ponce asistio y varios entrenamientos, cursos y eventos organizados por Lucent Technologies en diferentes ciudades tales como onlahoma, ohio, Matamoros.

Lucent Technologies hacia las reservaciones de hotel y carro cuando mi esposo viajaba a oklahoma (Planta principal de Lucent que es el mayor apoyo para Servicios de Manufactura)

para los ample   ; a pesar de que l— mayoría
de ellos viajaba con mucha frecuencia a difentes
partes del País.

Sergio Alberto Zavala Ponce tenía 26 años de edad
al morir con ingresos ~~oo~~ anuales de $144.000.00
aproximadamente en pesos Mexicanos.

Considero a mi criterio personal que la indemni-
zación otorgada por las leyes Mexicanas no
es justa para comenzar a mi y a mi
familia por la pérdida de mi esposo y
padre de mi hijo.

Entiendo que las compañías a quienes he
demandado querran tomar mi declaración o
hacerme preguntas para lo cual estoy disponible
para asistir para rendir mi declaración en las
oficinas de mis abogados: de Allison Law
Firm ubicada en 855 East Harrison Brownsville
Texas 78520.

Así mismo aportare voluntariamente información y
documentos en mi posesión tal como me lo
indiquen mis abogados.

Quiero ratificar que durante el tiempo que Sergio
Alberto Zavala Ponce trabajo en servicios de
Manufactura, Lucent Technologies estuvo bajo las
ordenes del sr. Mitch West. y que cualquier
decisión, o planeación que se hiciera tenía
que ser autorizada por el sr. Mitch West.



19/Junio/01

Yo Ethna Zuleyma Pérez Lora con 28 Años de edad con capacidad para hacer esta declaración. Tengo conocimiento personal de los hechos a mencionar en esta declaración y los expongo con base a mi propio conocimiento.

Mi esposo Sergio Alberto Zavala Ponce fue empleado por servicios de Manufactora de Monterrey S.A. de C.V. Planta Lucent ~~con~~ ~~corporativo~~ ~~texto~~ Technologies en Monterrey desde 1995.

El 12 de Agosto de 1999 él en compañia de otros compañeros de trabajo regresaban a su lugar de trabajo, procedentes de la Planta Lucent Technologies de Matamoros Tamps., a la cual había asistido a un curso organizado por el sr. Carlos Ramirez y autorizado por el sr. Mitch West Gerente de Lucent Technologies y tambien Gerente General de Servicios de Manufactora de Monterrey SA. de C.V. Mi esposo recibia con frecuencia artículos promocionales tales como camisas, gorras, maletas, taza, thermos hieleras etc. con el logotipo de Lucent así mismo su correo electronico era @ Lucent.com.

Mi esposo Sergio Alberto Zavala Ponce asistió y varios entrenamientos, cursos y eventos organizados por Lucent Technologies en diferentes ciudades tales como Oklahoma, Ohio, Matamoros.

Lucent Technologies hacia las reservaciones de hotel y carro cuando mi esposo viajaba a Oklahoma (Planta principal de Lucent que es el mayor apoyo para servicios de Manufactora)

para los empleados a pesar de que mayoria de ellos viajaba con mucha frecuencia a difentes partes del Pais.

Sergio Alberto Zavala Ponce tenia 26 años de edad al morir con ingresos anuales de $144.000.00 aproximadamente en pesos Mexicanos.

Considero a mi criterio personal que la indemnizacion otorgada por las leyes Mexicanas no es justa para compenzar a mi y a mi familia por la perdida de mi esposo y padre de mi hijo.

Entiendo que las compañias a quienes he demandado querran tomar mi declaracion o hacerme preguntas para lo cual estoy disponible para asistir para rendir mi declaracion en las oficinas de mis abogados: de Allison Law Firm ubicada en 855 East Harrison Brownsville Texas 78520.

Asi mismo aportare voluntariamente informacion y documentos en mi posesión tal como me lo indiquen mis abogados.

Quero ratificar que durante el tiempo que Sergio Alberto Zavala Ponce trabajo en servicios de Manufactura, Lucent Technologies estuvo bajo las ordenes del Sr. Mitch West. y que cualquier decisión, o planeación que se hiciera tenia que ser autorizada por el Sr. Mitch West.



19/Junio/01

I, Ethna Zuleyma Perez Lara, 28 years old with the mental capacity to give this statement, have personal knowledge of the facts mentioned in this statement and I state them of my own personal knowledge.

My husband, Sergio Alberto Zavala Ponce was hired by "Servi-cios de Manufactura de Monterrey, S.A. de C.V." a plant of Lucent Technologies in Monterrey since 1995.

On August 12, 1999, he together with other co-workers were returning to their place of work from the Lucent Technolo-gies of Matamoros, Tamps.' plant where they had attended a course organized by Mr. Carlos Ramirez and authorized by Mr. Mitch West manager of Lucent Technologies and also general manager of "Servicios de Manufactura de Monterrey, S.A de C.V."

My husband would frequently receive promotional articles such as shirts, caps, suitcases, cups, thermoses, ice chests et cetara with Lucent's logo, furthermore his e-mail was @lucent.com.

My husband, Sergio Alberto Zavala Ponce, attended several training sessions, courses, and events organized by Lucent Technologies in different cities such as Oklahoma, Ohio, Ma-tamoros.

When my husband traveled to Oklahoma (main plant of Lucent which is the major support for "Servicios de Manufactura", Lucent Technologies would make the hotel and car reserva-

1

tions, moreover the invoices would be made out to Lucent and bearing my husband's name.

When my husband Sergio Zavala began working for "<u>Servicios de Manufactura</u>" had to attend a one week training session at Lucent in Oklahoma and the expenses were totally paid for by personnel of Oklahoma with the exception of the plane fare.

Sergio Alberto Zavala Ponce was involved in an automobile accident on August 12, 1999, around 6:30pm as he was returning from a course in Matamoros, Tamps. in which he lost his life. After his death I was informed that an indemnification and monetary compensation were available in Mexico seemingly for an approximate amount of $78,000.00 mexican pesos, but with the condition of granting a pardon and to exclude the driver (Mr. Carlos Ramirez) from any judicial charges. At the time that amount seemed absurd since my family consists of an only son who was only 10 months old. My son in the middle of childhood with an entire scholastic future ahead of him, at the same time I was left with the responsibility of his support. Reasons for which I rejected said indemnification and made the decision to sue in the United States, since mexican laws do not have a civil system of justice as over there.

Part of my decision to file a lawsuit in the United States was because the company also did not have life insurance for the employees in spite of the fact that the majority of

2

them would travel very frequently to different parts of the country.

Sergio Alberto Zavala Ponce was at the time of his death 26 years old with an annual income of approximately $144,000.00 in mexican pesos.

It is my personal opinion that the indemnification afforded by the mexican laws is not just in order to compensate me and my family for the loss of my husband and my son's father.

I understand that the companies whom I have sued will want to take my deposition or ask me questions for which I am available to attend to give my statement at the offices of my attorneys: of Allison Law Firm located at 855 East Harrison, Brownsville, Texas, 78520.

Likewise, I will provide voluntarily information and documents in my possession as it is indicated by my attorneys.

I want to ratify that during the period of time that Sergio Alberto Zavala Ponce worked at "Servicios de Manufactura" Lucent Technologies he was under the orders of Mr.Mitch West and that any decision or planning that was made had to be authorized by Mr. Mitch West.

3

# Sergio Alberto Zavala

Sergio Alberto Zavala was 26 years old at the time of his death.  He was a product engineer, a husband, and the father of a little boy, Sergio Alberto, Jr.

Sergio worked from 6:00 a.m. until 5:30 p.m. Monday through Friday, and spent the weekends relaxing with his family.  They enjoyed eating out, playing sports together, listening to music, and traveling.  Sergio and his family had vacationed in Acapulco, Cancun, Mazatlan, Tijuana, Xalapa and Veracruz.

Sergio had known his wife since childhood, as they had grown up together.  they dated for seven happy years before getting married.  Sergio was a helpful husband, and a devoted father.  He was present at his son's birth, and wanted the very best for his family.

Sergio's wife buried him on her father's birthday.

Yo Margarita Santos Torres con 38 años de edad ①
y con capacidad para hacer esta declaración. Tengo conoci-
miento personal de los hechos a mencionar en esta
declaración y los expongo con base a mi propio conocimiento.
Mi esposo Jesús Hipólito Dávila Paz fué empleado por Servicios
de Manufactura de Monterrey, S.A. de C.V. planta de Lucent
Technologies en Monterrey desde 1991.
El 12 de Agosto de 1999 El en compañía de otras compañeras
de trabajo regresaban a su lugar de trabajo procedentes de la
planta Lucent Technologies de Matamoros, Tamps. a la cual habían
asistido a un curso organizado por el Sr. Carlos Ramírez y
autorizado por el Sr. Mitch West Gerente de Lucent Technologies
y también Gerente General de Servicios de Manufactura de Mfry.,
S.A. de C.V.
Mi esposo recibía con frecuencia artículos promocionales tales
como camisas, gorras, chamarras, maletines, etc. con el logotipo
de Lucent, así mismo su correo electrónico era : @lucent.cqm.
Mi esposo Jesús Dávila Paz asistió a varios entrenamientos,
cursos y eventos organizados por Lucent Technologies en diferentes
ciudades tales como: Guadalajara, Oklahoma, Matamoros, Orlando.
Lucent Technologies hacía las reservaciones de hotel y carro
cuando mi esposo viajaba a Oklahoma (planta principal de
Lucent que es el mayor apoyo para SMM)e inclusive las facturas
salían a nombre de Lucent Tech. y con el nombre
de mi esposo.
Cuando mi esposo Jesús H. Dávila Paz empezó a trabajar
para SMM tuvo forzosamente que asistir por un período
de 1 semana para capacitación en la planta de Lucent Tech.
en Oklahoma y los gastos fueron cubiertos totalmente
por personal de Oklahoma a excepción del Avión.
Jesús H. Dávila Paz se vió involucrado en un accidente
automovilístico el 12 de Agosto de 1999 alrededor de la
6:30 p.m. cuando regresaban de un curso en Matamoros, Tamps.
en el cual perdió la vida, tras su muerte me comunicaron
que una indemnización y compensación económica estaba
disponible en México al parecer por una cantidad aproximada
de $214,000.= pesos mexicanos pero con la condición de otorgar
el perdón y excluir de cualquier cargo jurídico al chofer
(Sr. Carlos Ramírez), en aquel momento me pareció absurda

I, Margarita Santos Torres, 38 years old with the mental capacity to give this statement, have personal knowledge of the following facts, and I state them from my own personal knowledge.

My husband, Jesus Hipolito Davila Paz, was hired by "Servicios de Manufactura de Monterrey, S.A. de C.V." a plant of Lucent Technologies in Monterrey since 1991.

On August 12, 1999, he together with other co-workers were returning to their work place from the plant of Lucent Technologies of Matamoros, Tamps. where they had attended a course organized by Mr. Carlos Ramirez and authorized by Mr. Mitch West manager of Lucent Technologies as well as of "Servicios de Manufactura de Mty, S.A. de C.V."

My husband would often receive promotional articles such as shirts, caps, jackets, small overnight bags, et cetera with Lucent's logo, furthermore his e-mail was: @lucent.com.

My husband, Jesus Davila Paz, attended several training sessions, courses, and events organized by Lucent Technologies in different cities such as: Guadalajara, Oklahoma, Matamoros, Orlando. When my husband would travel to Oklahoma (main plant of Lucent, which is the major support for "SMM"), Lucent Technologies would make the hotel and car reservations, furtheremore the invoices would be made out to Lucent Tech. and bearing my husband's name.

When my husband, Jesus H. Davila Paz, began working for

1

"<u>SMM</u>" he had to attend a one week training session at the plant of Lucent Tech. in Oklahoma, and the expenses were totally covered by personnel of Oklahoma with the exception of the plane fare.

Jesus H. Davila Paz was involved in an automobile accident on August 12, 1999, around 6:30pm as he was returning from a course in Matamoros, Tamps., in which he lost his life. After his death I was told that an indemnification and a monetary compensation was available in Mexico seemingly for an approximate amount of $214,000.00 mexican pesos but with the condition of granting a pardon and exonerating the driver (Mr. Carlos Ramirez) from any judicial charges, at the time that sum seemed absurd since my family consists of 4 children and I, my children are in the middle of childhood with an entire scholastic future ahead of them, as well as the whole financial responsibility of their support left to me, reasons for which I rejected said indemnification and made the decision to sue in the U.S., since the mexican laws do not have a civil system of justice as there is there.

Part of my decision to file a lawsuit in the U.S. was because the company also did not have life insurance for the employees in spite of the fact that the majority of them would frequently travel to different parts of the country.

Jesus H. Davila Paz was at the time of his death 33 years old with an annual income of $35,000.00 mexican pesos appro-

ximately. It is my personal belief that the indemnification granted by the mexican laws is not just to compensate me and my family for the loss of my husband and father of my children.

I understand that the companies which I have sued will want to take my deposition and ask me questions for which I am available to give my deposition at the offices of my attorneys: The Allison Law Firm, situated at 855 East Harrison, Brownsville, Tx., 78520, and I will as well voluntarily provide information and documents in my possession as it is indicated by my attorneys.

I want to ratify that during the period of time that Jesus H. Davila Paz worked for "SMM" Lucent Tech. was under the orders of Mr. Mitch West and that any decision or planning made had to be authorized by Mr. West.

My Husband, Jesus Davila Paz, had direct contact with the Engineering and Production Dept. at the plant of Lucent Tech. in Oklahoma.

Several people were already working in Oklahoma at the time that the company began in Mexico. At the present they are retired, their names are: Don Gilbert, Carl Windham, Jim Cole.

3

# Jesus Hipolito Davila Paz

Jesus Hipolito Davila Paz was a 33 year old Computer Systems Engineer, a loving husband, and a father of four children - three girls and one boy.  At the time of his death, Jesus had been married to his wife for nearly seven and one half years.  Jesus was a hard worker, working from 6:00 a.m. to 5:30 p.m. daily.  As soon as the work day ended, Jesus would go home to spend time with his family; he would also spend the weekends enjoying family time with his wife and children.

Jesus and his family enjoyed many activities together.  They would rent movies to watch at home, spend time visiting other family members, attend gatherings for couples, go to the movies, enjoy family picnics together, travel to the United States to go shopping, and just spend quality time together.  Jesus and his family also attended functions for the childrens' school, and events organized by his employer.

Jesus also enjoyed holidays with the family.  He would help organize birthday parties for all of the children, celebrate Mother's Day and Father's Day with the entire family, and share in the childrens' joy on Christmas morning as they opened their gifts from Santa.

As a devoted husband, Jesus was by his wife's side during each of her pregnancies, and was present at the birth of each of his children.  He was the first to carry each of his children when they were born.  A proud and loving father, Jesus would kiss and bless his children every night, and enjoyed spending time playing with them, watching television together, and eating together as a family.

Jesus was devoted to his parents as well.  After his father's death, he would visit the cemetery on All Saints' Day, on his father's birthday, and on the anniversary of his father's death each year.  Jesus also visited his mother frequently, and offered her emotional and financial support.

When Jesus traveled for work, he would often send postcards just to let his family know he missed them.  He would later arrive home with gifts for his wife and children. Jesus Hipolito Davila Paz was a loyal, honest, responsible and loving husband and father.

Yo Olivia Vázquez Alanís con 30 años de edad con capacidad
para hacer esta declaración. Tengo conocimiento personal
de los hechos a mencionar en esta declaración y los expongo
con base a mi propio conocimiento.
Mi esposo Valente Ibarra Ibarra fue empleado por Servicios de
Manofactora de mty s.a de c.v. Planta de Lucent Technologies
en Mty desde 1992.
El 12 de Agosto de 1999 él en compañía de otros compañeros
de trabajo regresaban a su lugar de trabajo, procedentes de
la planta Lucent technologies de Matamoros Tamaulipas, a la
cual habían asistido a un curso organizado por el Sr. Carlos
Ramírez y autorizado por el Sr. Mitch West Gerente de Lucent
Technologies y también Gerente Gral. de Servicios de Manufactura
de Mty s.a de c.v.
Mi esposo recibía con frecuencia artículos promocionales, tales
como camisas, gorras, mochilas etc. con el logotipo de Lucent
a si mismo su correo electrónico era @Lucent. Com.
Mi esposo Valente Ibarra asistió a varios entrenamientos,
cursos y cuentos organizados por Lucent Technologies en
diferentes Ciudades tales como Oklahoma, Ohio, Matamoros.
Lucent Technologies hacía las reservaciones de hotel y Carro
cuando mi esposo viajaba a Oklahoma (planta principal de
Lucent que es el mayor apoyo para Servicios de Manufactura)
e inclusive las facturas salían a nombre de Lucent.
y con el nombre de mi esposo.
Cuando mi esposo Valente Ibarra empezo a trabajar para
s.m.m. tuvo forzosamente que asistir por un periodo de una
Semana para capacitación en la Planta de Lucent en Oklahoma.
y los gastos fueron cubiertos totalmente por personal de
Oklahoma a excepción del avión.
Valente Ibarra Ibarra se vio involucrado en un accidente
automovilístico el 12 de Agosto de 1999 alrededor de las 6:30 pm
cuando regresaba de un curso en Matamoros Tamaulipas en el
cual perdió la vida, tras su muerte me comunicaron que una
indemnización y compensación económica estaba disponible en
México al parecer por una cantidad aproximada de $112,000.00
pesos mexicanos, pero con la condición de Otorgar el perdón y
excluir de cualquier cargo Jurídico al chofer (Sr. Carlos Ramírez)
En aquel momento me pareció absurda esa cantidad, pues mi
familia se compone de 2 hijos y yo, mis hijos en plena niñez
y con todo un futuro escolar por delante, a si mismo con toda
la responsabilidad de su manutención a mi cargo, razones

I, Olivia Vazquez 30 years old with the mental capacity to give this statement have personal knowledge of the following facts in this statement, and I state them from my own personal knowledge.

My husband, Valente Ibarra Ibarra was hired by "<u>Servicios de Manufactura de Mty. S.A. de C.V.</u>" a plant of Lucent Technologies in Mty. since 1992.

On August 12, 1999, he together with other co-workers were returning to their work place from the plant of Lucent Technologies of Matamoros, Tamaulipas where they had been attending a course organized by Mr. Carlos Ramirez and authorized by Mr. Mitch West, manager of Lucent Technologies and also a manager of "<u>Servicios de Manufactura de Mty., S.A. de C.V.</u>"

My husband would frequently receive promotional articles, such as shirts, caps, book satchels, et cetera with Lucent's logo, and his e-mail address was @Lucent.com.

My husband, Valente Ibarra, attended several training sessions, courses, and events organized by Lucent Technologies in different cities such as Oklahoma, Ohio, Matamoros. Lucent Technologies would make the hotel and car reservations when my husband would travel to Oklahoma (the main plant of Lucent which is the major support for "<u>Servicios de Manufactura</u>"). Furthermore the invoices would be made out to Lucent and bear my husband's name.

When my husband, Valente Ibarra, began working for "<u>S.M.M.</u>"

1

CUtePDF - www.tevisu.com

he had to attend a training session during a period of one week at the plant of Lucent in Oklahoma, and the expenses were totally paid for by personnel of Oklahoma with the exception of the plane fare.

Valente Ibarra Ibarra found himself involved in an automobile accident on August 12, 1999, about 6:30pm as he was returning from a course in Matamoros, Tamaulipas, in which he lost his life. After his death I was notified that there was an indemnification and a monetary compensation available in Mexico, seemingly for an approximate amount of $112,000.00 in mexican currency, but with the condition of granting a pardon and exonerating the driver of any legal charges, (Mr. Carlos Ramirez). At the time the amount seemed absurd since my family consists of 2 children and myself. My children are in the middle of their childhood and with an entire scholastic future ahead of them, as well as the whole financial responsibility of their support left to me. Reasons for which I refused said indemnification and decided to sue in the U.S., since mexican law does not have a civil system of justice as it exists there.

Part of my decision to file a lawsuit in the U.S. was because the Company did not have life insurance for the employees in spite of the fact that the majority of them would travel very frequently to different parts of the country.

Valente Ibarra Ibarra was 34 years old at the time of his

2

death, with an approximate annual income of $200,000.00 me-
xican pesos.

It is my personal opinion that the indemnification granted
by mexican laws is not a just one to compensate me and my
family for the loss of my husband and my children's father.

I understand that the companies that I have sued may want to
take my deposition or ask me questions, and for that I make
myself available at the offices of my attorneys: The Allison
Law Firm situated at 855 East Harrison, Brownsville, Texas,
78520, and I will voluntarily provide all information and
documents in my possession as it is indicated by my attor-
neys.

I want to ratify that during the period of time that Valente
Ibarra Ibarra worked at "S.M.M." Lucent Technologies he was
under the orders of Mr. Mitch West and that any decision or
planning had to be authorized by Mr. Mitch West.

3

## Valente Ibarra Ibarra

Valente Ibarra Ibarra was 34 years old at the time of his death. He was a mechanical electrical engineer. He was a devoted husband of six years, and a father of 2 children, Olivia and Jesus.

Valente worked from 6:00 a.m. until 5:30 p.m. Monday through Friday, and enjoyed spending the evenings and weekends with his family. They attended church as a family every Sunday, and enjoyed many activities including going to the movies, to the park, organizing birthday parties, and working on schoolwork with the children. In fact, Valente had been building a playhouse for his children before he died...the house was left unfinished.

Valente was devoted to his family. He was proud of his children, and wanted the best for them. He ensured that they received a quality education, and he spent time with them whenever he wasn't working. The family enjoyed shopping trips to Laredo and McAllen, as well as vacations and family gatherings during the holidays.

Valente Ibarra Ibarra was a responsible and caring husband and parent. He accompanied his wife to her doctors appointments during her pregnancies, and he made sure that his children were always up to date on vaccines and medical check-ups.

Valente also spent a considerable amount of time with his wife's sisters and little brother; he was like a father figure to them. Valente was also active in the church; he had planned on taking a course with other couples at the church, which was set to begin the Monday after he passed away.

CVISPDF – www.fesisx.com

# CADDELL & CHAPMAN
### ATTORNEYS AT LAW
### THE PARK IN HOUSTON CENTER
### 1331 LAMAR, SUITE 1070
### HOUSTON, TEXAS 77010-3027

CYNTHIA B. CHAPMAN

TEL (713) 751-0400
FAX (713) 751-0906
EMAIL CADDELL331@AOL.COM

August 16, 2001

VIA FACSIMILE

Mr. Dana R. Allison
The Allison Law Firm
855 East Harrison
Brownsville, TX 78520

Re:   Representation of Margarita Santos Davila, Ethna Zuleyma Perez Lara, and
        Maria Olivia Vasquez

Dear Mr. Allison:

When we last spoke, we stated that we would not pursue our litigation on behalf of Margarita Santos Davila, Ethna Zuleyma Perez Lara, and Maria Olivia Vasquez, if we were to learn that they had been receiving funds from your law firm since the date we entered into a retention agreement with them. Given your July 27, 2001 letter, assuming the affidavits were indeed prepared by Maria Olivia Vasquez, Margarita Santos Davila, and Ethna Zuleyma Perez Lara, it is clear to us that these three women have not been honest with us and, therefore, we will be formally releasing them and nonsuiting the Cameron County matter.

We only ask that these clients pay for our expenses, which amount to $36,167.10 should you ultimately make a recovery on their behalf.

If you agree to the foregoing, please sign below.

Very truly yours,

Cynthia B. Chapman

CBC/ebc

_____
Dana R. Allison

G:\VASQUEZ2\LETTERS\COCOUNSE\ALLISON.002

August 16, 2001
Page 2

cc:    Mr. Michael A. Caddell
       Mr. Donald L. Harvey
       Mr. Ezequiel Reyna, Jr.
       Ms. Maria Olivia Vasquez
       Ms. Margarita Santos Davila
       Ms. Ethna Zuleyma Perez Lara

G:\VASQUEZ2\LETTERS\COCOUNSE\ALLISON.002

CVISPDF – www.fesisi.com

REC'D AUG 1 ~ 2001

CAUSE NO. 2001-02-897-C

MARGARITA SANTOS DAVILA,           §    IN THE DISTRICT COURT
INDIVIDUALLY, AND AS NEXT FRIEND   §
OF JESUS OCTAVIO DAVILA SANTOS,    §
ZAIDETH MARGARITA DAVILA SANTOS,   §
ANDREA DENISSE DAVILA SANTOS AND   §
VALERIA NAYEL DAVILA SANTOS, AND   §
ALL AS REPRESENTATIVES OF THE      §
ESTATE OF JESUS DAVILA PAZ;        §
                                   §
ETHNA ZULEYMA PEREZ LARA,          §
INDIVIDUALLY, AND AS NEXT FRIEND   §
OF SERGIO ALBERT ZAVALA PEREZ,     §
AND ALL AS REPRESENTATIVES OF THE  §
ESTATE OF SERGIO ALBERTO ZAVALA;   §
                                   §
MARIA OLIVIA VASQUEZ,              §
INDIVIDUALLY AND AS NEXT FRIEND OF §
OLIVIA LIZETH IBARRA VASQUEZ AND   §
JESUS ALAN IBARRA VASQUEZ, AND ALL §
AS REPRESENTATIVES OF THE ESTATE   §
OF VALANTE IBARRA IBARRA           §
                                   §
VS.                                §    CAMERON COUNTY, TEXAS
                                   §
LUCENT TECHNOLOGIES, INC.,         §
LUCENT TECHNOLOGIES                §
MAQUILADORAS, INC.,; LAREDO QUALITY §
TRANSFER SERVICES, INC.;           §
BRIDGESTONE/FIRESTONE, INC.,; AND  §
BRIDGESTONE CORPORATION            §    404TH JUDICIAL DISTRICT

FILED 4:30 O'CLOCK
AURORA DE LA GARZA DIST. CLERK
AUG 08 2001

---

## NOTICE OF SUBSTITUTION OF COUNSEL

---

**TO THE HONORABLE JUDGE OF SAID COURT**:

   **COME NOW** MARGARITA SANTOS DAVILA, INDIVIDUALLY, AND AS NEXT

FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA

SANTOS, ANDREA DENISSE DAVILA SANTOS AND VALERIA NAYEL DAVILA SANTOS,

AND ALL AS REPRESENTATIVES OF THE ESTATE OF JESUS DAVILA PAZ; ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY, AND AS NEXT FRIEND OF SERGIO ALBERT ZAVALA PEREZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF SERGIO ALBERTO ZAVALA; MARIA OLIVIA VASQUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VASQUEZ AND JESUS ALAN IBARRA VASQUEZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF VALANTE IBARRA IBARRA, Plaintiffs in the above styled and numbered cause of action respectfully requests that Mr. Michael A. Caddell, Caddell & Chapman and Mr. Ezequiel Reyna, Jr., Law Offices of Ezequel Reyna, Jr. be withdrawn as attorneys of records **AND** that DANA R. ALLISON, The Allison Law Firm, 855 East Harrison, Brownsville, Texas 78520, hereby be substituted as attorneys of record on behalf of the above named Plaintiffs, and requests the Clerk and all counsel of record to henceforth send copies of all pleadings and notices to Dana R. Allison at the address below.

MARGARITA SANTOS DAVILA, INDIVIDUALLY, AND AS NEXT FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS AND VALERIA NAYEL DAVILA SANTOS, AND ALL AS REPRESENTATIVES OF THE ESTATE OF JESUS DAVILA PAZ; ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY, AND AS NEXT FRIEND OF SERGIO ALBERT ZAVALA PEREZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF SERGIO ALBERTO ZAVALA; MARIA OLIVIA VASQUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VASQUEZ AND JESUS ALAN IBARRA VASQUEZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF VALANTE IBARRA IBARRA, Plaintiffs in the above styled and numbered cause of action approve the substitution of counsel. Substitution of counsel is not intended for purposes of delay.

Respectfully submitted,

THE ALLISON LAW FIRM
855 E. Harrison
Brownsville, Texas  78520
Telephone No. :  (956) 541-8338
Facsimile No.:    (956) 541-2535

BY: _____
      DANA R. ALLISON
      State Bar No. 12235280

## CERTIFICATE OF CONFERENCE

The undersigned has conferred with Mr. Ezequiel Reyna and is unopposed to the filing of this

Notice Of Substituion.

_____
Dana R. Allison

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2001, a true and correct copy of the above and foregoing **NOTICE OF SUBSTITUTION OF COUNSEL** was forwarded to **via Certified Mail, Return Receipt Request to:**

Mr. Michael A. Caddell
Caddell & Chapin
The Park In Houston Center
1331 Lamar,Suite 1070
Houston, TX 77010-3027

Mr. Ezequiel Reyna, Jr.
Law Offices of Ezequiel Reyna, L.L.P.
702 W. Expressway 83, #100
Weslaco, TX 78596

Mr. Frank Costilla
The Law Offices of Frank Costilla, P.C.
5 East Elizabeth Street
P.O. Box 4417
Brownsville, TX 78523

Mr. Richard Morales
602 E. Colton Rd
Laredo, Texas 78041

and via regular U.S. Mail to:

Mr. F. Edward Barker
BARKER, LEON, FANCHER & MATTHYS L.L.P.
First City Tower II, Ste 1200,
555 N. Carancahua St
Corpus Christi, TX 78478

pursuant to the Texas Rules of Civil Procedure.

DANA R. ALLISON

CVISPDF – www.fastio.com

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 41 of 62

CAUSE NO. 2001-02-897-G

| | | |
|---|---|---|
| MARGARITA SANTOS DAVILA, | § | IN THE DISTRICT COURT |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF JESUS OCTAVIO DAVILA SANTOS, | § | |
| ZAIDETH MARGARITA DAVILA SANTOS, | § | |
| ANDREA DENISSE DAVILA SANTOS AND | § | |
| VALERIA NAYEL DAVILA SANTOS, AND | § | |
| ALL AS REPRESENTATIVES OF THE | § | |
| ESTATE OF JESUS DAVILA PAZ; | § | |
| | § | |
| ETHNA ZULEYMA PEREZ LARA, | § | |
| INDIVIDUALLY, AND AS NEXT FRIEND | § | |
| OF SERGIO ALBERT ZAVALA PEREZ, | § | |
| AND ALL AS REPRESENTATIVES OF THE | § | |
| ESTATE OF SERGIO ALBERTO ZAVALA; | § | |
| | § | |
| MARIA OLIVIA VASQUEZ, | § | |
| INDIVIDUALLY AND AS NEXT FRIEND OF | § | |
| OLIVIA LIZETH IBARRA VASQUEZ AND | § | |
| JESUS ALAN IBARRA VASQUEZ, AND ALL | § | |
| AS REPRESENTATIVES OF THE ESTATE | § | |
| OF VALANTE IBARRA IBARRA | § | |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| LUCENT TECHNOLOGIES, INC., | § | |
| LUCENT TECHNOLOGIES | § | |
| MAQUILADORAS, INC.,; LAREDO QUALITY | § | |
| TRANSFER SERVICES, INC.; | § | |
| BRIDGESTONE/FIRESTONE, INC.,; AND | § | |
| BRIDGESTONE CORPORATION | § | 404TH JUDICIAL DISTRICT |

## ORDER SUBSTITUTING COUNSEL

ON THIS the _____ day of _____, 2001, came on to be heard **PLAINTIFFS NOTICE OF SUBSTITUTION OF COUNSEL**, and the Court having considered the Motion and being of the opinion that the same should be granted;

IT is therefore, ORDERED, ADJUDGED, AND DECREED that Michael Caddell and Ezequiel Reyna, Jr. be withdrawn as attorney of record for MARGARITA SANTOS DAVILA, INDIVIDUALLY, AND AS NEXT FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS AND VALERIA NAYEL DAVILA SANTOS, AND ALL AS REPRESENTATIVES OF THE ESTATE OF JESUS DAVILA PAZ; ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY, AND AS NEXT FRIEND OF SERGIO ALBERT ZAVALA PEREZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF SERGIO ALBERTO ZAVALA; MARIA OLIVIA VASQUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VASQUEZ AND JESUS ALAN IBARRA VASQUEZ, AND ALL AS REPRESENTATIVES OF THE ESTATE OF VALANTE IBARRA IBARRA, Plaintiffs in the above styled and numbered cause and that the following counsel be substituted in his stead, Dana R. Allison of The Allison Law Firm.

SIGNED FOR ENTRY this _16_ day of _August_, 2001.

COPIES TO: 5|16(0)
HON DANA R ALLISON
HON MICHEAL A CADDELL
HON EZEQUIEL REYNA JR
HON FRANK COSTILLA
MR RICHARD MORALES
HON F EDWARD BARKER

_____
HONORABLE JUDGE PRESIDING

CVISPDF - www.fesiio.com

Case 1:01-cv-00140 Document 17 Filed in TXSD on 10/30/2001 Page 44 of 62

**CAUSE NO. 2001-CV001227-B1**

| | | |
|---|---|---|
| MARIA OLIVIA VASQUEZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF VALENTE IBARRA IBARRA, DECEASED, AND AS NEXT FRIEND OF OLIVIA LIZETH IBARRA VAZQUEZ AND JESUS ALAN IBARRA VASQUEZ, MINOR CHILDREN; | § § § § § § § § | IN THE DISTRICT COURT. |
| | § | |
| MARGARITA SANTOS TORRES, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF JESUS HIPOLITO DAVILA PAZ, DECEASED, AND AS NEXT FRIEND OF JESUS OCTAVIO DAVILA SANTOS, ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, AND VALERIA NAYEL DAVILA SANTOS, MINOR CHILDREN; | § § § § § § § § § § § | 49th JUDICIAL DISTRICT

LAREDO COUNTY, TEXAS |
| ETHNA ZULEYMA PEREZ LARA, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF SERGIO ALBERTO ZAVALA PONCE, DECEASED, AND AS NEXT FRIEND OF SERGIO ALBERTO ZAVALA PEREZ, MINOR CHILD; | § § § § § § § § § | |
| MARIO ALBERTO VILLAGRAN TREVINO AND EVANGELINA CASTRO DE VILLEGRAN, INDIVIDUALLY AND AS REPRESENTATIVES OF THE ESTATE OF GABRIELA VILLAGRAN CASTRO, DECEASED; | § § § § § § § § | |
| GRICELDA LETICIA TORRES DE JUAREZ, JOSE GUADALUPE JUAREZ LOPEZ, JESSICA JUAREZ AND OSCAR JUAREZ, INDIVIDUALLY AND AS REPRESENTATIVE OF THE ESTATE OF IVONNE JUAREZ, DECEASED; | § § § § § § § § | |

Sent By: BARKER LEON FANCHER MATHYS;        361 8829437;

SEP-05-2001 WED 02:42 F   _VAREZ & NOTZON L. L. P.      FAX NO.   J7178877                    P. 03

VS.                                          §
                                             §
BRIDGESTONE/FIRESTONE, INC.,                 §
BRIDGESTONE CORPORATION OF JAPAN,            §
BRIDGESTONE/FIRESTONE DE MEXICO,             §
GENERAL MOTORS CORPORATION, INC.,            §
LUCENT TECHNOLOGIES, INC.,                   §
LUCENT TECHNOLOGIES                          §
MAQUILADORAS, INC.,                          §
RUDOLPH MILES AND SONS, INC.,                §
DICEX INTERNATIONAL, INC., AND               §
CARLOS RAMIREZ VILLANUEVA                    §

---

## PLAINTIFFS' FIRST AMENDED PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

Maria Olivia Vasquez, Individually and as representative of the Estate of Valente

Ibarra Ibarra, Deceased, and as next friend of Olivia Lizeth Ibarra Vazquez and Jesus Alan

Ibarra Vasquez, minor children, Margarita Santos Torres, Individually and as representative

of the Estate of Jesus Hipolito Davila Paz, Deceased, and as next friend of Jesus Octavio

Davila Santos, Zaideth Margarita Davila Santos, Andrea Denisse Davila Santos, and Valeria

Nayel Davila Santos, minor children, and Ethna Zuleyma Perez Lara, Individually and as

representative of the Estate of Sergio Alberto Zavala Ponce, Deceased, and as next friend of

Sergio Alberto Zavala Perez, minor child, Mario Alberto Villagran Trevino, and Evangelina

Castro de Villegran, Individually and as representatives of the Estate of Gabriela Villagran

Castro, Deceased, and Gricelda Leticia Torres De Juarez, Jose Guadalupe Juarez Lopez,

Jessica Juarez and Oscar Juarez, Individually and as Representatives of the Estate of Ivonne

---

*Vasquez et al v Bridgestone/Firestone, Inc. et al*                              **Page 2**

Case 1:01-cv-00140  Document 17  Filed in TXSD on 10/30/2001  Page 46 of 62

Juarez, Deceased, collectively referred to as the Plaintiffs, file their Plaintiffs' First Amended Petition complaining of Bridgestone/Firestone Tire, Inc. and Bridgestone/Firestone de Mexico S.A. (Defendants Firestone), Defendant Bridgestone Corporation of Japan (Defendant Bridgestone), General Motors Corporation (Defendant General Motors or GMC), Lucent Technologies, Inc., Lucent Technologies Maquiladoras, Inc.(Defendants Lucent), Rudolph Miles and Sons, Inc. (Defendant Miles), Dicex International, Inc. (Defendant Dicex), and Carlos Ramirez Villanueva (Defendant Ramirez), hereinafter collectively referred to as Defendants. Plaintiffs show unto this Honorable Court the following:

## I. DISCOVERY CONTROL PLAN

Plaintiffs intend to conduct discovery under Level 2 pursuant to Texas Rule of Civil Procedure 190.3. Plaintiffs reserve the right to seek an order from this Court to allow Plaintiffs to conduct discovery under Level 3, if the parties agree to this designation or circumstances warrant it.

## II. PARTIES TO THIS LITIGATION

**A.    Plaintiffs**

1. Plaintiff MARIA OLIVIA VASQUEZ is an individual and citizen of Mexico who is the legal spouse of Valente Ibarra Ibarra, deceased, and the natural mother of OLIVIA LIZETH IBARRA VASQUEZ and JESUS ALAN IBARRA VASQUEZ, minor children of the marriage.

2. Plaintiff MARGARITA SANTOS TORRES is an individual and citizen of Mexico

who is the legal spouse of Jesus Hipolito Davila Paz, deceased, and the natural mother of JESUS OCTAVIO DAVILA SANTOS. ZAIDETH MARGARITA DAVILA SANTOS, ANDREA DENISSE DAVILA SANTOS, and VALERIA NAYEL DAVILA SANTOS, minor children of the marriage.

3. Plaintiff ETHNA ZULEYMA PEREZ LARA is an individual and citizen of Mexico who is the legal spouse of Sergio Alberto Zavala Ponce, deceased, and the natural mother of SERGIO ALBERTO ZAVALA PEREZ, a minor child of the marriage.

4. Plaintiffs MARIO ALBERTO VILLAGRAN TREVINO and EVANGELINA CASTRO DE VILLAGRAN are individuals and citizens of Mexico who are the natural parents of Gabriela Villagran Castro, deceased.

5. Plaintiffs JOSE GUADALUPE JUAREZ LOPEZ and GRICELDA LETICIA TORRES DE JUAREZ are individuals and citizens of Mexico who are the natural parents of Ivonne Juarez, deceased, and JESSICA JUAREZ and OSCAR JUAREZ are individuals who are the natural brother and sister of Ivonne Juarez, deceased.

**B.    Defendants**

6. Defendant BRIDGESTONE/FIRESTONE, INC. (Defendant Firestone) is a corporation incorporated under the laws of the State of Ohio, and is authorized to do business and is doing business throughout the State of Texas. Defendant Firestone has declared its principal place of business to be Orange, Texas, Orange County. Defendant Firestone may be served with process by serving its registered agent for service, C.T. Corp. System, 350 N.

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 48 of 62

St. Paul, Dallas, Texas 75201, by certified mail, return receipt requested. Service has previously been requested.

7. Defendant BRIDGESTONE/FIRESTONE DE MEXICO S.A. (also referred to as Defendant Firestone since Defendant Bridgestone/Firestone, Inc. designs the tire and provides the design to Firestone de Mexico for manufacture) is a branch of Defendant Bridgestone/Firestone, Inc.. Defendant Bridgestone/Firestone de Mexico S.A. may be served by registered mail containing a true and correct coy of this Plaintiffs' First Amended Petition to its Chairman, C.E.O., President at Darwin 74, COL. Anzures del, M. Hidalgo, Apartado Postal 53-1000, 11590 Mexico D.F. Mexico. Service is requested at this time.

8. Defendant BRIDGESTONE CORPORATION of Japan (Defendant Bridgestone) is a Japanese corporation or business association. Defendant Bridgestone does business throughout the State of Texas, but does not maintain a registered agent for service of process in Texas. Defendant Bridgestone may be served by registered mail containing a true and correct copy of this Plaintiffs' Original Petition to its President, Chairman, and C.E.O., Yoichiro Kaizaki, or his designated successor, Shigeo Watanabe, or any other corporate officer, pursuant to the manner provided by Japanese law for service of documents in domestic actions on persons within its territory, at Bridgestone Corporation, 10-1 Kyobashi 1-Chome, Chuo-Ku, Tokyo 104-8340, Japan. Service has previously been requested.

Defendants Bridgestone and Firestone are, for all practical purposes, the same with regard to this incident which resulted in the deaths of five Plaintiffs and the injuries to all

Case 1:01-cv-00140  Document 17  Filed in TXSD on 10/30/2001  Page 49 of 62

Plaintiffs. As such, the three corporations will be collectively referred to as Defendants Bridgestone/Firestone.

9. Defendant GENERAL MOTORS CORPORATION (Defendant GMC) is a corporation organized and existing under the laws of Delaware, and is authorized to conduct business in Texas and is doing business throughout the State of Texas. It may be served with process by serving its registered agent for service of process, C.T. Corp. System, 350 N. St. Paul Street, Dallas, Texas 75201. Service has previously been requested.

10. Defendant LUCENT TECHNOLOGIES, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business throughout the State of Texas, including, but not limited to Brownsville, Texas. With regard to the decedents, Defendant Lucent was coordinating and conducting business activities in McAllen, Texas, Brownsville, Texas, and Laredo, Texas. Defendant Lucent Technologies, Inc. may be served with process by serving its registered agent for service, Prentice Hall Corp. System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service has previously been requested.

11. Defendant LUCENT TECHNOLOGIES MAQUILADORAS, INC. is a corporation incorporated under the laws of the State of Delaware, and is authorized to do business and is doing business within the State of Texas. Defendant Lucent Technologies Maquiladoras, Inc. may be served    Defendant Lucent Technologies Maquiladora, Inc. May be served with process by serving its registered agent for service, Prentice Hall Corp.

---

CbbPDF - www.fastio.com

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 50 of 62

System, 800 Brazos, Austin, Texas 78701, by certified mail, return receipt requested. Service has previously been requested.

Defendants Lucent Technologies, Inc. and Lucent Technologies Maquiladoras, Inc. are, for all practical purposes, the same with regard to the incident which resulted in the deaths of five Plaintiffs and the injuries to all Plaintiffs. As such, the two corporations will be collectively referred to as Defendants Lucent.

12.    Defendant RUDOLPH MILES AND SONS, INC. (Defendant Miles) is a corporation organized and existing under the laws of the State of Texas, and is authorized to conduct business within the State of Texas. Defendant Miles may be served by registered mail containing a true and correct copy of the citation accompanied by a true and correct copy of this petition to its registered agent W. Dean Hester, 1100 Chase Tower, 201 E. Main, El Paso, Texas 79901. Service is requested at this time.

13.    Defendant DICEX INTERNATIONAL, INC., (Defendant Dicex) is a corporation organized and existing under the laws of the State of Texas, and is authorized to conduct business within the State of Texas. Defendant Dicex may be served by registered mail containing a true and correct copy of the citation accompanied by a true and correct copy of this petition to its registered agent Ricardo Peimbert, 14001 Mines Road, Laredo, Texas 78041. Service has previously been requested.

14. Defendant CARLOS RAMIREZ VILLANUEVA is a Mexican citizen who may be served by registed mail containing a true and correct copy of the citation accompanied by

a true and correct copy of this petition to his official address at Corona Boreal No. 3744, Col. Ardoledas, Zapopan, Jalisco, Mexico, C.P. 45070. Service is requested at this time.

## III.   VENUE and JURISDICTION

### Venue in Laredo County, Texas is Proper

15. Venue is proper in Laredo County, Texas pursuant to Texas Civil Practices and Remedies Code, §§15.001 et seq, including §15.005 and §15.002(a)(3) since Laredo County is the county of Defendant Dicex's principal office in Texas. Moreover, a portion of the cause of action accrued in Laredo County, Texas.

### This Court Has Subject-Matter Jurisdiction

16. This Court has subject-matter jurisdiction over these claims pursuant to Texas Civil Practices and Remedies Code, §71.031. Plaintiffs meet all requirements of §71.031; as such, they have a right to be before this Court. *Dubai Petroleum v. Kazi*, 12 S.W.3d 71 (Tex. 2000); *Ford Motor Co. v. Aguiniga*, 9 S.W.3d 252 (Tex. App. – San Antonio 1999, pet. denied); *Toubaniaris v. American Bureau of Shipping, et al*, 981 S.W.2d 858 (Tex. App. -- Houston [1ˢᵗ Dist.] 1998, pet. denied).

17. Moreover, The International Covenant on Civil and Political Rights supports the filing of this case in this Court. The Covenant was adopted by the United States on September 8, 1992. The Covenant expressly supports the Plaintiffs' choice of filing in Laredo County, Texas.

---

## This Court Has Personal Jurisdiction Over Defendant Bridgestone Corporation

18.    Personal jurisdiction exists as to Defendant Bridgestone in that it maintains continuous and systematic contacts with the State of Texas through its tire business and through its publicly traded stock.

19.    Defendant Bridgestone conducts business in the State of Texas on a daily basis as its stock is bought or sold. There is no stock with regard to Firestone (that is, Defendant Bridgestone/Firestone or Defendant Bridgestone/Firestone de Mexico); rather, all publicly traded stock is Defendant Bridgestone's.

20.    Defendant Bridgestone/Firestone, Inc. (Defendant Firestone) is the wholly owned subsidiary Defendant Bridgestone, and Defendant Bridgestone/Firestone de Mexico is a unit of Defendant Bridgestone/Firestone, Inc.. There is an intermingling of directors, employees and officers with regard to Bridgestone/Firestone, Inc. and Bridgestone Corporation of Japan. Also, Defendant Firestone manufactures tires in the United State of America under the "Bridgestone" name, and conversely, Defendant Bridgestone manufactures tires under the "Firestone" brand at its Hofu plant in Yamaguchi prefecture, Japan. Additionally, Defendant Bridgestone maintains a world wide website wherein it claims that the "Bridgestone" and "Firestone" brands "herald the company's (Defendant Bridgestone's) strong presence in tire markets worldwide." claims to utilize a "multi-brand" strategy, concentrating on both the "Bridgestone" and "Firestone" brands; claims that Bridgestone of Japan supplies original equipment tires to automobile manufacturers in North

Sent By: BARKER LEON FANCHER MATHYS;          3618829437;          20 Sep '01   ...

SEP-05-2001 WED 02:43     ALVAREZ & NOTZON L.L.P.     FAX NO. ;67178677          P. 11

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 53 of 62

America; identifies Bridgestone/Firestone tire manufacturing facilities in the United States as "Bridgestone" plants", identifies the Bridgestone/Firestone stores in the United States as "company-owned" stores and makes numerous other references which blend the two companies. Moreover, Defendant Bridgestone's annual reports blend the two companies, the two companies' resources, and the two companies' finances.

Clearly, Defendant Bridgestone and Defendant Firestone integrate their resources to achieve a common business purpose. As such, Defendant Bridgestone is liable for the tort obligations of Defendant Firestone incurred in the pursuit of that business purpose. In fact, it is Plaintiffs' belief that Defendant Firestone would be undercapitalized (and underinsured) in relation to the reasonably foreseeable risks of its business operations.

21.     Defendants Bridgestone and Firestone are corporate *alter egos*. Defendant Firestone is operated as a tool or business conduit of its corporate parent, Defendant Bridgestone. Defendant Bridgestone has used Defendant Firestone to perpetuate an actual and/or constructive fraud on the public – including the Plaintiffs – for the direct benefit of Defendant Bridgestone. Defendants Bridgestone and Firestone are united as one, and any separateness, if there ever was, has ceased.

**Personal Jurisdiction Exists As To Defendant Lucent Technologies Maquiladoras**

22.     There is no issue with regard to this Court's (a Texas State District Court) personal jurisdiction over Defendant Lucent Technologies Maquiladoras, Inc. Plaintiffs had previously filed this action against this Defendant in an Texas State District Court, and this

---

*Vasquez et al v Bridgestone/Firestone, Inc. et al*                                    **Page 10**

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 54 of 62

issue was not raised. As such, Defendant Lucent Technologies Maquiladoras, Inc. has judicially admitted that this Court (a Texas state district court) has jurisdiction over it, and it is estopped from taking a contrary position before this Court.

**Notice of Non-Removable Status of Plaintiffs' Cause of Action**

23. This case is not removable to any federal court since Plaintiffs are foreign citizens and Defendant Bridgestone is a foreign corporation (Japan) – as such, complete diversity does not exist. Additionally, one defendant is a Mexican citizen and one defendant is a Mexican Corporation; as such, there is no complete diversity.

24. Moreover, two of the Defendants are Texas residents/citizens; as such, this case is not removable. 28 U.S.C.A. §1441(b).

In support of this notice of non-removability, Plaintiffs also rely upon 28 U.S.C.A. § 1332; *Bank of Nova Scotia v. S&W Berisford, Inc.*, 753 F. Supp. 237 (N.D. Ill. 1990), *Faysound Limited v. United Coconut Chemicals, Inc.*, 878 F.2d 290 (9th Cir. 1999); *Corporacion Venezolana v. Vintero Sales Corporation v. Venezolana De Cruceros Del Caribe*, 629 F.2d 786 (2nd Cir. 1980); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295 (5th Cir. 1985), and other pertinent case law.

## IV. BASIS FOR SUIT

25. This suit is brought against the Defendants pursuant to the provisions of the Texas Wrongful Death and Survival Statutes, Chapter 71 of the Texas Civil Practices & Remedies Code, wherein the Plaintiffs, as statutory beneficiaries of the decedents are entitled

to bring suit on behalf of all persons entitled to be benefitted by this action. Tex.Civ.Prac. & Rem. Code §§ 71.001, 71.002, 71.004, and 71.021.

26.  Plaintiffs have an undisputed right to file their cause of action in this Court. The Texas Legislature has specifically ordained a foreign citizen's right to file a civil lawsuit in Texas with regard to an accident or injury outside of the State of Texas. Tex.Civ.Prac.& Rem. Code Ann. §71.031. Plaintiffs are Mexican citizens and the incident occurred outside of the State of Texas. Plaintiffs are properly before this Court.

## V.  BACKGROUND FACTS

27.  This lawsuit results from a one-car accident that occurred on August 12, 1999, in Cadereyta, Nuevo Leon, Mexico.  At the time of the accident, the decedents, Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, were passengers in a 1996 GMC Chevrolet Suburban 2500 with a defective FR 480 Bridgestone/Firestone tire. Defendant Ramirez was the driver of the GMC Suburban.

28.  Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, the Decedents, were being driven home from a one day seminar/training session with Defendants Lucent when the right rear Bridgestone/Firestone tire on the 1996 Chevrolet Suburban delaminated, causing the vehicle to lose control, roll over numerous times, and fatally injure them.

29.  The decedents had previously traveled in the GMC Suburban for work, as Lucent

---

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 56 of 62

employees, in McAllen, Texas, Brownsville, Texas, and Laredo, Texas. Also, some of the decedents had traveled to other United States' locations for work with Defendants Lucent. On the day of the accident, the decedents had attended a Lucent seminar, as required by Lucent, at the Lucent Matamoros Brownsville facility.

## VI. BRIDGESTONE AND FIRESTONE'S RESPONSIBILITY

30. Plaintiffs assert claims against Defendants Bridgestone and Firestone on the basis of negligence, gross negligence, strict liability, product liability, design defect, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the tire's properties.

31. Defendants Bridgestone and Firestone are engaged in the business of engineering, designing, manufacturing, fabricating, selling, marketing, providing quality control, and inspecting the FR 480 tire. The right rear tire on the 1996 GMC Chevrolet Suburban that delaminated was defectively and improperly designed. The tire may also have been defectively manufactured by Defendant Bridgestone/Firestone de Mexico. No adequate quality control was exercised by Defendants Bridgestone/Firestone with regard to this tire.

32. The FR 480 tire was defective at the time it was released into the stream of commerce. The tire's dangerous condition rendered it unreasonably dangerous in that it was defectively designed, defectively manufactured, defective in materials, inadequately inspected, and in a defective condition when it was released into the stream of commerce.

CUtePDF - www.testia.com

These conditions were all a producing cause of the injuries and damages of the Plaintiffs.

33.  Defendants Bridgestone and Firestone expressly and impliedly warranted to the public generally that the FR 480 P235/75R15 tire installed on the 1996 Chevrolet Suburban was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

34.  Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages  as a proximate result of Defendants Bridgestone's and Firestone's breach of these warranties.

35.  The representations made by Defendants Bridgestone and Firestone were false, misleading, and deceptive, and violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer Protection Act, hereinafter referred to as the DTPA.   Defendants Bridgestone and Firestone violations of the DTPA include their unconscionable actions or course of actions.

36.  Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

## VI.  GENERAL MOTORS' RESPONSIBILITY

37.  Plaintiffs assert claims against Defendant General Motors on the basis of negligence, gross negligence, strict liability, product liability, design defect, breach of implied warranty of fitness for a particular purpose, violations of the Texas Deceptive Trade Practices - Consumer Protection Act, and the failure to warn and instruct the public as to the

---

*Vasquez et al v Bridgestone/Firestone, Inc. et al*                                                    **Page 14**

Chevrolet Suburban's properties.

38. Defendant General Motors is engaged in the business of engineering, developing, researching, designing, manufacturing, assembling, fabricating, selling, marketing, inspecting, providing quality control, and testing the Chevrolet Suburban. The right rear tire on the 1996 Chevrolet Suburban delaminated, and this tire was designated by General Motors as an appropriate tire for its vehicle when the tire was not an appropriate choice. No adequate testing and quality control was exercised by Defendant General Motors with regard to its vehicle and its choice of tire.

39. The vehicle was defective and unreasonably dangerous, as these terms are defined by law, and such condition of the vehicle was a producing cause of the incident which caused the Decedents' deaths and their relatives' injuries. The vehicle was defective at the time it was released into the stream of commerce.

40. Defendant GMC expressly and impliedly warranted to the public generally that its 1996 Chevrolet Suburban was of merchantable quality and was safe and fit for the purpose intended when used under ordinary conditions and in an ordinary manner.

41. Decedents relied upon these express and implied warranties, as members of the general public, and suffered injuries and damages as a proximate result of Defendant GMC's breach of these warranties.

42. The representations made by Defendant GMC were false, misleading, and deceptive, and violate Section 17.46(b) of the Texas Deceptive Trade Practices - Consumer

Protection Act, hereinafter referred to as the DTPA.   Defendant GMC's violations of the
DTPA include its unconscionable actions or course of actions.

43.   Plaintiffs invoke the Doctrine of Strict Torts Liability, Section 402A of the
Restatement of the Law of Torts 2D, as adopted by the Supreme Court of Texas.

44.   The GMC Suburban was substantially manufactured in the United States with
only a small percentage of the vehicle originating from Mexico for final assembly by
GMC in Silao, Mexico (GMC Mexico).   GMC Mexico is a wholly owned subsidiary of
Defendant GMC, and Defendant GMC participates in and controls the business activities
of GMC Mexico, including design of products, manufacture of products, manufacture of
component parts of products, safety recalls, and other aspects of corporate management.

As such, GMC Mexico acts pursuant to the direction and control of Defendant
GMC.  The corporate formalities separating these two (2) corporations are not correctly
adhered to, and the corporate veil is appropriately pierced, and the legal rule of alter ego
applies.  Additionally, and/or in alternatively, Plaintiffs would show that these two
corporations conduct business as a single business enterprise.  Additionally, and/or
alternatively, Plaintiffs would show that these two corporations are engaged in a joint
enterprise. These two companies will be collectively referred to as GMC.

## VII.   MILES' AND DICEX'S RESPONSIBILITY

45.   Plaintiffs would show that Defendant Miles and Defendant Dicex were
sellers of the GMC vehicle made the subject of this suit.  As brokers, Defendant Miles

---

Case 1:01-cv-00140   Document 17   Filed in TXSD on 10/30/2001   Page 60 of 62

and Defendant Dicex were engaged in the business of distributing vehicles and/or vehicle component parts into Mexico for a commercial purpose, and introducing the subject vehicle (and/or its component parts) into Mexico's stream of commerce for their and GMC's financial benefit. As stated above, the GMC Suburban vehicle was defective and unreasonably dangerous, and a producing cause of the injuries and deaths suffered by Plaintiffs. Plaintiffs sue Defendants Miles and Dicex as a seller in this product liability action.

## VIII. LUCENTS' RESPONSIBILITY

46.  Plaintiffs assert claims against Defendants Lucent by virtue of the acts and omissions of Lucent's managerial employees.

47.  Defendants Lucent failed to exercise ordinary and reasonable care in the supervision and control of its employees, and failed to provide safe transportation to the decedents.

48. Defendants Lucent, through its driver, violated road safety laws; as such, they are liable to Plaintiffs under the doctrine of negligence per se.

49. Defendants Lucent required decedents to be transported in an unsafe vehicle with a defective tire.

50. Defendants Lucent's negligence, negligence per se. and gross negligence were a proximate cause of the horrific injuries to the Decedents and their families.

## IX. RAMIREZ' RESPONSIBILITY

51. Defendant Ramirez was the driver of the GMC Suburban at the time of the incident which lead to Plaintiffs' injuries and/or deaths. Defendant Ramirez was negligent in handling the GMC Suburban, and was driving at an unsafe speed.

52. Defendant Ramirez' negligence and negligence per se were a proximate cause of the horrific injuries to the Decedents and their families.

## X. DAMAGES

53. Sergio Alberto Zavala Ponce, Gabriela Villagran Castro, Jesus Davila Paz, Valente Ibarra Ibarra, and Ivonne Juarez, were tragically killed as a result of all Defendants' misconduct. Each decedent endured conscious physical pain and suffering, emotional distress and mental anguish, fear, the anticipation of death, and death. Their injuries alone far exceed the jurisdictional limits of this Court.

54. Additionally, each estate has incurred funeral and burial expenses.

55. Also, the wrongful death beneficiaries have suffered mental anguish and emotional distress, loss of society, loss of companionship, loss of financial support, loss of the decedents' estate, loss of consortium, loss of parental guidance, loss of earning capacity, medical expenses, and burial expenses.

56. Plaintiffs also seek punitive damages for the Defendants' malicious conduct and gross neglect. Moreover, Plaintiffs seek prejudgment interest, postjudgment interest, their attorneys' fees and expenses, and costs of Court.

57. Lastly, Plaintiffs request a jury trial and assert that all conditions precedent have

occurred or been performed.

**PLAINTIFFS REQUEST A TRIAL BY JURY.**

              Respectfully submitted,

              THE ALLISON LAW FIRM
              855 East Harrison
              Brownsville, Texas 78520
              (956) 541-8338 (telephone)
              (956) 541-2535 (facsimile)

              DANA R. ALLISON
              State Bar No. 12235280
              CHARLES PUGSLEY FINCHER
              State Bar No. 07003000

              THE ALLISON LAW FIRM
              920 Leopard Street
              Corpus Christi, Texas 78401
              (361) 884-8990 (telephone)
              (361) 888-6543 (facsimile)

              GUY H. ALLISON
              State Bar No. 01086000
              LEAD COUNSEL FOR PLAINTIFFS